IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY GALLEGOS; OLEN C. PRIDDY;
SHEILA CAVITT-OLGUIN; TYLER KEMP;
DEBORAH LEYBA; ROSE ANNA
MARQUEZ; DANIEL JOSLIN; GREGORY
LUNGSTRUM; JUANTIA MAESTAS;
CANDACE SEAVERNS on behalf of the
Seaverns Family Living Trust; RICHARD
OGOREK; JUANTIA HERRERA-ROMERO,

       Plaintiffs,

vs.                                          No. CIV 24-0170 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY, DOES 1-20, inclusive,

       Defendant.

-- and --

JOE FIDEL-ALIREZ, JR.; SAM S. ARTHUR;
WYLEY CROSS,

       Plaintiffs,

vs.                                          No. CIV 24-0426 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

       Defendants.

-- and --

SPRING VICTORIA MARQUEZ; DIANE LEE
MARTINEZ; RICO MARTINEZ; CORRINE
GABALDON,

       Plaintiffs,

vs.                                          No. CIV 24-0580 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY, DOES 1-20, inclusive,

       Defendants.

-- and --

JULIA PASSAMONTI; KATHY MARTINEZ;
CORI PETERSON; DALE E. JENSSEN;
SONYA NORMAN; BILL TURPIN,

        Plaintiffs,

vs.                                                                         No. CIV 24-0681 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

        Defendants.

-- and --

KENNETH G. BACA, STEPHEN ANTHONY
FLEET, individually and as a Trustee of The
Stephen Anthony Fleet Revocable Living Trust,
LORILEE L. JOHNSON, CRISTINA J. MAES,
ZACKARY MONTANO, individually and as
Personal Representative for the Estate of John S.
Montano, REYNALDA MONTOYA, SONYA
NORMAN, ROBERTO ANTONIO-ORTIZ,
JR., TERRY D. POWELL, Trustee of the Terry
D. Powell Revocable Living Trust, LUPE
TORREZ, HEATHER VUCHINICH,

        Plaintiffs,

vs.                                                                         No. CIV 24-0779 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

        Defendants.

--and--

ELIZABETH GURULE, MARY JANE
GURULE, LARRY JAMES HENSON, COLIN
HOLLOWAY, MARCELLA LUJAN,
VINCENT MAES, CARLOS MARQUEZ, JR.,
ESTATE OF PAUL MARTINEZ,
FRANCISCO MELENDEZ, SONYA

- 2 -

NORMAN, ALTAGRACIA PADILLA BRITO,
LOUIS ROMERO,

      Plaintiffs,

vs.                                      No. CIV 24-0875 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

      Defendants.

--and--

TANYA R. ARRELLIN, ANNE BERNAL,
MARY-ANN FISHER, JAMES V. HERRERA,
MARY ALICE HERRERA, MARY JO
KESLER, GURUMEET KHALSA, JANE E.
LUMSDEN, individually and on behalf of
Semilla Natural Foods, LLC, ORVIS M.
MESTON, JOE MONTANO, OLEN C.
PRIDDY, CASSANDRA C. RODRIGUEZ,

      Plaintiffs,

vs.                                        No. CIV 24-0979 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

      Defendants.

--and--

JANETTE BENAVIDEZ, CASSIE BOWEN,
THE MANUEL G. CHACON AND THERESA
M. CHACON REVOCABLE TRUST,
RANDALL CLARK, CORBIN ERICKSON,
THE JAMES A. AND ADELE M. NIX
TRUST, THE ESTATE OF TIMTOHY
ARGUS NIX, ANNAMARIA GUTIERREZ,
MARTIN LOPEZ, LEON MARTINEZ, ALAN
OSGOOD, ROBERT PASTORE, GRACE
QUINTANA, JOSE REVOLLAR, SYNTHIA
SALAS, DIANN LYNN VALDEZ, RALPH
MARQUEZ, NOEL MARQUEZ, MITCHELL
MARQUEZ, GLORIA MARTINEZ,

CYNTHIA MARQUEZ, CHRISTINE
MONTOYA, ANGELA GUERIN, ALEX
MARQUEZ, JR., WALTER MARQUEZ,
VIRGINIA TRUJILLO, SHARON
WILLIAMS, MAUI PRIVATE CHEF
SERVICES, LLC, THE MICHAEL AND
KRISTINE RAEL REVOCABLE TRUST,
SALOMON MAESE, JR., MARTY
MARTINEZ, SHARON CRISTINO, MARIA
INES PORTILLO GONZALEZ,

       Plaintiffs,

vs.                                                                              No. CIV 24-1137 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

       Defendants.

--and--

CARY G. LANE, RUBEN BACA, AUBREY
L. EDGE, CANDI ERVIN, BRIANNA
VALENCIA-ENCINIAS, RICHARD S.
WERTH, JAMES P. MARTINEZ, RANDALL
CLARK, PATRICIA A. MANZANARES,
LUPE J. ARANDA, MARY ELLEN
ARANDA, MARLENE ARSOLA-
MASCARENAS, DOMINIC J. GURULE,
BRADY P. LANE, VINCENT MARQUEZ,
RUTH MARY MASCARENAS, KELLY
POWELL, JEANIE POWELL, JAMES
MICHAEL BLADES, ANNA BLADES,
ROBERT D. DURAN, DOMINIQUE
MONTOYA, JESSE ROMERO, PHILLIP R.
BACA, DEBRA GASTELUM, SOPHIA
J.MARTINEZ, DILIA Y. BACA, GERT DE
HERRERA, ALBERT GALLEGOS,
MICHAEL F. HOLDEN, HELPING PIGS
FLY, INC., JOHN JR. PINO, MICHAEL
SOWINSKI, WILLIAM L. ZAMORA,
VIRGINIA M. WHIPKEY, TANGEE DOLAN,
MABEL MAESTAS, FRANCISCO
MELENDEZ, ELISA LEIGH ARAGON,
MITCH J. BONNEY, THOMAS ROOME,

- 4 -

ELIZABETH ROOME, MAX J. SENA,
STELLA CRESPIN,

       Plaintiffs,

vs.                                                                       No. CIV 24-1221 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

       Defendants.

--and--

RICHARD LEONARD, PATRICK LOPEZ,
CAROLEE MASON, HOLLY ALICE
SIMPSON, KENNETH GOLD, VERA J.
PACHECO, NAVOR GARCIA, MARGARITA
J. GEORGE, MIRANDA GONZALES, MARY
M. MAES, JOSE D. E. MAESTAS,
KATHERIN MCCLAREN, LORENZO M.
MONTOYA, AARON W. ROMERO,
CLARENCE WAYNE WHIPKEY, THE
MIRZA TRUST, ALFRED C. VALDEZ,
ERNESTO ARCENO MARTINEZ, CYN
PALMER, BARBARA N. RODGERS, BRIAN
BERNAL, FELONIS HERNANDEZ,
ERNESTINA GRINE-MARTINEZ, JOYCE A.
KING, LORRAINE L. MARTINEZ,
FRANCINE R. ORTIZ, CHRISTINA MARIE
PREZANT, MARY UNDERWOOD, DANNY
VIGIL, GABRIEL SEDILLO, LISA SEDILLO,
MARIA GRACELA VIGIL, BEATRIZ
GONZALEZ, RAQUEL LISA KIKI
ARELLANO,

       Plaintiffs,

vs.                                                                       No. CIV 24-1311 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

       Defendants.

--and--

ANGELA BENAVIDEZ, TOBIN DOLAN,
LYDIA DOLAN, GILBERT J. MONTANO,
JOSHUA R. HERNANDEZ, JAMES PAUL
LOPEZ, MONICA LOPEZ, SEAVERNS
FAMILY LIVING TRUST, CYNTHIA
GEOGHEGAN, WILLIAM D. GEOGHEGAN,
JANET A. ESPINOSA, PETE MAES,
MARCELLA Y. HERRERA-MARTINEZ,
SAM S. ARTHUR, CHARLES CARRILLO,
AMADEUS M. LOPEZ, NORMA J. NIX,
ROBERT A. ORTIZ JR., JOHN PADILLA,
JAMES PAUL SANCHEZ, JOSEPH TORREZ,
ELIZABETH TORREZ, PAUL J. BONCHI,
PETRA DE HERRERA, JOSE GURULE,
PAULA J. LUJAN, JOHN LUJAN, JEREMY
R. STRICKLIN, LLIANA STRICKLIN,
DAVID A. VIGIL, D'ANNA ALEXIS
REVOCABLE TRUST, DANIEL GALLEGOS,

       Plaintiffs,

vs.                                                                    No. CIV 25-0109 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY; DOES 1-20, inclusive,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Motion to Dismiss for Failure to

Exhaust Administrative Remedies, filed April 29, 2024 (24-0170 Doc. 12)("Gallegos MTD");

(ii) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed July 15, 2024

(24-0426 Doc. 12)("Fidel-Alirez MTD"); (iii) the Motion to Dismiss for Failure to Exhaust

Administrative Remedies, filed September 12, 2024 (24-0580 Doc. 10)("Marquez MTD"); (iv) the

Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed September 16, 2024 (24-

0681 Doc. 7)("Passamonti MTD"); (v) the Motion to Dismiss for Failure to Exhaust

Administrative Remedies, filed October 15, 2024 (24-0779 Doc. 5)("Baca MTD"); (vi) the Motion

to Dismiss for Failure to Exhaust Administrative Remedies, filed November 12, 2024 (24-0875 Doc. 6)("Gurule MTD"); (vii) the Motion to Dismiss Petitioners' Complaint, filed December 9, 2024 (24-0979 Doc. 6)("Arrellin MTD"); (viii) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed January 13, 2025 (24-1137 Doc. 7)("J. Benavidez MTD"); (ix) the Motion to Dismiss Petitioners' Complaint, filed February 11, 2025 (24-1221 Doc. 7)("Lane MTD"); and (x) the Motion to Dismiss Petitioners' Complaint, filed March 14, 2025 (24-1311 Doc. 8)("Leonard MTD"). The Court held hearings on August 14, 2024, see Clerk's Minutes at 1, filed August 14, 2024 (24-0170 Doc. 38)("August 14, 2024, Hearing Minutes"); Clerk's Minutes at 1, filed August 14, 2024 (24-0426 Doc. 17), on October 24, 2024, see Clerk's Minutes at 1, filed October 24, 2024 (24-0580 Doc. 20)("October 24, 2024, Hearing Minutes"); Clerk's Minutes at 1, filed October 24, 2024 (24-0681 Doc. 13), on December 12, 2024, see Clerk's Minutes at 1, filed December 12, 2024 (24-0779 Doc 16)("December 12, 2024, Hearing Minutes"), and on February 6, 2025, see Clerk's Minutes at 1, filed February 6, 2025 (24-0979 Doc. 17)  The primary issues are: (i) whether the Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104, 136 Stat. 2114, 2168 (2022)("Hermit's Peak Act") requires the Defendant Federal Emergency Management Agency ("FEMA") to provide judicially reviewable claim determinations within 180 days after an individual files a Notice of Loss; (ii) whether the sovereign immunity waiver in the Hermit's Peak Act extends to claimants who do not receive internal administrative appeal decisions, where FEMA's regulations state that only administrative appeal decisions are judicially reviewable, but FEMA does not provide administrative appeal decisions within 180 days; (iii) whether the Court should find a general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act under the three-prong test that the Court identifies in Vigil v. Fed. Emergency Mgmt. Agency, No. CIV 23-0941 JB/JFR, 2024 WL

2404487 (D.N.M. May 23, 2024)(Browning, J.)("<u>Vigil</u>"), where the Court can find a general waiver of sovereign immunity if: (a) exhaustion is futile; (b) requiring exhaustion will cause irreparable harm; and (c) the Plaintiffs assert a colorable Constitutional claim that is collateral to their underlying compensation claims; and (iv) whether the APA Plaintiffs state a claim under the Administrative Procedure Act, 5 U.S.C. § 500-1014 ("APA"), where the APA Plaintiffs[1] plausibly allege that FEMA's regulations prevent FEMA from complying with the Hermit's Peak Act, are arbitrary-and-capricious, and violate due process.   The Court concludes that: (i) FEMA must provide judicially reviewable claim determinations within 180 days after a claimant's initial filing, because the Hermit's Peak Act mandates that FEMA "shall fix and determine the amount, if any, to be paid for the claim" within 180 days, Hermit's Peak Act § 104(d)(1)(A)(i); (ii) the sovereign immunity waiver in the Hermit's Peak Act extends to claimants who do not receive internal administrative appeal decisions, as long as those claimants follow FEMA's regulations that are consistent with the 180-day deadline, because: (a) those claimants have exhausted administrative remedies, as the sovereign immunity waiver in the Hermit's Peak Act requires; and (b) even if those claimants have not exhausted administrative remedies, FEMA has waived the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act; (iii) the Court does not find a general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act under the three-prong test that the Court identifies in <u>Vigil</u>, because, although exhaustion is futile and will cause irreparable harm, the Plaintiffs do not assert a colorable Constitutional claim that is collateral to their underlying compensation claims; and (iv) the APA

---

[1]The "APA Plaintiffs" are the Plaintiffs in <u>Arrellin v. FEMA</u>, No. CIV 24-0979 JB/JFR (D.N.M.), <u>Lane v. FEMA</u>, No. CIV 24-1221 JB/JFR (D.N.M.), <u>Leonard v FEMA</u>, No. CIV. 24-1311 (D.N.M.), and <u>A. Benavidez v. FEMA</u>, No. CIV 25-0109 (D.N.M).

Plaintiffs state an APA claim, because the APA Plaintiffs plausibly allege that FEMA's regulations violate the 180-day deadline in the Hermit's Peak Act, result in an endless appeal process, deprive the APA Plaintiffs of noneconomic damages, and deprive the APA Plaintiffs of a meaningful opportunity to be heard on their noneconomic damages claims.

## **FACTUAL BACKGROUND**

The Court first summarizes the history of the Hermit's Peak/Calf Canyon Fire. The Court then describes the Hermit's Peak Act and FEMA's promulgated regulations. The Court then describes the Plaintiffs and their attempts to obtain Hermit's Peak Act compensation.

1.     **The Hermit's Peak/Calf Canyon Fire.**

In April, 2022, a wildfire scorched over 340,000 acres of land in northeastern New Mexico, destroying over 900 structures, and forcing the evacuation of over 15,000 households throughout Mora, San Miguel and Taos Counties. See Patrick Lohmann, Were You Affected by the Massive Wildfire in Northern New Mexico? We Want to Hear From You, (Mar. 2, 2023), https://www.propublica.org/getinvolved/new-mexico-wildfires-hermits-peak-calf-canyon (last accessed December 6, 2024). It is the largest wildfire in New Mexico State history. See Bryan Pietsch and Jason Samenow, New Mexico blaze is now largest wildfire in state history, The Washington Post (May 17, 2022), https:(ww.washingtonpost.com/nation/2022/05/17/calf-canyon-hermits-peak-fire-new-mexico/ (last accessed December 5, 2024). The first wildfire began on April 6, 2022, in Hermit's Peak, New Mexico, when the United States Forest Service ("Forest Service") initiated a prescribed burn in the Santa Fe National Forest in San Miguel County that quickly spread beyond federal land and turned into a wildfire. See Hermit's Peak Act § 102(a) Findings and Purposes, 136 Stat. 2144, 2168 ("Hermit's Peak Act § 102(a)"). A second wildfire

began on April 19, 2022, in Calf Canyon, New Mexico, when a dormant pile burn[2] from the prior

winter re-emerged.  See Hermit's Peak Act § 102(a).  Within the same month, on April 27, 2022,

the wildfires at Hermit's Peak and Calf Canyon merged, and formed the Hermit's Peak/Calf

Canyon Fire.  See Hermit's Peak Act § 102(a).  By May, 2022, the Hermit's Peak/Calf Canyon

Fire caused evacuations in multiple villages and communities, including the San Miguel county

jail, the State's psychiatric hospital, the United World College, and New Mexico Highlands

University.  See Hermit's Peak Act § 102(a).  At the request of New Mexico Governor Michelle

Lujan Grisham, President Joseph R. Biden issued a major disaster declaration for the counties of

Colfax, Mora, and San Miguel.  See Hermit's Peak Act § 102(a); Hermit's Peak/Calf Canyon Fire

Assistance, 88 Fed. Reg. 33808 (August 29, 2023)(codified at 44 C.F.R. 296).  The Forest Service

fully contained the Hermit's Peak/Calf Canyon Fire four months later, in August 2022.  See The

New Mexican, Hermits Peak/Calf Canyon Fire 100 percent contained, fire officials say (August

21, 2022), https://www.santafenewmexican.com/news/local_news/hermits-peak-calf-canyon-fire-

100-percent-contained-fire-officials-say/article_5ac054fc-21a1-11ed-9401-134e852ee0a8.html

(last visited December 6, 2024).  The Forest Service assumes responsibility for the Hermit's

Peak/Calf Canyon Fire.  See Hermit's Peak Act § 102(a).

     2.      **The Hermit's Peak Act.**

In September 2022, Congress established a dedicated relief fund to compensate victims of

the Hermit's Peak/Calf Canyon Fire by enacting the Hermit's Peak Act.  See Hermit's Peak Act

§ 102(b), 136 Stat. at 2169.  The Hermit's Peak Act has two stated purposes: "(1) to compensate

---

[2]A pile burn "is a type of prescribed fire where firefighters pile and burn forest debris to reduce an area's wildfire risk."  Pile Burning, United States Forest Service, https://www.fs.usda.gov/detail/arp/landmanagement/resourcemanagement/?cid=fsm91_058291 (last accessed Dec. 6, 2024).

the victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire; and (2) to provide for the expeditious consideration and settlement of claims for those injuries."  Hermit's Peak Act § 102(b).  The Hermit's Peak Act provides: "Not later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim."  Hermit's Peak Act § 104(d)(1)(A)(i) ("180-Day Timeline Provision").  The Hermit's Peak Act authorizes FEMA to promulgate "regulations for the processing and payment of claims under this Act."  Hermit's Peak Act § 104(f)(1).  Claimants "aggrieved by a final decision" may seek judicial review in the United States District Court for the District of New Mexico "to modify or set aside the decision, in whole or in part."  Hermit's Peak Act § 104(i)(1)("Judicial Review Provision").  Claimants may also seek judicial review of partial payments of a Hermit's Peak Act claim.  See Hermit's Peak Act § 102(d)(2).

**3.    The FEMA Regulations.**

FEMA published its final regulations on August 29, 2023.  See 44 C.F.R. § 296 ("Hermit's Peak Regulations").  The Hermit's Peak Regulations state that the purpose of the Hermit's Peak Act is to "receive, evaluate, process, and pay actual compensatory damages for injuries resulting from the Hermit's Peak/Calf Canyon Fire."  44 C.F.R § 296.1.  To receive compensation, a claimant "must be an Injured Person who suffered injury as a result of the Hermit's Peak/Calf Canyon Fire and sustained damages."  44 C.F.R. § 296.20.  A claimant first must file with the FEMA Claims Office a Notice of Loss form that briefly describes each injury.  See 44 C.F.R. §§ 296.5(b), 296.10(a).  Second, the claimant and a Claims Reviewer[3] discuss the claim "to

---

[3]The Hermit's Peak Regulations define Claims Reviewer as "an employee of the United States or a Claims Office contractor or subcontractor who is authorized by the Director of the Claims Office to review and evaluate claims submitted under the Act."  44 C.F.R. § 296.4.

help the claimant formulate a strategy for obtaining any necessary documentation or other support," and the Claims Reviewer submits a report to the Authorized Official[4] for review.  See 44 C.F.R. § 296.5(c).  Third, "[a]fter the claimant has had an opportunity to discuss the claim with the Claims Reviewer, a Proof of Loss will be presented to the claimant for signature." 44 C.F.R. §§ 296.5(c).  FEMA can evaluate the claim, and provide an initial claim determination, only after the Claims Reviewer submits the Proof of Loss, which is a "statement attesting to the nature and extent of the claimant's injuries."  44 C.F.R. § 296.4.  See 44 C.F.R. §§ 296.5(c), (a). Claimants may file their Proof of Loss up to 150 days -- or later, if the claimant shows good cause -- after filing their Notice of Loss.  See 44 C.F.R. §§ 296.30(b).  Fourth, the Authorized Official evaluates the claim and issues a compensation determination.  See 44 C.F.R. §§ 296.5(d), 296.32(a).  Within 120 days of the compensation determination, the claimant either may accept the determination or may submit a written request for review, i.e., an administrative appeal, to the Director[5] of the Claims Office that explains why the Authorized Official's determination was incorrect.  See 44 C.F.R. §§ 296.32(b), 296.41.  During the administrative appeal, the claimant may submit supplemental evidence to support his or her appeal, the claimant and the Director of the Claims Office may schedule a conference to explore settlement, and the Director of the Claims Office may convene an informal hearing to receive oral testimony from witnesses or experts.  See 44 C.F.R. § 296.41(c)-(g).  The Director of the Claims Office then will issue a written decision on

---

[4]The Hermit's Peak Regulations define Authorized Official as "an employee of the United States who is delegated with authority by the Director of the Claims Office to render binding determinations on claims and to determine compensation due to claimants under the Act." 44 C.F.R. § 296.4.

[5]The Hermit's Peak Regulations define Director as "an Independent Claims Manager appointed by the [FEMA] Administrator who will serve as the Director of the Claims Office." 44 C.F.R. § 269.4.

the administrative appeal, which "will constitute the final decision" under the Hermit's Peak Act, §§ 104(d)(2), 104(i)(1).  44 C.F.R. § 296.41(h).  The claimant then either may initiate arbitration or may seek judicial review of the administrative appeal decision.  See 44 C.F.R. §§ 296.41(i), 296.43.

The Hermit's Peak Regulations contain an overview of the Hermit's Peak Act damages provisions, addressing allowable damages and then exclusions:

> (a)    Allowable damages.    The Act provides for the payment of actual compensatory damages for injury or loss of property, business loss, and financial loss.  The laws of the State of New Mexico will apply to the calculation of damages. Damages must be reasonable in amount.
>
> (b)    Exclusions.  Punitive damages, statutory damages under section 30-32-4 of the New Mexico Statutes Annotated (2019), interest on claims, attorney's fees and agents' fees incurred in prosecuting a claim under the Act or an insurance policy, and adjusting costs incurred by an insurer or other third party with the rights of a subrogee that may be owed by a claimant as a consequence of receiving an award are not recoverable from FEMA [. . . .  ]

44 C.F.R. § 296.21(a)-(b).  In accordance with FEMA's commentary on the interim final rule, 88 Fed. Reg. at 59767, the allowable damages of "property, business loss, and financial loss" exclude noneconomic damages.  See 44 C.F.R. § 296.21(a).

Initially, FEMA required that individuals submit a Notice of Loss by November 14, 2024. See 44 C.F.R. § 296.43.  Congress, however, extends the deadline to December 20, 2024.  See Hermit's Peak/Calf Canyon Claims Office, FEMA.gov, https://www.fema.gov/hermits-peak (last updated December 6, 2024); Patrick Lohmann, Deadline for Hermits Peak-Calf Canyon Fire victims extended a month through federal spending bill, Source NM (September 25, 2024). Congress later extends the deadline again to March 14, 2025, and allocates an additional $1.5 billion to compensate Hermit's Peak/Calf Canyon Fire victims.  See American Relief Act, 2025, H.R. 10545 § 101(1) (2025); Further Continuing Appropriations Act, 2025, H.R. 10545, Title VI.

4.     <u>**The Plaintiffs' Attempts to Obtain Hermit's Peak Act Compensation**</u>.

The Plaintiffs assert that they are victims of the Hermit's Peak/Calf Canyon Fire.  <u>See</u> Plaintiffs' Opposition to FEMA's Motion to Dismiss for Failure to Exhaust Administrative Remedies at 1, filed July 12, 2024 (24-0170 Doc. 28)("<u>Gallegos</u> MTD Response"); Plaintiffs' Opposition to FEMA's Motion to Dismiss for Failure to Exhaust Administrative Remedies at 1, filed July 29, 2024 (24-0426 Doc. 14)("<u>Fidel-Alirez</u> MTD Response"); Plaintiffs' Opposition to FEMA's Motion to Dismiss for Failure to Exhaust Administrative Remedies at 1, filed September 26, 2024 (24-0580 Doc. 14)("<u>Marquez</u> MTD Response"); Plaintiffs' Opposition to FEMA's Motion to Dismiss for Failure to Exhaust Administrative Remedies at 1, filed September 30, 2024 (24-0681 Doc. 28)("<u>Passamonti</u> MTD Response"); Plaintiffs' Opposition to FEMA's Motion to Dismiss for Failure to Exhaust Administrative Remedies at 1, filed October 29, 2024 (24-0779 Doc. 8)("<u>Baca</u> MTD Response"); Plaintiffs' Opposition to FEMA's Motion to Dismiss for Failure to Exhaust Administrative Remedies at 1, filed November 26, 2024 (24-0875 Doc. 29)("<u>Gurule</u> MTD Response"); Plaintiffs' Opposition to FEMA's Motion to at 1, filed November 26, 2024 (24-0979 Doc. 9)("<u>Arrellin</u> MTD Response"); Complaint ¶ 1, at 1, filed November 6, 2024 (24-1137 Doc. 1)("<u>J. Benavidez</u> Complaint"); Complaint ¶ 1, at 1, filed December 3, 2024 (24-1221 Doc. 1)("<u>Lane</u> Complaint"); Complaint ¶ 1, at 1, filed December 30, 2024 (24-1311 Doc. 1)("<u>Leonard</u> Complaint"); an Complaint ¶ 1, at 1, filed January 31, 2025 (25-0109 Doc. 1)("<u>A. Benavidez</u> Complaint").  The Court takes background information about the Plaintiffs from the Complaint in <u>Gallegos v. FEMA</u>, No. CIV 24-0170 JB/JFR, filed February 20, 2024 (D.N.M.)(Doc. 1)("<u>Gallegos</u> Complaint"); the Complaint in <u>Fidel-Alirez v. FEMA</u>, No. CIV 24-0426 JB/JFR, filed May 2, 2024 (D.N.M.)(Doc. 1)("<u>Fidel-Alirez</u> Complaint"); the Complaint in <u>Marquez v. FEMA</u>, No. CIV 24-0580 JB/JFR, filed June 7, 2024 (D.N.M.)(Doc. 1)("<u>Marquez</u>

Complaint"); the Complaint in <u>Passamonti v. FEMA</u>, No. CIV 24-0681 JB/JFR, filed July 3, 2024 (D.N.M.)(Doc. 1)("<u>Passamonti</u> Complaint"); the Complaint in <u>Baca v. FEMA</u>, No. CIV 24-0779 JB/JFR, filed August 2, 2024 (D.N.M.)(Doc. 1)("<u>Baca</u> Complaint"); the Complaint in <u>Gurule v. FEMA</u>, No. CIV 24-0875 JB/JFR, filed August 30, 2024 (D.N.M.)(Doc. 1)("<u>Gurule</u> Complaint"); the Complaint in <u>Arrellin v. FEMA</u>, No. CIV 24-0979 JB/JFR, filed October 1, 2024 (D.N.M.)(Doc. 1)("<u>Arrellin</u> Complaint"); the <u>J. Benavidez</u> Complaint; the <u>Lane</u> Complaint; the <u>Leonard</u> Complaint; and the <u>A. Benavidez</u> Complaint. The Plaintiffs in <u>Gallegos v. FEMA</u> ("<u>Gallegos</u>") are Anthony Gallegos, Olen C. Priddy, Sheila Cavitt-Olguin, Tyler Kemp, Deborah Leyba, Rose Anna Marquez, Daniel Joslin, Gregory Lungstrum, Juanita Maestas, Candace Seaverns, Richard Ogorek, and Juanita Herrera-Romero ("<u>Gallegos</u> Plaintiffs"). See <u>Gallegos</u> Complaint ¶¶ 10-21, at 4-9. The Plaintiffs in <u>Fidel-Alirez v. FEMA</u> ("<u>Fidel-Alirez</u>") are Joe Fidel-Alirez, Jr., Sam S. Arthur, and Wyley Cross ("<u>Fidel-Alirez</u> Plaintiffs"). See <u>Fidel-Alirez</u> Complaint ¶¶ 10-12, at 4-6. The Plaintiffs in <u>Marquez v. FEMA</u> ("<u>Marquez</u>") are Spring Victoria Marquez, Diane Lee Martinez, Rico Martinez, and Corrine Gabaldon ("<u>Marquez</u> Plaintiffs"). See <u>Marquez</u> Complaint ¶¶ 10-13, at 4-6. The Plaintiffs in <u>Passamonti v. FEMA</u> ("<u>Passamonti</u>") are Julia Passamonti, Kathy Martinez, Cori Peterson, Dale E. Jenssen, Sonya Norman, and Bill Turpin ("<u>Passamonti</u> Plaintiffs"). See <u>Passamonti</u> Complaint ¶¶ 10-15 at 4-7. The Plaintiffs in <u>Baca v. FEMA</u> ("<u>Baca</u>") are Kenneth G. Baca, Stephen Anthony Fleet, Lorilee L. Johnson, Christina J. Maes, Zackary Montano, Reynalda Montoya, Sonya Norman, Roberto Antonio Ortiz, Jr., Terry D. Powell, Lupe Torrez, and Heather Vuchinich ("<u>Baca</u> Plaintiffs"). See <u>Baca</u> Complaint ¶¶ 10-20, at 4-9. The Plaintiffs in <u>Gurule v. FEMA</u> ("<u>Gurule</u>") are Elizabeth Gurule, Mary Jane Gurule, Larry James Henson, Colin Holloway, Marcella Lujan, Vincent Maes, Carlos Marquez, Jr., Estate of Paul Martinez, Francisco Melendez, Sonya Norman, Altagracia Padilla Brito, and Louis

Romero ("Gurule Plaintiffs"). See Gurule Complaint ¶¶ 10-21, at 4-9. The Plaintiffs in Arrellin v. FEMA are Tanya R. Arrellin, Anne Bernal, Mary-Ann Fisher, James V. Herrera, Mary Alice Herrera, Mary Jo Kesler, Gurumeet Khalsa, Jane E. Lumsden, Orvis M. Meston, Joe Montano, Olen C. Priddy, and Cassandra C. Rodriguez ("Arrellin Plaintiffs"). See Arrellin Complaint ¶¶ 10-21, at 4-9. The Plaintiffs in J. Benavidez. v. FEMA ("J. Benavidez") are Janette Benavidez, Cassie Bowen, the Manuel G. Chacon and Theresa M. Chacon Revocable Trust, Randall Clark, Corbin Erickson, the James A. and Adele M. Nix Trust, the Estate of Timothy Argus Nix, Maria Ines Portillo Gonzalez, Annamaria Gutierrez, Martin Lopez, Leon Martinez, Alan Osgood, Robert Pastore, Grace Quintana, Jose Revollar, Synthia Salas, Diann Lynn Valdez, Ralph Marquez, Noel Marquez, Mitchell Marquez, Gloria Martinez, Cynthia Marquez, Christine Montoya, Angela Guerin, Alex Marquez, Jr., Walter Marquez, Virginia Trujillo, Sharon Williams, Maui Private Chef Services, LLC, the Michael and Kristine Rael Revocable Trust, Salomon Maese, Jr., Marty Martinez, and Sharon Cristino ("J. Benavidez Plaintiffs"). See J. Benavidez Complaint ¶¶ 10-31, at 5-14. The Plaintiffs in Lane v. FEMA ("Lane") are Cary G. Lane, Ruben Baca, Aubrey L. Edge, Candi Ervin, Brianna Valencia-Encinias, Richard S. Werth, James P. Martinez, Randall Clark, Patricia A. Manzanares, Lupe J. Aranda, Mary Ellen Aranda, Marlene Arsola-Mascarenas, Dominic J. Gurule, Brady P. Lane, Vincent Marquez, Ruth Mary Mascarenas, Kelly Powell, Jeanie Powell, James Michael Blades, Anna Blades, Robert D. Duran, Dominique Montoya, Jesse Romero, Phillip R. Baca, Debra Gastelum, Sophia J. Martinez, Dilia Y. Baca, Gert De Herrera, Albert Gallegos, Michael F. Holden, Helping Pigs Fly, Inc., John Jr. Pino, Michael Sowinski, William L. Zamora, Virginia M. Whipkey, Tangee Dolan, Mabel Maestas, Francisco Melendez, Elisa Leigh Aragon, Mitch J. Bonney, Thomas Roome, Elizabeth Roome, Max J. Sena, and Stella Crespin ("Lane Plaintiffs"). See Lane Complaint ¶¶ 10-48, at 5-21. The Plaintiffs in Leonard v.

FEMA ("Leonard") are Richard Leonard, Patrick Lopez, Carolee Mason, Holly Alice Simpson, Kenneth Gold, Vera J. Pacheco, Navor Garcia, Margarita J. George, Miranda Gonzales, Mary M. Maes, Jose D. E. Maestas, Katherin McClaren, Lorenzo M. Montoya, Aaron W. Romero, Clarence Wayne Whipkey, the Mirza Trust, Alfred C. Valdez, Ernesto Arceno Martinez, Cyn Palmer, Barbara N. Rodgers, Brian Bernal, Felonis Hernandez, Ernestina Grine-Martinez, Joyce A. King, Lorraine L. Martinez, Francine R. Ortiz, Christina Marie Prezant, Mary Underwood, Danny Vigil, Gabriel Sedillo, Lisa Sedillo, Maria Gracela Vigil, Beatriz Gonzalez, and Raquel Lisa Kiki Arellano ("Leonard Plaintiffs").  See Leonard Complaint ¶¶ 10-41, at 5-19.  The Plaintiffs in A. Benavidez. v. FEMA ("A. Benavidez") are Angela Benavidez, Tobin Dolan, Lydia Dolan, Gilbert J. Montano, Joshua R. Hernandez, James Paul Lopez, Monica Lopez, Seaverns Family Living Trust, Cynthia Geoghegan, William D. Geoghegan, Janet A. Espinosa, Pete Maes, Marcella Y. Herrera-Martinez, Sam S. Arthur, Charles Carrillo, Amadeus M. Lopez, Norma J. Nix, Robert A. Ortiz Jr., John Padilla, James Paul Sanchez, Joseph Torrez, Elizabeth Torrez, Paul J. Bonchi, Petra De Herrera, Jose Gurule, Paula J. Lujan, John Lujan, Jeremy R. Stricklin, Lliana Stricklin, David A. Vigil, D'Anna Alexis Revocable Trust, and Daniel Gallegos ("A. Benavidez Plaintiffs"). See A. Benavidez Complaint ¶¶ 10-33, at 4-15.  The Court hereinafter refers to these eleven sets of plaintiffs as the "Plaintiffs."

The Court hereinafter refers to the alleged losses which include pain and suffering, annoyance, discomfort, and inconvenience as "noneconomic damages."  The Plaintiffs submitted Hermit's Peak Act claims, and FEMA issued compensation determinations which exclude noneconomic damages.  See Gallegos Complaint ¶¶ 10-21, at 4-9; Fidel-Alirez Complaint ¶¶ 10-12, at 4-6; Marquez Complaint ¶¶ 10-13, at 4-6; Passamonti Complaint ¶¶ 10-15 at 4-7; Baca Complaint ¶¶ 10-20, at 4-9; Gurule Complaint ¶¶ 10-21, at 4-9; Arrellin Complaint ¶¶ 10-21, at 4-

9. No Plaintiff alleges that he or she appealed FEMA's compensation determination, pursuant to 44 C.F.R. § 296.41(a).  See Gallegos Complaint ¶¶ 1-42, at 2-16; Fidel-Alirez Complaint ¶¶ 1-33, at 2-12; Marquez Complaint ¶¶ 1-34, at 2-13; Passamonti Complaint ¶¶ 1-36 at 2-13; Baca Complaint ¶¶ 1-41, at 2-19; Gurule Complaint ¶¶ 1-44, at 2-20; Arrellin Complaint ¶¶ 1-54, at 2-23.

## PROCEDURAL BACKGROUND

This Memorandum Opinion and Order addresses eleven cases.  The Court presents the procedural background in chronological order.  The does not discuss each case separately, but discusses all development in this litigation in chronological order, regardless of which case or cases the development takes place.

### 1.   The Gallegos Complaint, Gallegos MTD, and Fidel-Alirez Complaint.

On February 20, 2024, the Gallegos Plaintiffs file the Gallegos Complaint.  See Gallegos Complaint at 16.  The Gallegos Plaintiffs allege one cause of action, pursuant to the Judicial Review Provision, seeking judicial review of FEMA's compensation determinations which exclude noneconomic damages.  See Gallegos Complaint ¶¶ 37-42, at 14-16 ("Gallegos Judicial Review Claim").  The Gallegos Plaintiffs ask the Court to: (i) review, modify, or set aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees; (iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper.  See Gallegos Complaint at 16.

On April 29, 2024, FEMA requests that the Court dismiss the Gallegos Plaintiffs' action for lack of subject-matter jurisdiction, pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, because the Gallegos Plaintiffs have not exhausted their administrative remedies.  See Gallegos MTD at 2, 16.  FEMA maintains that the Hermit's Peak Act limits the United States'

sovereign immunity waiver to actions seeking judicial review of "final decisions," which the Hermit's Peak Act regulations define as those that occur after FEMA reviews a claimant's Administrative Appeal.   Gallegos MTD at 8 (citing the Judicial Review Provision; 44 C.F.R. § 296.41(h)).  FEMA asserts that the Gallegos Plaintiffs have not obtained final decisions from FEMA, because FEMA has not issued decisions on the Plaintiffs' Administrative Appeals. See Gallegos MTD at 2.  Specifically, FEMA asserts that only five of the Gallegos Plaintiffs have filed notices of appeal, and none of them has received a decision on his or her Administrative Appeal.  See Gallegos MTD at 6.  Accordingly, FEMA argues that the Court lacks subject-matter jurisdiction over the Gallegos Plaintiffs' claims, because United States has not waived its sovereign immunity against those claims, which seek judicial review of non-final compensation decisions.   See Gallegos MTD at 6-7.   FEMA insists that requiring the Gallegos Plaintiffs to complete the Hermit's Peak Act's administrative appeal process "furthers the purposes of administrative exhaustion."  Gallegos MTD at 12.  FEMA asserts that administrative exhaustion promotes judicial efficiency by "mooting controversies and avoiding piecemeal appeals and by 'producing a useful record for subsequent judicial consideration, especially in a complex or technical factual context.'"   Gallegos MTD at 12 (quoting McCarthy v. Madigan, 503 U.S. 140, 145-46 (1992)(Blackmun, J.)).

On May 2, 2024, the Fidel-Alirez Plaintiffs file the Fidel-Alirez Complaint, which is nearly identical to the Gallegos Complaint.   Compare Fidel-Alirez Complaint ¶¶ 1-33, at 2-15, with Gallegos Complaint ¶¶ 1-41, at 2-17.  Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs allege one cause of action, pursuant to the Judicial Review Provision, seeking judicial review of FEMA's compensation determinations which exclude noneconomic damages.  See Fidel-Alirez Complaint ¶¶ 28-33, at 11-12("Fidel-Alirez Judicial Review Claim").  Like the Gallegos Plaintiffs,

- 19 -

the <u>Fidel-Alirez</u> Plaintiffs ask the Court to: (i) review, modify, or set aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees; (iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper.  See <u>Fidel-Alirez</u> Complaint at 16.

      **2.**       <u>**The Court's Holdings in** </u>**Vigil.**

On May 23, 2024, the Court issues a Memorandum Opinion and Order in <u>Vigil</u>.  See 2024 WL 2404487 at *1.  In <u>Vigil,</u> the Court denies a request for a temporary restraining order ("TRO") enjoining FEMA from communicating with legally represented victims of the Hermit's Peak Fire.  See 2024 WL 2404487 at *1.  In analyzing whether the Court has subject-matter jurisdiction over the <u>Vigil</u> Plaintiffs' claims, the Court concludes that Section 104(i)(1) waives FEMA's sovereign immunity if: (i) the claimants have presented their claims to FEMA; and (ii) the claimants have exhausted their administrative remedies and obtained a final decision.  See 2024 WL 2404487 at *28.  The Court notes that FEMA's regulations provide that, to exhaust administrative remedies and obtain a final decision, claimants must: (i) file a Notice of Loss and sign a Proof of Loss; (ii) obtain a compensation determination from an Authorized Official; (iii) file an Administrative Appeal; and (iv) obtain a final decision on appeal .  See <u>Vigil</u>, 2024 WL 2404487 at *28 (citing 44 C.F.R. §§ 296.5(b)-(d), 296.41(a), (h)).  The Court also holds that the first element of the sovereign immunity waiver of the Hermit's Peak Act -- presentment -- is "'purely "jurisdictional" in the sense that it cannot be "waived,"'" whereas the second element -- exhaustion -- is not jurisdictional, because it is waivable.  <u>Vigil</u>, 2024 WL 2404487 at *28 (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 328 (1976)(Powell, J.))(internal quotations have no citation).  Because the administrative exhaustion requirement is waivable, the Court concludes that sovereign immunity may be waived even if claimants fail to exhaust administrative remedies.  See <u>Vigil</u>, 2024 WL

2404487 at *30 (citing <u>Bartlett v. Schweiker</u>, 719 F.2d 1059, 1061 (10th Cir. 1983)).  The administrative exhaustion requirement can be waived in two ways:

> First, FEMA can waive the exhaustion requirement if it "is satisfied that no further review is warranted either because the internal needs of the agency are fulfilled or because the relief sought is beyond his power to confer."  <u>Bartlett v. Schweiker</u>, 719 F.2d at 1061.  "Second, a reviewing court may find a waiver . . . ."  <u>Bartlett v. Schweiker</u>, 719 F.2d at 1061.

<u>Vigil</u>, 2024 WL 2404487 at *30.  Regarding the second waiver method -- <u>i.e.</u>, the Court finding waiver -- the Court holds that waiver is warranted if: (i) the claims before the district court are collateral to the substantive entitlement claim; (ii) requiring administrative exhaustion will cause irreparable harm; and (iii) administrative exhaustion would be futile.  <u>See Vigil</u>, 2024 WL 2404487 at *30-32.  Applying this framework to the <u>Vigil</u> Plaintiffs' claims, the Court determines that the <u>Vigil</u> Plaintiffs' failure to "allege that they have exhausted their administrative remedies under the HPCCAA by obtaining a final decision from FEMA or otherwise following the procedures outlined in HPCCAA § 104(i) and 44 C.F.R. 296 beyond filing their initial notices of loss" is not fatal to the Court's subject-matter jurisdiction, because Section 104(i)'s administrative exhaustion requirement is waivable.  <u>Vigil</u>, 2024 WL 2404487, at *30.  The Court concludes further, however, that: (i) FEMA has not waived the exhaustion requirement, because FEMA disputes that the <u>Vigil</u> Plaintiffs identify within the Hermit's Peak Act a sufficient sovereign immunity waiver and maintains that the Hermit's Peak Act provides the proper mechanism to resolve the <u>Vigil</u> Plaintiffs' claims; and (ii) the Court should not waive the exhaustion requirement, because although the <u>Vigil</u> Plaintiffs' claims are collateral to their substantive claims for relief under the Hermit's Peak Act, enforcing the exhaustion requirement would neither harm irreparably the Plaintiffs nor be futile. <u>See Vigil</u>, 2024 WL 2404487 at *30-32.  Accordingly, the Court concludes that the <u>Vigil</u> Plaintiffs "may not take advantage of the limited waiver of sovereign immunity in § 104(i), and the Court

has no jurisdiction over their claims under the" Hermit's Peak Act. <u>Vigil</u>, 2024 WL 2404487, at

*32. In evaluating the scope of Section 104(i)(1)'s sovereign immunity waiver, the Court holds

that it must "confront two interrelated questions": (i) what claims may be brought against the

United States pursuant to the waiver; and (ii) what relief is available against the United States

pursuant to the waiver. <u>Vigil</u>, 2024 WL 2404487, at *32. Applying this framework, the Court

concludes that, if the <u>Vigil</u> Plaintiffs exhaust their administrative remedies or demonstrate that the

exhaustion requirement has been or should be waived, then the <u>Vigil</u> Plaintiffs' claims fall within

the Hermit Peak Act's sovereign immunity waiver, because the <u>Vigil</u> Plaintiffs' contentions that

FEMA is interfering with their attorney-client relationships "are sufficiently intertwined with the

Court's hypothetical review of FEMA's final decisions as to the Plaintiffs' HPCAA claims."

<u>Vigil</u>, 2024 WL 2404487, at *34.

**3.    <u>The Marquez Complaint and the Passamonti Complaint</u>.**

On June 7, 2024, the <u>Marquez</u> Plaintiffs file the <u>Marquez</u> Complaint, which is nearly

identical to the <u>Gallegos</u> Complaint and the <u>Fidel-Alirez</u> Complaint. <u>Compare</u> <u>Marquez</u>

Complaint ¶¶ 1-34, at 2-13, <u>with</u> <u>Gallegos</u> Complaint ¶¶ 1-41, at 2-17; <u>Fidel-Alirez</u> Complaint

¶¶ 1-33, at 2-15. Like the <u>Gallegos</u> Plaintiffs and the <u>Fidel-Alirez</u> Plaintiffs, the <u>Marquez</u> Plaintiffs

allege one cause of action, pursuant to the Judicial Review Provision seeking judicial review of

FEMA's compensation determinations which exclude noneconomic damages. <u>See</u> <u>Marquez</u>

Complaint ¶¶ 29-34, at 12-13 ("<u>Marquez</u> Judicial Review Claim"). Like the <u>Gallegos</u> Plaintiffs

and the <u>Fidel-Alirez</u> Plaintiffs, the <u>Marquez</u> Plaintiffs ask the Court to: (i) review, modify, or set

aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees;

(iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper.

<u>See</u> <u>Marquez</u> Complaint at 13.

On July 7, 2024, the Passamonti Plaintiffs file the Passamonti Complaint, which is nearly identical to the Gallegos Complaint, the Fidel-Alirez Complaint, and the Marquez Complaint. Compare Passamonti Complaint ¶¶ 1-36, at 2-17, with Gallegos Complaint ¶¶ 1-41, at 2-17; Fidel-Alirez Complaint ¶¶ 1-33, at 2-15; Marquez Complaint ¶¶ 1-34, at 2-13. Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, and the Marquez Plaintiffs, the Passamonti Plaintiffs allege one cause of action, pursuant to the Judicial Review Provision, seeking judicial review of FEMA's compensation determinations which exclude noneconomic damages. See Passamonti Complaint ¶¶ 31-36 at 12-13 ("Passamonti Judicial Review Claim"). Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, and the Marquez Plaintiffs, the Passamonti Plaintiffs ask the Court to: (i) review, modify, or set aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees; (iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper. See Passamonti Complaint at 14.

### 4.    The Gallegos MTD Response.

On July 12, 2024, the Gallegos Plaintiffs respond to the Gallegos MTD. See Gallegos MTD Response at 16. The Gallegos Plaintiffs make two arguments: (i) Section 104(i)(1)'s exhaustion requirement is not jurisdictional; and (ii) the Court should excuse the Gallegos Plaintiffs' failure to exhaust. See Gallegos MTD Response at 5, 9. Regarding (i), the Gallegos Plaintiffs insist that the Judicial Review Provision's exhaustion requirement is a claim-processing rule that does not bear on the Court's subject-matter jurisdiction, because Section 104(i)(1) lacks "'sweeping and direct' language [that] shows 'that there is no federal jurisdiction prior to exhaustion.'" Gallegos MTD Response at 5 (quoting Weinberger v. Salfi, 422 U.S. 749 at 757 (1975)(Rehnquist, J.)("Salfi")). The Gallegos plaintiffs identify two exhaustion requirements in other statutes that the Supreme Court has determined are non-jurisdictional, and argue that the

Court should conclude similarly that Section 104(i)(1) is non-jurisdictional, because it contains permissive language. See Gallegos MTD Response at 6-7 (citing Santos-Zacaria v. Garland, 598 U.S. 411, 416-417 (2023)(Jackson, J.); EPA v. EME Homer City Generation, L.P., 572 U.S. 489, 511-512 (2014)(Ginsburg, J.)). Furthermore, the Gallegos Plaintiffs argue that the Hermit's Peak Act's structure affirms that the Judicial Review Provision is non-jurisdictional, because the Hermit's Peak Act allows claimants to sue the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, or any other provision of law, without exhausting administrative remedies. See Gallegos MTD Response at 7 (citing Hermit's Peak Act § 104(h)(1)(A)-(C)). Accordingly, the Gallegos plaintiffs assert that the Gallegos MTD fails, because the Court may not convert a rule 12(b)(1) motion that fails to identify a jurisdictional defect into a motion for summary judgment under rule 56. See Gallegos MTD Response at 8 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987)). The Gallegos Plaintiffs maintain that, even if the Court converts the Gallegos MTD into a summary judgment motion, however, the exhaustion issue would be an affirmative defense. See Gallegos MTD Response at 8. The Gallegos Plaintiffs assert that, in evaluating this affirmative defense, the Court should disregard any extrinsic evidence of the Gallegos Plaintiffs' failure to exhaust and not dismiss the action on the pleadings alone. See Gallegos MTD Response at 8 (first citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), then citing Jones v. Bock, 549 U.S. 199, 216 (2007)(Roberts, C.J.)).

Regarding (ii), the Gallegos Plaintiffs argue that the Court should "'invoke prudential exceptions to overcome lack of exhaustion," because the exhaustion requirement is non-jurisdictional. Gallegos MTD Response at 9 (quoting Chissoe v. Zinke, 725F. App'x 614, 620–21 (10th Cir. 2018)). The Gallegos Plaintiffs identify three prudential exceptions: (i) the issue presented is purely a statutory interpretation question; (ii) mandating exhaustion would be futile;

and (iii) mandating exhaustion would cause irreparable harm.  See Gallegos MTD Response at 9-

10 (citing Kansas ex rel. Kansas Dep't for Children & Fam. v. SourceAmerica, 874 F.3d 1226,

1246–47 (10th Cir. 2017); Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 433 (10th Cir.

2011)).  Regarding the first two prudential exceptions, the Gallegos Plaintiffs argue that the only

live issue is whether claimants are entitled to noneconomic damages for their Hermit's Peak Act

claims.  See Gallegos MTD Response at 10-14.  According to the Gallegos Plaintiffs, this issue is

a statutory interpretation issue, and requiring the Gallegos Plaintiffs to wait for FEMA to issue

determinations on their administrative appeals is futile, because there is no question that FEMA

will apply the regulation excluding noneconomic damages and deny the Gallegos Plaintiffs'

Administrative Appeals.  See Gallegos MTD Response at 10-14.  Regarding irreparable harm, the

Gallegos Plaintiffs allege that, because FEMA's regulations do not provide a deadline for FEMA

to make a final administrative appeal determination, the Gallegos Plaintiffs will suffer irreparable

harm if they are forced to "pursue an appeal with no end in sight."  Gallegos MTD Response at

14.  Finally, the Gallegos Plaintiffs request leave to amend the Gallegos Complaint "to support

any exhaustion excuses."  Gallegos MTD Response at 15.

### 5.    The Fidel-Alirez MTD and the Fidel-Alirez MTD Response.

On July 15, 2024, FEMA files the Fidel-Alirez MTD.  See Fidel-Alirez MTD at 14.  The

Fidel-Alirez MTD is substantively identical to the Gallegos MTD.  Compare Fidel-Alirez MTD at

1-16, with Gallegos MTD at 1-16.  Regarding the status of the Fidel-Alirez Plaintiffs'

administrative appeals, FEMA asserts that two of the three Fidel-Alirez Plaintiffs have filed

notices of appeal, and neither has received a decision on his or her Administrative Appeal.  See

Fidel-Alirez MTD at 6.  On July 29, 2024, the Fidel-Alirez Plaintiffs file the Fidel-Alirez MTD

Response.  See Fidel-Alirez MTD Response at 16.  The Fidel-Alirez MTD Response is

substantively identical to the Gallegos MTD Response.  Compare Fidel-Alirez MTD at 1-26, with Gallegos MTD at 1-26.

      **6.**     **The Baca Complaint.**

On August 2, 2024, the Baca Plaintiffs file the Baca Complaint, which is nearly identical to the Gallegos Complaint, the Fidel-Alirez Complaint, the Marquez Complaint, and the Passamonti Complaint.  Compare Baca Complaint ¶¶ 1-41, at 2-15, with Gallegos Complaint ¶¶ 1-41, at 2-17; Fidel-Alirez Complaint ¶¶ 1-33, at 2-15; Marquez Complaint ¶¶ 1-34, at 2-13; Passamonti Complaint ¶¶ 1-36, at 2-17.  Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, the Marquez Plaintiffs, and the Passamonti Plaintiffs, the Baca Plaintiffs allege one cause of action, pursuant to the Judicial Review Provision, seeking judicial review of FEMA's compensation determinations which exclude noneconomic damages.  See Baca Complaint ¶¶ 36-41 at 14-15 ("Baca Judicial Review Claim").  Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, the Marquez Plaintiffs, and the Passamonti Plaintiffs, the Baca Plaintiffs ask the Court to: (i) review, modify, or set aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees; (iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper.  See Baca Complaint at 14.

      **7.**     **The Gallegos Reply.**

On August 9, 2024, FEMA replies to the Gallegos MTD Response.  See Reply in Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies at 12, filed August 9, 2024 (24-0170 Doc. 34)("Gallegos MTD Reply").  FEMA first notes that the Gallegos Plaintiffs "do not contend that they have exhausted their administrative remedies" or obtained final decisions for their Hermit's Peak Act claims.  Gallegos MTD Reply at 1.  Accordingly, FEMA focuses its arguments on: (i) whether the Hermit's Peak Act exhaustion requirement is jurisdictional; and

(ii) whether the Gallegos Plaintiffs may be excused from obtaining final decisions before filing suit. See Gallegos Reply at 1.

Regarding (i), FEMA maintains that the Hermit's Peak Act's exhaustion requirement is jurisdictional, because the United States' sovereign immunity waiver is limited to actions "'following a final decision of the Administrator.'"  Gallegos MTD Reply at 3 (quoting Hermit's Peak Act § 104(i)(1)).   Accordingly, FEMA argues that, because "the existence of the United States' waiver of sovereign immunity is part of Petitioners' burden in establishing the Court's jurisdiction," the exhaustion requirement is jurisdictional.  Gallegos MTD Reply at 3.  FEMA disputes the Gallegos Plaintiffs' assertion  that the Hermit's Peak Act allows claimants to sue the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), or any other provision of law, without exhausting administrative remedies.  See Gallegos MTD Reply at 3-4 (citing Gallegos MTD Response at 7).  FEMA characterizes the Hermit's Peak Act's "Election of Remedy" provision -- which says that individuals may seek compensation by submitting a claim under the Hermit's Peak Act, filing suit under the FTCA, or "bringing an authorized civil action under any other provision of law," Hermit's Peak Act § 104(h)(1) -- as a summary of a claimant's compensation options, and not as an expansion of the Hermit's Peak Act's sovereign immunity waiver or an exemption from the administrative exhaustion requirement.  Gallegos MTD Reply at 4.  To support this contention, FEMA highlights that civil actions brought under "'any other provision of law'" must be "authorized."  Gallegos MTD Reply at 4 (quoting Hermit's Peak Act § 104(h)(1)(C)).

FEMA acknowledges that the Court interprets the Judicial Review Provision's final decision requirement as partially non-jurisdictional in that the final decision requirement's administrative exhaustion element is waivable.  See Gallegos MTD Reply at 4 (citing Vigil, 2024

WL 2404487, at *28).  FEMA argues, however, that <u>Vigil's</u> holding on this issue is not fatal to FEMA's motion to dismiss for lack of subject-matter jurisdiction for two reasons.  <u>See Gallegos</u> MTD Reply at 4-5.  First, FEMA maintains that the presentment element of Section 104(i)(1)'s final decision requirement is jurisdictional, and, thus, "to the extent that Petitioners challenge their claim determinations on grounds that were not raised to FEMA, the Court lacks jurisdiction to consider such challenges."  <u>Gallegos</u> MTD Reply at 5.  Second, FEMA insists that the exhaustion requirement, even if non-jurisdictional, merits dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure, because the <u>Gallegos</u> Plaintiffs' failure to allege that they obtained Administrative Appeal decisions does not meet rule 9(c)'s "pleading requirement that 'all conditions precedent have occurred or been performed.'"  <u>Gallegos</u> MTD Reply at 5 (quoting <u>Anderson v. United Tel. Co. of Kansas</u>, 933 F.2d 1500, 1505 (10th Cir. 1991)).  FEMA also insists that the Court may consider evidence outside the pleadings without converting the <u>Gallegos</u> MTD into a summary judgment motion, because the Court may review the administrative record when assessing an administrative exhaustion defense on a rule 12(b)(6) motion to dismiss.  <u>See Gallegos</u> MTD Reply at 6 (citing <u>Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.</u>, 61 F. Supp. 1013, 1082 (D.N.M. 2014)(Browning, J.)).

Regarding FEMA's second main argument -- <u>i.e.</u>, whether the <u>Gallegos</u> Plaintiffs may be excused from obtaining final decisions before filing suit -- FEMA asserts that the Court should not waive the administrative exhaustion requirement, because the <u>Gallegos</u> Plaintiffs do not meet all three elements of judicial waiver: (i) asserting a colorable Constitutional claim that is collateral to the underlying administrative proceedings; (ii) showing that exhaustion results in irreparable harm; and (iii) showing that exhaustion is futile.  <u>See Gallegos</u> MTD Reply at 7 (citing <u>Blue Valley Hosp., Inc. v. Azar</u>, 919 F.3d 1278, 1284-85 (10th Cir. 2019); <u>Vigil</u>, 2024 WL 2404487, at

*28, *30).  Regarding the first element -- collaterality -- FEMA argues that the Gallegos Plaintiffs do not allege, and cannot plausibly allege, that their claims before the Court are collateral to the substantive issues of their underlying Hermit's Peak Act proceedings.  See Gallegos MTD Reply at 7-8.  FEMA also disputes that the Gallegos Plaintiffs' contention that their action raises only a legal question waives the administrative exhaustion requirement.  See Gallegos MTD Reply at 8. FEMA argues that resolving that legal question -- whether noneconomic damages are available under the Hermit's Peak Act -- in the Gallegos Plaintiffs' favor does not resolve the question of the amount of noneconomic damages to which the Gallegos Plaintiffs may be entitled, which is a fact-bound question.  See Gallegos MTD Reply at 8.  FEMA also notes that the Gallegos Plaintiffs' requested relief is not limited to noneconomic damages, given that the Gallegos Complaint seeks "'all their claimed damages permitted under the HPFAA.'"  Gallegos MTD Reply at 8 (quoting Gallegos Complaint at 16).  Accordingly, FEMA asserts that the Gallegos Plaintiffs' claims before the Court are not collateral to their underlying administrative  proceedings.  See Gallegos MTD Reply at 8.

Regarding the second element -- irreparable harm -- FEMA asserts that a delay in claim payment is not irreparable harm, and that excusing administrative exhaustion would not speed up resolution of the Gallegos Plaintiffs' compensation requests, because FEMA cannot resolve those requests until the Court decides the noneconomic damages issue in Lands and Dolan.  See Gallegos MTD Reply at 10 (citing Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003)). On this second point, FEMA promises that, after Lands and Dolan are resolved, "FEMA will adjudicate administrative appeals in accordance with judicial rulings."  Gallegos MTD Reply at 10.  Regarding the third judicial waiver element -- futility -- FEMA disagrees with the Gallegos Plaintiffs' contention that FEMA "will 'certainly deny Plaintiffs' claims for noneconomic damages

on administrative appeal,'" because FEMA is waiting for the <u>Lands</u> and <u>Dolan</u> ruling before it

resolves the administrative appeals.  <u>Gallegos</u> MTD Reply at 11 (quoting <u>Gallegos</u> MTD Response

at 13).  Furthermore, FEMA asserts that, even if FEMA denies requests for noneconomic damages,

filing administrative appeals still may be fruitful, because other elements of the <u>Gallegos</u> Plaintiffs'

administrative appeals may be adjusted on appeal.  See <u>Gallegos</u> MTD Reply at 11.  In conclusion,

FEMA requests that the Court: (i) dismiss the <u>Gallegos</u> Complaint either under rule 12(b)(1) or

rule 12(b)(6); and (ii) deny the <u>Gallegos</u> Plaintiffs' request to amend the <u>Gallegos</u> Complaint,

because the Gallegos Plaintiffs neither present properly this request, nor explain informally any

facts they might add to prevent dismissal.  See <u>Gallegos</u> MTD Reply at 11-12.

**8.    The Fidel-Alirez MTD Reply and the Gallegos and Fidel-Alirez Hearing.**

On August 13, 2024, the <u>FEMA</u> replies to the <u>Fidel-Alirez</u> MTD Response.  See Reply in

Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies at 12, filed August

13, 2024 (24-0426 Doc. 15)("<u>Fidel-Alirez</u> MTD Reply").   The <u>Fidel-Alirez</u> MTD Reply is

substantively identical to the <u>Gallegos</u> MTD Reply.  <u>Compare</u> <u>Fidel-Alirez</u> MTD Reply at 1-12,

<u>with</u> <u>Gallegos</u> MTD Reply at 1-12.  On August 14, 2024, the parties present oral arguments

regarding the <u>Gallegos</u> and <u>Fidel-Alirez</u> MTD briefing.  See August 14, 2024, Hearing Minutes at

1.  After the Court reminds the parties of its <u>Vigil</u> holdings, FEMA represents to the Court that:

(i) six of the twelve <u>Gallegos</u> Plaintiffs have filed notices of appeal with FEMA; (ii) three of those

six notices of appeal are premature, because there have not been claim determinations on the entire

claim; and (iii) FEMA has acknowledged two of the six notices of appeal.  See Transcript of

Hearing at 9:20-10:6 (taken August 14, 2024)(Sydow), filed September 30, 2024

(Doc. 39)("August 13, 2024, Tr.").  FEMA contends that none of the <u>Gallegos</u> Plaintiffs or <u>Fidel-</u>

<u>Alirez</u> Plaintiffs has received a final administrative appeal decision.[6]  <u>See</u> August 13, 2024, Tr. at 10:7-11 (Court, Sydow).    FEMA also acknowledges that it has stayed the administrative proceedings for claimants seeking noneconomic damages, pending resolution of <u>Lands</u> and <u>Dolan</u>, and FEMA promises to resolve the claimants' noneconomic damages requests through the administrative appeal process after the Court resolves <u>Lands</u> and <u>Dolan</u>.  <u>See</u> August 13, 2024, Tr. at 10:14-24 (Sydow); <u>id.</u> at 14:19-21 ("[T]hat [noneconomic damages] question is still pending and will be resolved by FEMA in the administrative appeal following the resolution of Lands and Dolan.").    In response, the <u>Gallegos</u> Plaintiffs and the <u>Fidel-Alirez</u> Plaintiffs argue that the Hermit's Peak Act does not have an exhaustion requirement, because the statute does not provide for exhaustion or any appeal process.  <u>See</u> August 13, 2024, Tr. at 26:19-2 (Lothyan).  Regarding the three judicial waiver prongs -- collaterality, irreparable harm, and futility -- the <u>Gallegos</u> Plaintiffs and the <u>Fidel-Alirez</u> Plaintiffs argue: (i) there is a collateral attack on FEMA's regulations establishing an appeals process with no deadline, <u>see</u> August 13, 2024, Tr. at 27:11-25 (Lothyan); (ii) there is irreparable harm, because claimants must go through an endless appeals process to exhaust administrative remedies before seeking judicial review to protect their property rights in their Hermit's Peak Act claims, <u>see</u> August 13, 2024, Tr. at 29:6-18 (Lothyan); and (iii) administrative exhaustion is futile, because, even if the Court determines that claimants are entitled to noneconomic damages, FEMA still may deny those claims and force claimants to seek judicial review again, <u>see</u> August 13, 2024, Tr. at 28:6-29:2 (Lothyan).

---

[6] The <u>Gallegos</u> Plaintiffs and the <u>Fidel-Alirez</u> Plaintiffs also agree that none of them has received a final decision on any administrative appeal.  <u>See</u> August 13, 2024, Tr. at 23:17-20 (Court, Lothyan).

9.      **The Gurule Complaint.**

On August 30, 2024, the Gurule Plaintiffs file the Gurule Complaint, which is substantively identical to the other complaints discussed previously in this Memorandum Opinion and Order. Compare Gurule Complaint ¶¶ 1-44, at 2-17, with Gallegos Complaint ¶¶ 1-41, at 2-17; Fidel-Alirez Complaint ¶¶ 1-33, at 2-15; Marquez Complaint ¶¶ 1-34, at 2-13; Passamonti Complaint ¶¶ 1-36, at 2-17; Baca Complaint ¶¶ 1-41, at 2-15. Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, the Marquez Plaintiffs, the Passamonti Plaintiffs, and the Baca Plaintiffs, the Gurule Plaintiffs allege one cause of action, pursuant to the Judicial Review Provision, seeking judicial review of FEMA's compensation determinations which exclude noneconomic damages. See Gurule Complaint ¶¶ 39-44, at 15-17 ("Gurule Judicial Review Claim"). Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, the Marquez Plaintiffs, the Passamonti Plaintiffs, and the Baca Plaintiffs, the Gurule Plaintiffs ask the Court to: (i) review, modify, or set aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees; (iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper. See Gurule Complaint at 17.

10.      **The Marquez MTD and the Passamonti MTD.**

On September 12, 2024, the FEMA files the Marquez MTD. See Marquez MTD at 23. The Marquez MTD arguments are similar to those in the Gallegos Reply and the Fidel-Alirez Reply: (i) the Hermit's Peak Act has an administrative exhaustion requirement that is jurisdictional, see Marquez MTD at 6-14; (ii) FEMA has not waived the administrative exhaustion requirement, see Marquez MTD at 15-16; and (iii) there is no judicial waiver, because the Marquez Plaintiffs' claims are not collateral, and requiring administrative exhaustion neither will cause irreparable harm nor will it be futile, see Marquez MTD at 16-23. FEMA represents that one of

the four Marquez Plaintiffs has not filed a notice of appeal, and the remaining three Marquez

Plaintiffs have not received final decisions on their administrative appeals.  See Marquez MTD at

14.  On September 16, 2024, FEMA files the Passamonti MTD, which is substantively identical to

the Marquez MTD.  Compare Marquez MTD at 1-26, with Passamonti MTD at 1-28.  FEMA

represents that two of the four Passamonti Plaintiffs have not filed notices of appeal for all of their

claims, and the remaining six Passamonti Plaintiffs have not received final decisions on their

administrative appeals.  See Passamonti MTD at 15.

### 11.    The Marquez MTD Response and the Passamonti MTD Response.

On September 26, 2024, the Marquez Plaintiffs respond to the Marquez MTD.  See

Marquez MTD Response at 17.   The Marquez Plaintiffs make three primary arguments:

(i) administrative exhaustion is not jurisdictional, and, thus, can be waived, see Marquez MTD

Response at 7-8; (ii) FEMA waives the exhaustion requirement by taking the position that the

Hermit's Peak Act does not permit noneconomic damages, because that position suggests that,

according to FEMA, the relief sought is beyond its power to confer, see Marquez MTD Response

at 9-12 (citing Mathews v. Diaz, 426 U.S. 67, 69 (1976)(Stevens, J.)); Bartlett v. Schweiker, 719

F.2d at 1062); and (iii) the three judicial waiver elements are met, see Marquez MTD Response at

12-16.  Regarding judicial waiver's collaterality element, the Marquez Plaintiffs assert that they

make two collateral attacks: (i) a Fifth Amendment to the Constitution of the United States

property deprivation claim, based on FEMA's allegedly unlawful rule that excludes noneconomic

damages, because the Fifth Amendment protects government benefits to which claimants are

lawfully entitled, see Marquez MTD Response at 12-13; and (ii) a Fifth Amendment due process

claim, based on FEMA's administrative appeal process that includes no deadline and results in

final decision "much later than 180 days from submission of the claim," Marquez MTD Response

at 13.  Regarding judicial waiver's irreparable harm element, the <u>Marquez</u> Plaintiffs allege that requiring them "to file an appeal with no end in sight and more importantly, only for the appeal to be stayed" causes them irreparable harm.  <u>Marquez</u> MTD Response at 15.  Regarding judicial waiver's futility element, the <u>Marquez</u> Plaintiffs argue that no appeal or further record development will change the nearly certain outcome of their administrative appeals -- that FEMA will deny the <u>Marquez</u> Plaintiffs' noneconomic damages claims.  <u>See</u> <u>Marquez</u> MTD Response at 15-16.  The <u>Marquez</u> Plaintiffs request that the Court deny the <u>Marquez</u> MTD or, in the alternative, grant the <u>Marquez</u> Plaintiffs leave to amend the <u>Marquez</u> Complaint.  <u>See</u> <u>Marquez</u> MTD Response at 17.

### 12.    <u>The Passamonti MTD Response</u>.

On September 30, 2024, the <u>Passamonti</u> Plaintiffs respond to the <u>Passamonti</u> MTD.  <u>See</u> <u>Passamonti</u> MTD Response at 17.  The <u>Passamonti</u> MTD Response is substantively identical to the <u>Marquez</u> MTD Response.  <u>Compare</u> <u>Passamonti</u> MTD Response at 1-17, <u>with</u> <u>Marquez</u> MTD Response at 1-17.  On October 15, 2024, FEMA files the <u>Baca</u> MTD, which is substantively identical to the <u>Marquez</u> MTD and the <u>Passamonti</u> MTD.  <u>Compare</u> <u>Baca</u> MTD at 1-23, <u>with</u> <u>Marquez</u> MTD at 1-23; <u>Passamonti</u> MTD at 1-24.

### 13.    <u>The Arrellin Complaint</u>.

On October 1, 2024, the <u>Arrellin</u> Plaintiffs file the <u>Arrellin</u> Complaint.  <u>See</u> <u>Arrellin</u> Complaint at 21.  The <u>Arrellin</u> Plaintiffs bring two causes of action.  <u>See</u> <u>Arrellin</u> Complaint ¶¶ 42-54, at 16-19.  The first cause of action is substantively identical to the single cause of action that the previous plaintiffs described in this Memorandum Opinion and Order brings: the <u>Arrellin</u> Plaintiffs seek judicial review, pursuant to the Judicial Review Provision, of FEMA's compensation determinations which exclude noneconomic damages.  <u>See</u> <u>Arrellin</u>

Complaint ¶¶ 42-47, at 16-17 ("Arrellin Judicial Review Claim"). In the second cause of action, the Arrellin Plaintiffs bring an APA claim pursuant to 5 U.S.C. § 706, alleging that the appeals process for the Hermit's Peak Act is unlawful, contrary to the Arrellin Plaintiffs' Constitutional rights, in excess of statutory authority, arbitrary, capricious, and an abuse of discretion, because FEMA fails "to provide a deadline for the appeal determination, and [] to provide other guidelines for the appeal process." Arrellin Complaint ¶¶ 48-54, at 17-19 ("Arrellin APA Claim").

Like the Administrative Exhaustion Plaintiffs, the Arrellin Plaintiffs ask the Court to: (i) review, modify, or set aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees; (iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper. See Arrellin Complaint at 20. Unlike the Administrative Exhaustion Plaintiffs, the Arrellin Plaintiffs ask the Court: (i) to compel FEMA to establish guidelines for the administrative appeal process, which provide a timely determination on the appeal, a standard of review, and information regarding who determines the appeal; and (ii) issue an order which excuses the Arrellin Plaintiffs from completing the administrative Appeal process before seeking judicial review of their Hermit's Peak Act claims. See Arrellin Complaint at 20.

### 14. **The Marquez MTD Reply, the Passamonti MTD Reply, and the Baca MTD**.

On October 15, 2024, FEMA replies to both the Marquez MTD Response and the Passamonti MTD Response. See Reply in Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed October 15, 2024 (24-0580 Doc. 17)("Marquez MTD Reply"); Reply in Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed October 15, 2024 (24-0681 Doc. 12)("Passamonti MTD Reply"). Compare Marquez MTD Reply at 1-13, with Passamonti MTD Reply at 1-13. First, FEMA insists that the administrative exhaustion requirement is jurisdictional, because Section 104(i)(1) allows only claimants who

have received a final decision to seek judicial review.  See Marquez MTD Reply at 2; Passamonti MTD Reply at 2.  Second, FEMA notes that the Marquez Plaintiffs and the Passamonti plaintiffs have not received final decisions on their administrative appeals.  See Marquez MTD Reply at 3; Passamonti MTD Reply at 3.  Third, FEMA argues that it has not waived the administrative exhaustion requirement, because FEMA's promulgation of a final rule that does not permit noneconomic damages is "merely the agency's attempt to implement the damages provisions authorized by Congress in the Act."  Marquez MTD Reply at 4; Passamonti MTD Reply at 4. Fourth, FEMA addresses the three judicial waiver elements.  See Marquez MTD Reply at 5-10; Passamonti MTD Reply at 5-10.  Regarding collaterality, FEMA argues that the Marquez Complaint does not assert any Constitutional claims, which, according to FEMA, are raised for the first time in the Marquez MTD Response.  See Marquez MTD Reply at 5-6; Passamonti MTD Reply at 5-6.  FEMA argues further that, even if there are Constitutional claims, those claims are meritless, because the claimants fail to identify a "legitimate claim of entitlement to the benefit" which they seek.  Marquez MTD Reply at 6; Passamonti MTD Reply at 6 (both briefs citing Teigen v. Renfrow, 511 F.3d 1072, 1078-79 (10th Cir. 2007)).  FEMA argues further that, even if claimants have a colorable Fifth Amendment claim, the claim is not collateral, because it seeks the same relief available pursuant to the Hermit's Peak Act.  See Marquez MTD Reply at 6-7; Passamonti MTD Reply at 6-7.  Regarding irreparable harm, FEMA disputes that claimants are required to file an appeal with no end in sight and argues that a delay in monetary payment is not irreparable harm.  See Marquez MTD Reply at 8-9; Passamonti MTD Reply at 8-9.  Regarding futility, FEMA disputes that it will deny administrative appeals seeking noneconomic damages and argues that the administrative appeal process is not futile, because FEMA may apply the Court's Lands and Dolan decision when deciding administrative appeals.  On November 12, 2024,

FEMA files the Baca MTD, which is substantively identical to the Marquez MTD and the Passamonti MTD.  Compare Baca MTD at 1-23, with Marquez MTD at 1-23; Passamonti MTD at 1-24.

15.  **The Marquez and Passamonti Hearing.**

On October 24, 2024, the parties present oral arguments on the Marquez and Passamonti MTD briefing.  See October 24, 2024, Hearing Minutes at 1.  FEMA begins by developing further its argument that 104(i)(1)'s administrative exhaustion requirement is jurisdictional and not waivable.  See Draft Transcript of October 24, 2024, Hearing at 15:12-18:10 (taken October 24, 2024)(Kelly)("October 24, 2024, Tr.").  FEMA critiques the Court's Vigil holding -- i.e., that the administrative exhaustion requirement is nonjurisdictional and waivable -- by asserting that the Court's analogy to § 405(g) of the Social Security Act, 42 U.S.C. §§ 301-1397mm ("Section 405(g)"), fails to analyze how Section 405(g) and Section 104(i)(1) have different language regarding each statute's sovereign immunity waiver.  See October 24, 2024, Tr. at 17:18-14 (Kelly).  Specifically, FEMA argues that: (i) Section 405(g) provides for judicial review over "any" final decision, whereas the Hermit's Peak Act's Judicial Review Provision provides for judicial review of "a" final decision, compare Section 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . ."), with Judicial Review Provision ("Any claimant aggrieved by a final decision of the Administrator under this Act may . . . bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside the decision, in whole or in part."), and; (ii) this difference indicates that 104(i)(1)'s sovereign immunity waiver is narrower than Section 405(g)'s sovereign immunity waiver, see October 24, 2024, Tr. at 15:12-17:7 (Kelly)(citing Smith v.

Berryhill, 587 U.S. 471 (2019)(Sotomayor, J.)).  Next FEMA repeats its arguments regarding the

Marquez Plaintiffs and the Passamonti Plaintiffs' failure to satisfy any of the three judicial waiver

elements.  See October 24, 2024, Tr. at 18:11- 25:16 (Kelly).  Finally, FEMA maintains that it has

not waived the administrative exhaustion requirement and provides two reasons.  See October 24,

2024, Tr. at 25:17- 26:13 (Kelly).  First, FEMA asserts that its internal needs have not been met,

because continuing the Administrative Appeal process benefits the agency by allowing claimants

to submit additional evidence.  See October 24, 2024, Tr. at 25:17- 26:6 (Kelly).  Second, FEMA

asserts that it has not taken the position that the relief sought is beyond its power to confer, because

FEMA is adjudicating claims for economic damages, and FEMA "is merely waiting to adjudicate"

the noneconomic damages claims "until the Court decides the Lands and Dolan Cases."  October

24, 2024, Tr. at 26:7-13 (Kelly).[7]

In response, the Marquez Plaintiffs and the Passamonti Plaintiffs argue that FEMA has

waived the administrative exhaustion requirement.  See October 24, 2024, Tr. at 27:7- 29:22

(Lothyan).  The Marquez Plaintiffs and the Passamonti Plaintiffs maintain that the agency has

determined that the relief sought is beyond the agency's power to confer, given that FEMA refuses

to move forward on their claims and administrative appeals while the noneconomic damages issue

is being litigated.  See October 24, 2024, Tr. at 27:7- 29:22 (Lothyan).  Next, the Marquez Plaintiffs

---

[7]Later in the hearing, FEMA represents that, once the Court decides Lands and Dolan, the agency will adjudicate the noneconomic damages claims and Administrative Appeals "right away":

> If [the Court] does resolve Lands and Dolan not in FEMA's favor, FEMA will have to change its rule.  It will have to amend the rule that says non-economic damages are not allowable.  And once it does this, it can adjudicate the administrative appeals that are specific to non-economic damages right away.

October 24, 2024, Tr. at 36:3-9 (Kelly).

and the Passamonti Plaintiffs conclude by repeating their judicial waiver arguments.  See October 24, 2024, Tr. at 29:23-32:23 (Lothyan).

16.    **The Baca MTD Response, the J. Benavidez Complaint, and the Gurule MTD.**

On October 29, 2024, the Baca Plaintiffs file the Baca MTD response, which is substantively identical to the Marquez MTD Response and the Passamonti MTD Response. Compare Baca MTD Response at 1-19, with Marquez MTD Response at 1-19; Passamonti MTD at 1-18.  On November 6, 2024, the J. Benavidez Plaintiffs file the J. Benavidez Complaint, which is substantively identical to the Gallegos Complaint, the Fidel-Alirez Complaint, the Marquez Complaint, the Passamonti Complaint, the Baca Complaint, and the Gurule Complaint.  Compare J. Benavidez Complaint ¶¶ 1-54, at 2-22, with Gallegos Complaint ¶¶ 1-42, at 2-17; Fidel-Alirez Complaint ¶¶ 1-33, at 2-15; Marquez Complaint ¶¶ 1-34, at 2-13; Passamonti Complaint ¶ 1-36, at 2-17; Baca Complaint ¶¶ 1-41, at 2-15; Gurule Complaint ¶¶ 1-44, at 2-17.  Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, the Marquez Plaintiffs, the Passamonti Plaintiffs, the Baca Plaintiffs, and the Gurule Plaintiffs, the J. Benavidez Plaintiffs allege one cause of action, pursuant to the Judicial Review Provision seeking judicial review of FEMA's compensation determinations which exclude noneconomic damages.  See J. Benavidez Complaint ¶¶ 49-54, at 15-17 ("J. Benavidez Judicial Review Claim").  Like the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, the Marquez Plaintiffs, the Passamonti Plaintiffs, the Baca Plaintiffs, and the Gurule Plaintiffs, the J. Benavidez Plaintiffs  ask the Court to: (i) review, modify, or set aside FEMA's compensation determinations; (ii) award costs and reasonable attorney's fees; (iii) award interest on submitted claims; and (iv) grant relief that the Court deems just and proper.  See J. Benavidez Complaint at 17.  On November 12, 2024, FEMA files the Gurule MTD, which is substantively identical to the

- 39 -

Marquez MTD, the Passamonti MTD, and the Baca MTD.  Compare Gurule MTD at 1-23, with

Marquez MTD at 1-23; Passamonti MTD at 1-24; Baca MTD at 1-23.

      17.    **The Appeal Process Guide.**

On November 15, 2024, FEMA releases, for the first time, a guide "detailing the policies,

procedures and responsibilities associate with the Claims Office's appeals process.  See Press

Release at 1, Federal Emergency Management Agency, Claims Office Releases Appeals Guide,

Outlining Steps and Rights for Claimants Seeking Fair Compensation (dated November 15, 2024),

available at https://www.fema.gov/press-release/20250122/claims-office-releases-appeals-guide-

outlining-steps-and-rights-claimants ("Appeal Process Guide Press Release").  The Appeal

Process Guide Press Release states:

> The new guide provides clear information on the appeals process, outlines
> claimants' appeal rights, and explains the steps required to submit an appeal. By
> defining key terms and standardizing appeals-related procedures, the guide
> establishes a uniform approach for Claims Office staff handling appeals.

Appeal Process Guide Press Release at 1.  The Appeal Process Guide Press Release provides four

"[h]ighlights of the appeals guide": (i) "[s]tep-by-step instructions for filing an appeal";

(ii) "[i]nformation on required documentation and deadlines"; (iii) "[p]rovisions for claimants

requesting additional time to submit documents"; and (iv) "[d]etails on available resources and

support throughout the appeals process."  Appeal Process Guide Press Release at 1.  The Appeal

Process Guide tells claimants "that certain policies and regulations are currently pending judicial

review, which may delay final decisions on appeals involving contested issues."  United States

Department of Homeland Security, Federal Emergency Management Agency, Hermit's Peak/Calf

Canyon Program Appeals Guide, Version 1 at 14 (dated November 2024), filed March 17, 2024

(24-0979 Doc. 19-2)("Appeal Process Guide").  For these claims, FEMA states that it "will not

issue a final decision until the court has fully adjudicated the issue(s) pending judicial review." Appeal Process Guide at 14.  The Appeal Process Guide also says that "[i]f some, but not all" items that are being appealed "are under judicial review," then FEMA will "proceed[] with a review of only the items not impacted by the pending judicial review."  Appeal Process Guide at 14.

### 18. <u>The Gurule MTD Response and the Lane Complaint.</u>

On November 26, 2024, the <u>Gurule</u> Plaintiffs file the <u>Gurule</u> MTD response, which is substantively identical to the <u>Marquez</u> MTD Response, the <u>Passamonti</u> MTD Response, and the <u>Baca</u> MTD Response.  <u>Compare Gurule</u> MTD Response at 1-19, <u>with Baca</u> MTD Response at 1-19, <u>Marquez</u> MTD Response at 1-19; <u>Passamonti</u> MTD at 1-18.  On December 6, 2024, the <u>Lane</u> Plaintiffs file the <u>Lane</u> Complaint, which is substantively identical to the <u>Arrellin</u> Complaint. <u>Compare Lane</u> Complaint ¶¶ 1-81, at 2-32, <u>with</u> <u>Arrellin</u> Complaint ¶¶ 1-54, at 2-20.  Like the <u>Arrellin</u> Plaintiffs, the <u>Lane</u> Plaintiffs bring two causes of action.  <u>See Lane</u> Complaint ¶¶ 42-54, at 16-19.  In the first cause of action, the <u>Lane</u> Plaintiffs seek judicial review, pursuant to the Judicial Review Provision, of FEMA's compensation determinations which exclude noneconomic damages.  <u>See Lane</u> Complaint ¶¶ 42-47, at 16-17 ("<u>Lane</u> Judicial Review Claim").  In the second cause of action, the <u>Lane</u> Plaintiffs bring an APA claim pursuant to 5 U.S.C. § 706, alleging that the appeals process for the Hermit's Peak Act is unlawful, contrary to the <u>Lane</u> Plaintiffs' Constitutional rights, in excess of statutory authority, arbitrary, capricious, and an abuse of discretion, because FEMA fails "to provide a deadline for the appeal determination, and [] to provide other guidelines for the appeal process."  <u>Lane</u> Complaint ¶¶ 48-54, at 17-19 ("<u>Lane</u> APA Claim").

19.    __The Arrellin MTD.__

On December 9, 2024, FEMA files the Arrellin MTD.  See Arrellin MTD at 28.  FEMA asks the Court to dismiss the Arrellin Judicial Review Claim, because the Arrellin Plaintiffs have not exhausted administrative remedies.  See Arrellin MTD at 2-3.  The Arrellin MTD's administrative exhaustion arguments are compressed, but substantively identical, versions of the agency's administrative exhaustion arguments in the Marquez MTD, the Passamonti MTD, the Baca MTD, and the Gurule MTD.  Compare Arrellin MTD at 9-21, with Marquez MTD at 1-23; Passamonti MTD at 1-24; Baca MTD at 1-23; Gurule MTD at 1-23.  Next, FEMA provides three reasons why the Court should dismiss the Arrellin APA Claim.  See Arrellin MTD at 21.  First, FEMA asserts that FEMA's failure to publish appeal guidelines neither is a failure to act or is a final action that is actionable, pursuant to the APA, because FEMA is not required to publish appeal guidelines.  See Arrellin MTD at 21-23.  Second, FEMA argues that, even if the agency is required to publish appeals guidelines, FEMA has published appeals guidelines, including information about the appeal process' standard of review and the person reviewing the appeals.  See Arrellin MTD at 23-24.  Third, FEMA argues that, even though FEMA does not have a deadline by which the agency must render a final decision on a claimant's administrative appeal, the appeal process does not violate the Arrellin Plaintiffs' due process rights, because: (i) the Arrellin Plaintiffs do not have a Constitutionally protected property interest in Hermit's Peak Act compensation; and (ii) the Arrellin Plaintiffs have notice and an opportunity to respond to FEMA's claim determinations.  See Arrellin MTD at 24-26.  Finally, FEMA insists that the Arrellin Plaintiffs are not entitled to pre-judgment interest on their submitted claims, because the United States retains its sovereign immunity against claims for interest unless expressly permitted by statute.  See Arrellin MTD at 26-27.

20.    **The** Baca **MTD Reply and the** Gurule **MTD Reply.**

On December 10, 2024, FEMA replies to the Baca MTD Response. See Reply in Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed December 10, 2024 (24-0779 Doc. 9)("Baca MTD Reply"). The Baca MTD Reply is substantively identical to the Marquez MTD Reply and the Passamonti MTD Reply. Compare Baca MTD Reply at 1-3, with Marquez MTD Reply at 1-13; Passamonti MTD Reply at 1-13. On December 10, 2024, FEMA replies to the Gurule MTD Response. See Reply in Support of Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed December 10, 2024 (24-0875 Doc. 12)("Gurule MTD Reply"). The Gurule MTD Reply is substantively identical to the Marquez MTD Reply, the Passamonti MTD Reply, and the Baca MTD Reply. Compare Gurule MTD Reply at 1-3, with Marquez MTD Reply at 1-13; Passamonti MTD Reply at 1-13; Baca MTD Reply at 1-13.

21.    **The** Baca **Hearing.**

On December 12, 2024, the parties present oral arguments on the Baca MTD briefing. See December 12, 2024, Hearing Minutes at 1. The Court begins the hearing by asking FEMA why the agency contends that the Baca Plaintiffs have not exhausted their administrative remedies, given that there is nothing left for the claimants to do while FEMA refuses to process their claims. See Draft Transcript of December 12, 2024, Hearing at 6:15-7:3 (taken December 12, 2024)(Court)("December 12, 2024, Tr."). FEMA responds by saying that the Hermit's Peak Act regulations define a final decision as a decision made on an Administrative Appeal, and that FEMA has not refused to decide the noneconomic damages issue; instead, FEMA's position is that it will not decide the noneconomic damages issue while that issue is being litigated. See December 12, 2024, Tr. at 7:15-8:12 (Sydow). The Court then asks whether FEMA's position -- that it will not decide the noneconomic damages issue during litigation -- conflicts with the Hermit's Peak Act's

requirement that claims must be determined within 180 days, as the 180-Day Timeline Provision provides. See December 12, 2024, Tr. at 9:2-9 (Court). FEMA responds by arguing that: (i) the regulations do not say that there needs to be a final decision within 180 days; and (ii) it is not practical for FEMA to provide a decision made on Administrative Appeal within 180 days, because claimants have 150 days to submit evidence for their claim package, and FEMA cannot realistically evaluate the completed initial claim, provide a determination, allow time for claimants to file an administrative appeal, and adjudicate that administrative appeal within thirty days. See December 12, 2024, Tr. at 9:10-25 (Sydow). FEMA then repeats and clarifies many of its arguments from the Baca MTD briefing. See December 12, 2024, Tr. at 11:1-20:7 (Sydow, Court).

In response, the Baca Plaintiffs repeat and clarify many of their arguments from the Baca MTD Response. See December 12, 2024, Tr. at 20:15-29:12 (Lothyan, Court, Singleton, Zimmerman). The Baca Plaintiffs also assert that, in addition to denying categorically the noneconomic damages requests, FEMA has taken the position that at least one Baca Plaintiff may not obtain compensation for erosion damages and that the erosion issue is being challenged in a separate case. See December 12, 2024, Tr. at 25:15-27:22 (Lothyan, Court, Singleton, Zimmerman). The Court then asks the Baca Plaintiffs if there is anything wrong with saying that the Baca Plaintiffs have exhausted their administrative remedies, given that there is nothing left for them to do, instead of focusing on whether the exhaustion requirement has been waived. See December 12, 2024, Tr. at 29:13-30:5 (Court). In response, the Baca Plaintiffs agree that the Court could conclude, in light of FEMA's actions and the structure of the appeal process, that the Baca Plaintiffs have exhausted everything available to them, given. See December 12, 2024, Tr. at 30:6-31:9 (Lothyan). The Baca Plaintiffs argue further that they have been interpreting FEMA's position -- that it will not decide the noneconomic damages issue while that issue is being

litigated -- as a final decision for purposes of seeking judicial review, pursuant to Section 104(i)(1).
See December 12, 2024, Tr. at 31:22-32:8 (Lothyan).

To conclude oral arguments, FEMA raises four arguments. See December 12, 2024, Tr. at
33:2-39:24 (Sydow, Court). First, FEMA argues that its regulations that define a final decision
are appropriate, because, when Congress leaves it to the agency to define a final decision, the
agency may specify what requirements are necessary for that exhaustion. See December 12, 2024,
Tr. at 33:4-22 (Sydow)(citing Weinberger v. Salfi, 422 U.S. at 766; Hermit's Peak Act
§§ 104(f)(1), 104(f)). Second, FEMA argues that the lack of deadline for Administrative Appeals
benefits claimants by providing time to submit additional evidence to shore up their claims. See
December 12, 2024, Tr. at 36:8-37:5 (Sydow). Third, FEMA disputes that its decision to wait for
the Court's guidance before adjudicating Administrative Appeals constitutes a waiver of the
exhaustion requirement, because FEMA "has not said definitively that they will not award
noneconomic damages, which is what you would need for the agency to waive exhaustion," given
that FEMA may provide a different decision on this issue when adjudicating Administrative
Appeals after the Court's decision in Lands and Dolan. See December 12, 2024, Tr. at 37:25-
38:13 (Sydow). Fourth, FEMA asserts that it has not taken the position that the agency will not
compensate for erosion damages, and that the plaintiffs in the separate erosion case challenge the
process by which erosion damages are compensated, rather than FEMA's alleged categorical
denial of those damages. See December 12, 2024, Tr. at 38:14-40:2 (Sydow).

**22.    The Court's Holdings in Lands and Dolan.**

On December 17, 2024, the Court issues a Memorandum Opinion and Order in Lands and
Dolan. See 2024 WL 5145808 at *1. In Lands and Dolan, the Court holds that: (i) the Hermit's
Peak Act allows victims to recover noneconomic damages, and (ii) FEMA's refusal to award

noneconomic damages violates the APA.  See 2024 WL 5145808 at *1.  To support these conclusions, the Court determines that: (i) the provision which limits damages to "actual compensatory damages," Hermit's Peak Act § 104(c)(3)(A), includes noneconomic damages; and (ii) the provision which lists "allowable damages," Hermit's Peak Act § 104(d)(4), is a nonexhaustive list of recoverable losses.  See 2024 WL 5145808 at *29-36.  As a remedy, the Court: (i) holds unlawful and sets aside FEMA's regulations that preclude recovery of noneconomic damages; and (ii) compels FEMA to award noneconomic damages for the Plaintiffs' Hermit's Peak Act claims.  See 2024 WL 5145808 at *37.

### 23.    The Leonard Complaint.

On December 30, 2024, the Leonard Plaintiffs file the Lane Complaint, which is substantively identical to the Arrellin Complaint and the Lane Complaint.  Compare Leonard Complaint ¶¶ 1-74, at 2-29, with Arrellin Complaint ¶¶ 1-54, at 2-20; Lane Complaint ¶¶ 1-81, at 2-32.  Like the Arrellin Plaintiffs and the Lane Plaintiffs, the Leonard Plaintiffs bring two causes of action.  See Leonard Complaint ¶¶ 62-74, at 26-29.  In the first cause of action, the Leonard Plaintiffs seek judicial review, pursuant to the Judicial Review Provision, of FEMA's compensation determinations which exclude noneconomic damages.  See Leonard Complaint ¶¶ 62-67, at 26-27 ("Leonard Judicial Review Claim").  In the second cause of action, the Leonard Plaintiffs bring an APA claim pursuant to 5 U.S.C. § 706, alleging that the appeals process for the Hermit's Peak Act is unlawful, contrary to the Leonard Plaintiffs' Constitutional rights, in excess of statutory authority, arbitrary, capricious, and an abuse of discretion, because FEMA fails "to provide a deadline for the appeal determination, and [] to provide other guidelines for the appeal process."  Leonard Complaint ¶¶ 68-74, at 27-29 ("Leonard APA Claim").

24.    __The Arrellin MTD Response and the J. Benavidez MTD.__

On December 23, 2024, the Arrellin Plaintiffs respond to the Arrellin MTD.  See Arrellin MTD Response at 25.  Regarding the Arrellin APA Claim, the Arrellin Plaintiffs ask the Court to reject the Arrellin MTD, for three reasons.  See Arrellin MTD Response at 2.  First, the Arrellin Plaintiffs contend that the appeal process's lack of a deadline is unlawful, because it violates the Hermit's Peak Act's 180-Day Timeline Provision.  See Arrellin MTD Response at 7-10.  Second, the Arrellin Plaintiffs argue that the appeal process is arbitrary and capricious, because: (i) the lack of a deadline extends the time by which claimants receive final decision beyond 180 days; (ii) although the appeal process requires claimants to file appeals within 120 days of receiving claim determinations, FEMA has no deadline to issue a decision on the administrative appeal; and (iii) the appeal process fails to consider adequately the Hermit Peak Act's purposes of processing claims expeditiously.  See Arrellin MTD Response at 10-11.  Third, the Arrellin Plaintiffs argue that the appeal process' lack of a deadline violates due process, because: (i) the Arrellin Plaintiffs are eligible for Hermit's Peak Act compensation and, thus, have a property right in that compensation; and (ii) an endless appeals process does not allow claims to be heard and determined in a fair and timely manner.  See Arrellin MTD Response at 11-2-12.  Regarding the Arrellin Judicial Review Claim, the Arrellin Plaintiffs provide arguments that are compressed, but substantively identical, versions of the administrative exhaustion arguments in the Marquez MTD Response, the Passamonti MTD Response, the Baca MTD Response, and the Gurule MTD Response.  Compare Arrellin MTD Response at 13-24, with Marquez MTD Response at 1-18; Passamonti MTD at 1-18; Baca MTD Response at 1-19; Gurule MTD Response at 1-19.  .  On January 13, 2025, FEMA files the J. Benavidez MTD, which is substantively identical to the Marquez MTD, the Passamonti MTD, the Baca MTD, and the Gurule MTD.  Compare

J. Benavidez MTD at 1-23, with Marquez MTD at 1-23; Passamonti MTD at 1-24; Baca MTD at 1-23; Gurule MTD at 1-23.

### 25.    The Lands and Dolan Motion to Alter or to Amend Judgment.

On January 14, 2025, FEMA asks the Court, pursuant to rule 59(e), to alter or to amend the Lands and Dolan Memorandum Opinion and Order.  See Respondents' Motion to Alter or Amend Judgment at 1-21, filed January 14, 2025 (23-0869 Doc. 63)("Lands Motion to Alter"); Respondents' Motion to Alter or Amend Judgment at 1-21, filed January 14, 2025 (23-0908 Doc. 62)("Dolan Motion to Alter").  FEMA requests that the Court change four aspects of the Lands and Dolan Memorandum Opinion and Order.  First, FEMA requests that the Court vacate its findings that the Hermit's Peak Fire is a nuisance or a trespass.  See Lands Motion to Alter at 5-12; Dolan Motion to Alter at 5-12.  Second, FEMA requests that the Court amend its holdings to conclude that the Hermit's Peak Act's incorporation of New Mexico law is limited to the damages categories in the Hermit's Peak Act, § 104(d)(4).  See Lands Motion to Alter at 12-17; Dolan Motion to Alter at 12-17.  Third, FEMA requests that the Court clarify which regulations are unlawful and must be set aside.  See Lands Motion to Alter at 17-18; Dolan Motion to Alter at 17-18.  Fourth, FEMA requests that the Court amend the relief granted such that FEMA is required only to process claims and award noneconomic damages where each individual claim's facts establish noneconomic damages.  See Lands Motion to Alter at 18-20; Dolan Motion to Alter at 18-20.

### 26.    The A. Benavidez Complaint.

On January 31, 2025, the A. Benavidez Plaintiffs file the A. Benavidez Complaint, which is substantively identical to the Arrellin Complaint, the Lane Complaint, and the Leonard Complaint.  Compare A. Benavidez Complaint ¶¶ 1-66, at 2-26, with Arrellin Complaint ¶¶ 1-54,

at 2-20; <u>Lane</u> Complaint ¶¶ 1-81, at 2-32; <u>Leonard</u> Complaint ¶¶ 1-74, at 2-29.  Like the <u>Arrellin</u> Plaintiffs, the <u>Lane</u> Plaintiffs, and the <u>Leonard</u> Plaintiffs, the <u>A. Benavidez</u> Plaintiffs bring two causes of action.  <u>See</u> <u>A. Benavidez</u> Complaint ¶¶ 54-66, at 22-25.  In the first cause of action, the <u>A. Benavidez</u> Plaintiffs seek judicial review, pursuant to the Judicial Review Provision, of FEMA's compensation determinations which exclude noneconomic damages.  <u>See</u> <u>A. Benavidez</u> Complaint ¶¶ 54-59, at 22-23 ("<u>A. Benavidez</u> Judicial Review Claim").  In the second cause of action, the <u>A. Benavidez</u> Plaintiffs bring an APA claim pursuant to 5 U.S.C. § 706, alleging that the appeals process for the Hermit's Peak Act's is unlawful, contrary to the <u>A. Benavidez</u> Plaintiffs' Constitutional rights, in excess of statutory authority, arbitrary, capricious, and an abuse of discretion, because FEMA fails "to provide a deadline for the appeal determination, and [] to provide other guidelines for the appeal process."  <u>A. Benavidez</u> Complaint ¶¶ 60-66, at 23-25 ("<u>A. Benavidez</u> APA Claim").

27.     **The <u>Arrellin</u> MTD Reply.**

On January 31, 2025, FEMA replies to the <u>Arrellin</u> MTD Response.  <u>See</u> Federal Emergency Management Agency's Reply in Support of Motion to Dismiss, filed January 31, 2025 (24-0979 Doc. 14)("<u>Arrellin</u> MTD Reply").  The <u>Arrellin</u> MTD Reply's administrative exhaustion arguments are compressed, but substantively identical, versions of the agency's administrative exhaustion arguments in the <u>Marquez</u> MTD Reply, the <u>Passamonti</u> MTD, the <u>Baca</u> MTD Reply, and the <u>Gurule</u> MTD Reply.  <u>Compare</u> <u>Arrellin</u> MTD Reply at 2-8, <u>with</u> <u>Marquez</u> MTD Reply at 1-13; <u>Passamonti</u> MTD at 1-13; <u>Baca</u> MTD at 1-13; <u>Gurule</u> MTD at 1-13.  Next, FEMA argues that the Court should dismiss the <u>Arrellin</u> APA Claim for four reasons.  First, FEMA argues that the <u>Arrellin</u> Plaintiffs improperly flesh out the <u>Arrellin</u> APA Claim with allegations that the <u>Arrellin</u> Complaint does not contain.  <u>See</u> <u>Arrellin</u> MTD Reply at 8.  On this point, FEMA asserts

that the <u>Arrellin</u> Plaintiffs' APA claim in the Arrellin Complaint "is inconsistently described as one under Section 706(1) for a failure to promulgate administrative appeal guidelines and one under Section 706(2) challenging the Final Rule's administrative appeal procedure guidelines as arbitrary and capricious." <u>Arrellin</u> MTD Reply at 8. FEMA asserts further that the <u>Arrellin</u> MTD Response "attempt[s] to rehabilitate" the allegedly inconsistent APA claim by including allegations that support the Section 706(2) claim, while "jettisoning the[] request for relief under Section 706(1)." <u>Arrellin</u> MTD Reply at 8.

Second, FEMA argues that the lack of deadline does not violate the Hermit's Peak Act, because: (i) the Hermit's Peak Act's commitment to expeditious claims processing is prefatory language that does not create any enforceable rights; and (ii) the Hermit's Peak Act's 180-Day Timeline Provision provides a 180-day deadline for initial claim determinations that are not judicially reviewable, and not for final decisions on administrative appeals. <u>See</u> <u>Arrellin</u> MTD Reply at 8-10. Third, FEMA argues that the appeal process' lack of a deadline is neither arbitrary nor capricious, because: (i) the Hermit's Peak Act does not require FEMA to issue final decisions on administrative appeals within 180 days; (ii) FEMA's imposition of a filing deadline for claimants and omission of a decision deadline for itself is no different than a court's practice of providing deadlines for litigants, but no deadlines for itself to adjudicate the matter; and (iii) the lack of a deadline adequately reflects and advances the Hermit Peak Act's multiple purposes, including compensating victims, because a lengthy appeals process allows claimants to submit additional evidence to shore up their claims. <u>See</u> <u>Arrellin</u> MTD Reply at 10-11. Fourth, FEMA argues that the lack of a deadline does not violate due process, because: (i) the Hermit's Peak Act does not contain mandatory language that triggers a property right to compensation; and (ii) the lack of a deadline does not deny claimants an opportunity to be heard, such that the claimants are

denied due process.  <u>See</u> <u>Arrellin</u> MTD Reply at 11-12.  Finally, FEMA notes that the <u>Arrellin</u> Plaintiffs do not challenge FEMA's request that the Court dismiss the <u>Arrellin</u> Plaintiffs' request for pre-judgment interest.  <u>See</u> <u>Arrellin</u> MTD Reply at 12.

**28.    <u>The <u>Arrellin</u> Hearing</u>.**

On February 6, 2025, the parties present oral arguments on the <u>Arrellin</u> MTD briefing.  <u>See</u> February 6, 2025, Hearing Minutes at 1.  The Court begins by asking FEMA to send a letter to the Court with a list of cases related to <u>Arrellin</u>, where the plaintiffs seek judicial review of their claim determinations and/or allege that FEMA's appeal process regulations violate the APA.  <u>See</u> Draft Transcript of February 6, 2025, Hearing at 9:17-10:16 (taken February 6, 2025)(Court)("February 6, 2025, Tr.").  FEMA begins by highlighting the newest argument that the <u>Arrellin</u> Plaintiffs raise, <u>i.e.</u>, that the exhaustion requirement is not jurisdictional, because the Hermit's Peak Act's Election of Remedy clause, Hermit's Peak Act § 104(h), gives claimants different avenues to judicial review.  <u>See</u> February 6, 2025, Tr. at 12:12-13:10 (Sydow).  FEMA notes that, although the Hermit's Peak Act provides multiple avenues to judicial review, one of those avenues is the FTCA, which has a jurisdictional exhaustion requirement.  <u>See</u> February 6, 2025, Tr. at 12:25-13:4 (Sydow).  FEMA thus argues that interpreting the Hermit's Peak Act in parallel with the FTCA necessitates determining that the Hermit's Peak Act's exhaustion requirement is jurisdictional as well.  <u>See</u> February 6, 2025, Tr. at 13:4-10 (Sydow).  Regarding the <u>Arrellin</u> APA Claim, FEMA repeats and clarifies many of its arguments from the <u>Arrellin</u> MTD briefing: (i) the <u>Arrellin</u> APA Claim is unclear in what the <u>Arrellin</u> Plaintiffs ask the Court to do and what the <u>Arrellin</u> Plaintiffs are challenging; (ii) the <u>Arrellin</u> Complaint does not allege sufficiently a violation pursuant to § 706(2) of the APA, which is on what the <u>Arrellin</u> MTD Response focuses; and (iii) even if the <u>Arrellin</u> Complaint alleges sufficiently a § 706(2) violation, the Court should dismiss the <u>Arrellin</u>

APA Claim, because the <u>Arrellin</u> Plaintiffs fail to state a claim as a matter of law.  <u>See</u> February 6, 2025, Tr. at 13:25-27:4 (Sydow, Court).  The Court then asks FEMA to identify a portion of the Hermit's Peak Act that suggests that the appeal process can extend beyond the 180-Day Timeline Provision's deadline.  <u>See</u> February 6, 2025, Tr. at 27:5-15 (Court).  In response, FEMA asserts that FEMA's regulations[8] give claimants 150 days to submit supporting evidence for their claims, which means that an initial claim may not be finalized until there are only thirty days left in the 180-day window.  <u>See</u> February 6, 2025, Tr. at 27:16-28:6 (Sydow).  FEMA argues that, as a practical matter, FEMA cannot evaluate a claim, issue a determination, give the claimant time to appeal, evaluate the appeal, and issue a decision on the appeal within those remaining thirty days. <u>See</u> February 6, 2025, Tr. at 28:7-24 (Sydow).  Second, FEMA argues that the 180-Day Timeline Provision and the Judicial Review Provision use different language, which means that Congress intends that those provision refer to different things.  <u>See</u> February 6, 2025, Tr. at 28:25-29:12 (Sydow).  Specifically, FEMA notes that Section 104(d)(1)(A)(i) says that "the Administrator shall determine and fix the amount, if any, to be paid for the claim,"  whereas Section 104(i)(1) says a claimant "aggrieved by a final decision of the Administrator" may seek judicial review.  February 6, 2025, Tr. at 28:25-29:12 (Sydow).

Responding to FEMA's arguments, the <u>Arrellin</u> Plaintiffs first argue that the <u>Arrellin</u> Complaint ¶ 50, at 18, alleges sufficiently that FEMA violates § 706(2) of the APA.  <u>See</u> February 6, 2025, Tr. at 29:23-31:7 (Lothyan).  Next, the <u>Arrellin</u> Plaintiffs repeat and clarify many of their

---

[8]Although FEMA does not identify which regulation gives claimants 150 days to submit supporting evidence, the Court notes that 44 C.F.R. § 262.30(b) provides that a claimant must "attest to the nature and extent of each injury for which compensation is sought in the Proof of Loss," which must be submitted "not later than 150 days" after the claimants submits the initial claim.  44 C.F.R. § 262.30(b)

arguments from the <u>Arrellin</u> MTD Response.  <u>See</u> February 6, 2025, Tr. at 31:16--43:24 (Lothyan, Court).  Replying to the Arrellin Plaintiffs' response, FEMA argues that: (i) the <u>Arrellin</u> Complaint is inconsistent and unclear about what the content of the <u>Arrellin</u> APA Claim is; (ii) the exhaustion requirement has not been waived, because the claimants' administrative appeals challenge compensation determinations outside the noneconomic damages issue; and (iii) Administrative Appeals can be bifurcated, such that portions of the claim determinations which do not concern noneconomic damages can proceed while the noneconomic damages issue is being litigated .  <u>See</u> February 6, 2025, Tr. at 44:5-49:2 (Sydow).  The Court asks FEMA whether the agency's denial rationale -- <u>i.e.</u>, that FEMA does not interpret the Hermit's Peak Act as providing for noneconomic damages -- means that FEMA has waived the exhaustion requirement, because FEMA is saying that the relief requested is beyond its power to confer.  <u>See</u> February 6, 2025, Tr. at 49:3-12 (Court). In response, FEMA argues that the agency is not denying these claims because it believes the relief request is beyond its power to confer; instead, FEMA has stayed the Administrative Appeals pending resolution of the noneconomic-damages litigation.  <u>See</u> February 6, 2025, Tr. at 49:13-22 (Sydow).  The Court then asks FEMA if it has any case authority to support its argument that the agency has not waived the exhaustion requirement if the Court determines that FEMA denies claims because the agency interprets the Hermit's Peak Act as not permitting noneconomic damages.  <u>See</u> February 6, 2025, Tr. at 51:22-52:7 (Court).  In response, FEMA disputes that the agency has denied any of these claims, because only the initial claim determination has been issued, and there has been no final decision on appeal.  <u>See</u> February 6, 2025, Tr. at 52:8-17 (Sydow).  FEMA then admits that "the general law in this area says that, if there are things that, as a statutory matter, the agency does not have power to provide, or the agency has found that it does not have power to provide, . . . then [] you can find waiver."  February 6, 2025, Tr. at 52:18-

53:7 (Sydow).  The Court then asks if FEMA has bifurcated and unstayed any claims that have nothing to do with noneconomic damages.  See February 6, 2025, Tr. at 54:19-23 (Court).  In response, FEMA asserts that: (i) when a claim includes multiple pieces, including a noneconomic damages claim, the entire claim may be stayed; and (ii) FEMA's counsel will check with FEMA to explain which claims have been stayed and which have not been stayed.  See February 6, 2025, Tr. at 55:15-56-4 (Sydow).

29.    **The Lane MTD, the Pending Cases Summary Letter, the J. Benavidez and Lane Stay Orders, and the Leonard MTD.**

On February 11, 2025, the Lane Plaintiffs file the Lane MTD, which is substantively identical to the Arrellin MTD.  Compare Lane MTD at 1-29, with Arrellin MTD at 1-28.  On February 19, 2025, the J. Benavidez Plaintiffs and the Lane Plaintiffs move the Court to stay their cases pending resolution of the Gallegos MTD, the Fidel-Alirez MTD, the Marquez MTD, the Passamonti MTD, the Baca MTD, the Gurule MTD, and the Arrellin MTD.  See Unopposed Motion to Stay Pending Related Litigation, filed February 19, 2025 (24-1137 Doc. 9)("J. Benavidez Unopposed Motion to Stay"); Unopposed Motion to Stay Pending Related Litigation, filed February 19, 2025 (24-1221 Doc. 8)("Lane Unopposed Motion to Stay").  Both of these motions are unopposed.  See J. Benavidez Unopposed Motion to Stay at 3; Lane Unopposed Motion to Stay at 3.

On February 21, 2025, FEMA writes a letter to the Court "to follow up on several items of inquiry that the Court raised at its February 6, 2025, hearing on Respondent's Motion to Dismiss in Arrellin v. FEMA."  Letter from Nicholas Sydow to the Court re: Arrellin v. FEMA, 1:24-cv-979-JB-JFR at 1 (dated February 21, 2025), filed February 21, 2025 (24-0979 Doc. 18)("Pending Cases Summary Letter").  First, FEMA provides a "list of related cases," i.e., the eleven cases that

are this Memorandum Opinion and Order's subject. Pending Cases Summary Letter at 1. FEMA notes that four of these cases -- Arrellin, Lane, Leonard, and A. Benavidez, -- include both an APA claim and a claim seeking judicial review of FEMA's claim determinations. See Pending Cases Summary Letter at 1. The Court will hereinafter refer to the Arrellin Plaintiffs, the Lane Plaintiffs, the Leonard Plaintiffs, and the A. Benavidez Plaintiffs as, collectively, the "APA Plaintiffs." The Court also will hereinafter refer to the Gallegos Plaintiffs, the Fidel-Alirez Plaintiffs, the Marquez Plaintiffs, the Passamonti Plaintiffs, the Baca Plaintiffs, the Gurule Plaintiffs, and the J. Benavidez Plaintiffs as the "Pure Judicial Review Plaintiffs." The Court also will hereinafter refer to the Arrellin APA Claim, the Lane APA Claim, the Leonard APA Claim, and the A. Benavidez APA Claim as, collectively, the "APA Claims." The Court also will hereinafter refer to the Gallegos Judicial Review Claim, the Fidel-Alirez Judicial Review Claim, the Marquez Judicial Review Claim, the Passamonti Judicial Review Claim, the Baca Judicial Review Claim, the Gurule Judicial Review Claim, the Arrellin Judicial Review Claim, the J. Benavidez Judicial Review Claim, the Lane Judicial Review Claim, the Leonard Judicial Review Claim, and the A. Benavidez Judicial Review Claim as, collectively, the "Judicial Review Claims."

Second, FEMA provides an update on the statuses of the Arrellin Plaintiffs' underlying FEMA claims. See Pending Cases Summary Letter at 2. FEMA asserts that, of the thirteen Arrellin Plaintiffs, five have filed administrative appeals on at least one of their claims, and FEMA rejected one of those administrative appeals, because, in FEMA's view, that administrative appeal was filed too late. See Pending Cases Summary Letter at 2. FEMA also represents that one of the Arrellin Plaintiffs "has no pending claims with all his claims either closed or with fully accepted letters of determination." Pending Cases Summary Letter at 2.

Third, FEMA purports to provide "authority regarding when agency actions can waive administrative exhaustion requirements by rendering exhaustion futile." Pending Cases Summary Letter at 2. For example, FEMA identifies Malouf v. Sec. & Exch. Comm'n, 933 F.3d 1248, 1257 (10th Cir. 2019), where, according to FEMA, the Tenth Circuit "rejected an argument that an Appointments Clause challenge to the SEC's administrative law judges was futile even though the agency's attorneys had taken opposing positions in litigation and even though the agency had previously rejected similar challenges." Pending Cases Summary Letter at 3. FEMA also identifies Gilmore v. Weatherford, 694 F.3d 1160, 1169 (10th Cir. 2012), where, according to FEMA, "the Tenth Circuit concluded that exhaustion was not futile despite the agency's denial of similar relief in prior cases." Pending Cases Summary Letter 3. FEMA also identifies Shawnee Trail Conservancy v. United States Department of Agriculture, 222 F.3d 383, 389 (7th Cir. 2000), where, according to FEMA, the United States Court of Appeals for the Seventh Circuit "rejected the plaintiff's argument that the district court should have waived the administrative exhaustion requirement because it was futile to request the Department of Agriculture and the Forest Service to re-open roads when the Forest Service was bound by a settlement agreement that explicitly precluded the requested road re-opening," reasoning that "it is possible the Forest Service would have breached and nullified the settlement agreement had plaintiff pursued administrative relief." Pending Cases Summary Letter at 3. On the other side of this issue, FEMA identifies Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 88-89 (D.D.C. 2006)(Kennedy, J.), where, according to FEMA, the district court determines that exhaustion is futile where the Federal Bureau of Prisons continues to adhere to a challenged regulation despite "multiple judicial rulings -- at the circuit and district court levels -- invalidating the regulation." Pending Cases Summary Letter at 3. FEMA quotes the district court's reasoning: "'This is not a case where requiring exhaustion

would afford the agency an opportunity to correct any errors, as the agency already has received ample opportunities via the lawsuits which have preceded this one to change its approach.'" Pending Cases Summary Letter at 3 (quoting Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d at 88-89.

On February 25, 2025, the Court grants the Lane Unopposed Motion to Stay.  See Order Staying Pending Related Litigation, filed February 25, 2025 (24-1221 Doc. 9)("Lane Stay Order"). On March 12, 2025, the Court grants the J. Benavidez Unopposed Motion to Stay.  See Order Staying Pending Related Litigation at 2, filed March 12, 2025 (24-1137 Doc. 10)("J. Benavidez Stay Order").  On March 14, 2025, the Leonard Plaintiffs file the Leonard MTD, which is substantively identical to the Arrellin MTD and the Lane MTD.  Compare Leonard MTD at 1-29, with Arrellin MTD at 1-28; Lane MTD at 1-29.

**30.    FEMA's Notice of Supplemental Authority.**

On March 17, 2025, FEMA files a notice of supplemental authorities in Arrellin.  See Notice of Supplemental Authorities at 3, filed March 17, 2025 (24-0979 Doc. 19)("Supplemental Authorities Notice").  First, FEMA discusses a recent Memorandum Opinion and Order that Chief Judge Gonzales issued in a FEMA case.  See Supplemental Authorities Notice at 1.  FEMA asserts that, in this case, Chief Judge Gonzales "dismissed an action under Section 706(1) of the Administrative Procedures Act seeking to compel FEMA to promulgate guidelines for the Hermit's Peak/Calf Canyon Fire Assistance Act's (the 'Act') administrative appeal process." Supplemental Authorities Notice at 1-2 (citing Cavitt-Olguin v. FEMA, No. CIV 24-0242 KG/SCY, 2025 WL 786750, at *1 (D.N.M. Mar. 12, 2025)(Gonzales, C.J.)("Cavitt-Olguin"). FEMA also notes that "Chief Judge Gonzales issues a substantively identical opinion" in Seaverns v. FEMA, No. CIV 24-0207 KG/SCY, 2025 WL 786742 (D.N.M. Mar. 12, 2025)(Gonzales,

C.J.)("Seaverns").   FEMA asserts that, in Cavitt-Olguin, Chief Judge Gonzales concludes that

"'the HPCCFA Act does not require FEMA to publish administrative appeal guidelines.'"

Supplemental Authorities Notice at 2 (quoting Cavitt-Olguin, 2025 WL 786750, at *4).   FEMA

also asserts that Chief Judge Gonzales "was 'unpersuaded' by the same argument made by the

[Arrellin] Petitioners here, [Arrellin MTD Response] at 9, that the Act's purpose provision, which

calls for expeditious processing and payment of claims, created a nondiscretionary duty to

promulgate appeal guidelines."   Supplemental Authorities Notice at 2 (quoting Cavitt-Olguin,

2025 WL 786750, at *3).

Second, FEMA summarizes appeal process regulations that FEMA promulgated in

November, 2024.   See Supplemental Authorities Notice at 3.   FEMA insists that these new

guidelines "bolster[] FEMA's motion-to-dismiss" argument, because these new guidelines

contain: (i) "information regarding the identity of the person issuing final decisions on appeals";

(ii) "the definition of the administrative record"; (iii) "the standard of review for administrative

appeals"; (iv) "the content of final decision letters"; and (v) "how appeals are handled where some

or all issues are pending judicial decision."   Supplemental Authorities Notice at 2.   FEMA also

attaches the new appeals process regulations as an exhibit.   See Appeal Process Guide at 1-25.

### 31.    The Arrellin Plaintiffs' Pending Cases Summary Letter Response and Notice of Supplemental Authority Response.

On March 24, 2025, the Arrellin Plaintiffs respond to FEMA's Pending Cases Summary

Letter.   See Letter from Benjamin I. Siminou to the Court re: Arrellin v. FEMA at 1, 1:24-cv-979-

JB-JFR  (dated March 24, 2025), filed March 24, 2025 (Doc. 20)("Pending Cases Summary Letter

Response").   First, the Arrellin Plaintiffs provide the Court "a brief update as to the status of each

individual Petitioner's claim, except James V. Herrera, who will be dismissed from the action."

Pending Cases Summary Letter Response at 1.  FEMA has told four of the <u>Arrellin</u> Plaintiffs that FEMA is withholding administrative appeals decisions, pending the Court's decision on the <u>Lands</u> Motion to Alter and the <u>Dolan</u> Motion to Alter.  <u>See</u> Pending Cases Summary Letter Response at 1-2.  The <u>Arrellin</u> Plaintiffs attach an example of FEMA's communication, which states:

> A ruling by the United States District Court for the District of New Mexico (Court) is currently affecting appeals like yours. On December 31, 2024, the Court ordered the Federal Emergency Management Agency (FEMA) to award noneconomic damages and invalidated a portion of FEMA's Hermit's Peak/Calf Canyon Fire Assistance Regulation (44 C.F.R. § 296.21). FEMA has since filed a motion requesting the Court to reconsider its ruling on noneconomic damages and other issues.
>
> Until the Court makes a final decision, we are unable to issue a final determination on your appeal. We will notify you once there are updates.

Pending Cases Summary Letter Response at 7.  Other <u>Arrellin</u> Plaintiffs have not received a similar communication, and FEMA either has acknowledged or has yet to respond to those <u>Arrellin</u> Plaintiffs' appeals.  <u>See</u> Pending Cases Summary Letter Response at 2-3.

Second, the <u>Arrellin</u> Plaintiffs provide several cases purporting to discuss "waiver of administrative exhaustion requirements based on futility."  Pending Cases Summary Letter Response at 3.  The <u>Arrellin</u> Plaintiffs identify <u>Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp.</u>, 489 U.S. 561, 587 (1989), where, according to the <u>Arrellin</u> Plaintiffs, the Supreme Court holds that "an agency's current administrative claims procedure did not place a reasonable time limit" on claim evaluation, "and thus, creditors are not required to exhaust such procedure [sic] before bringing suit in court."  Pending Cases Summary Letter Response at 3.  The <u>Arrellin</u> Plaintiffs next identify <u>Martinez v. Richardson</u>, 472 F.2d 1121, 1125 & n.10 (10th Cir. 1973), for the proposition that a "party need not procure administrative review of its claim if resulting time delays would subject substantive rights to irreparable harm."  Pending Cases

Summary Letter Response at 4.  The <u>Arrellin</u> Plaintiffs next identify <u>McGraw v. Prudential Ins.</u> <u>Co. of America</u>, 137 F.3d 1253, 1264 (10th Cir. 1998), where, according to the <u>Arrellin</u> Plaintiffs, the Tenth Circuit "held exhaustion would be futile because, among other reasons, the agency delayed in processing the claim."  Pending Cases Summary Letter Response at 4.  The <u>Arrellin</u> Plaintiffs next identify <u>New Mexico Ass'n for Retarded Citizens v, State of N.M.</u>, 678 F.2d 847, 851 (10th Cir. 1982), where, according to the <u>Arrellin</u> Plaintiffs, the Tenth Circuit "held that the plaintiff was not required to exhaust remedies" where "'[e]xigent time factors involved in this action further underscore the inadequacy of the State's individualized proceedings for purposes of curing alleged system-wide defects.'"  Pending Cases Summary Letter Response at 4 (quoting <u>New Mexico Ass'n for Retarded Citizens v, State of N.M.</u>, 678 F.2d at 851)(brackets in Pending Cases Summary Letter Response, but not in <u>New Mexico Ass'n for Retarded Citizens v, State of</u> <u>N.M.</u>).

On the same day, the Plaintiffs respond to FEMA's Notice of Supplemental Authority.  <u>See</u> Plaintiffs' Objections and Responses to Federal Emergency Management Agency's Notice of Supplemental Authorities at 4, filed March 24, 2025 (Doc. 24)("Notice of Supplemental Authority Response").  First, the <u>Arrellin</u> Plaintiffs maintain that "this Court is not bound by" Chief Judge Gonzales' recent opinions in <u>Cavitt-Olguin</u> and <u>Seaverns</u>.  Notice of Supplemental Authority Response at 2.  Second, the <u>Arrellin</u> Plaintiffs argue that Judge Gonzales' recent opinions in <u>Cavitt-Olguin</u> and <u>Seaverns</u> "are not pertinent or significant as they involve FEMA's failure to implement appellate guidelines," which, according to the <u>Arrellin</u> Plaintiffs, is not at issue here, where the <u>Arrellin</u> Plaintiffs "do not challenge FEMA's inaction, but rather FEMA's final rule requiring claimants to exhaust an administrative appeal that violates the Act's 180-day deadline for FEMA to render a determination before a claim can be rendered final for judicial review."  Notice of

Supplemental Authority Response at 2.  Third, the <u>Arrellin</u> Plaintiffs note that the <u>Cavitt-Olguin</u>

Plaintiffs and <u>Seaverns</u> Plaintiffs "intend to move to amend the complaint in <u>Cavitt-Olguin</u> and

<u>Seaverns</u> to allege a challenge to FEMA's final rule requiring Plaintiffs to exhaust an

administrative appeal that violates the Act's 180-day requirement for FEMA to issue a

determination on their claim."  Notice of Supplemental Authority Response at 2.  In sum, the

<u>Arrellin</u> Plaintiffs "respectfully request the Court disregard" FEMA's Notice of Supplemental

Authority.  Notice of Supplemental Authority Response at 3.

## LAW REGARDING SUBJECT-MATTER JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited

jurisdiction."  <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005).  Federal

courts "possess only that power authorized by Constitution and statute."  <u>Kokkonen v. Guardian</u>

<u>Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed

upon the courts is the power to hear controversies arising under federal law -- federal question

jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.

<u>See</u> 28 U.S.C. §§ 1331, 1332.

Pursuant to rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines

at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R.

Civ. P. 12(h)(3).  Objection to a federal court's subject-matter jurisdiction "may be raised by a

party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry

of judgment."  <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 506 (2006).  <u>See</u> <u>Kontrick v. Ryan</u>, 540

U.S. 443, 455 (2004)("A litigant generally may raise a court's lack of subject-matter jurisdiction

at any time in the same civil action, even initially at the highest appellate instance.");  <u>Mansfield,</u>

<u>Coldwater & Lake Mich. Ry. Co. v. Swan</u>, 111 U.S. 379, 382 (1884)(holding that federal judicial

power's nature and limits require the court to raise the issue of subject-matter jurisdiction sua sponte).  Whenever the court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action.  See Tuck v. United States Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988).

"'The party seeking the exercise of jurisdiction bears the burden of establishing jurisdiction and must allege in his pleading the facts essential to show jurisdiction.'"  United States ex rel. General Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995)(quoting Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991)).  In determining whether a party adequately has presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972), accepting the well-pleaded factual allegations as true, see United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, see Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971).  "[D]ismissals for lack of jurisdiction should be without prejudice, because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims." Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006)(emphasis in original).

The Court has addressed subject-matter jurisdiction in a number of cases.  For example, the Court has determined whether the plaintiff properly has invoked the Court's diversity jurisdiction.  See 28 U.S.C. § 1332.  In Denny v. Orient Lines, 375 F. Supp. 2d 1320 (D.N.M. 2005)(Browning, J.), the Court dismisses the complaint for lack of subject-matter jurisdiction, because, although the parties are citizens of different States and, therefore, diversity jurisdiction is present, the amount in controversy is less than $75,000.00.  See 375 F. Supp. 2d at 1323.  In U.S. Bank Nat'l Ass'n for Chase Mortg. Fin. Corp. Multiclass Mortg. Pass-Through Certificates

<u>Chaseflex Tr. Series 2006-1 v. First Morgan</u>, 299 F. Supp. 3d 1202 (D.N.M. 2017)(Browning, J.), the Court remands the case to State court, because the removing parties do not demonstrate that complete diversity exists among the parties or that there is $75,000.00 in controversy.  <u>See</u> 299 F. Supp. 3d at 1206-09.  The Court also has had ample cause to consider the scope of its federal question jurisdiction.  <u>See</u> 28 U.S.C. § 1331.  In <u>Gallup Med Flight, LLC v. Builders Tr. of N.M.</u>, 240 F. Supp. 3d 1161 (D.N.M. 2017)(Browning, J.), a contract dispute, the Court concludes that there is not a "substantial federal question of law at issue" when the complaint is "based entirely on New Mexico contract causes of action . . . ."  240 F. Supp. 3d at 1231.  In <u>Warner Bros. Ent. Inc. v. Loyd</u>, No. CIV 20-0062, 2023 WL 5727468 (D.N.M. September 5, 2023)(Browning, J.), the Court held that it has subject matter jurisdiction over the plaintiffs' claims, which properly arise under a range of federal statutes.  <u>See</u> 2023 WL 5727468, *96-97.  In <u>Darr v. New Mexico Dep't of Game & Fish</u>, 403 F. Supp. 3d 967 (D.N.M. 2019)(Browning, J.), a case removed from State court, the Court remands the case, because the plaintiff's complaint is "based entirely on New Mexico employment and disability causes of action, none of which on their face turn on a federal issue."  403 F. Supp. 3d at 1015.  The Court also exercises its supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear State-law claims that were a part of the same federal claims over which the Court had original jurisdiction.  <u>See</u>, <u>e.g.</u>, 2023 WL 5727468, *98-99.

## <u>LAW REGARDING RULE 12(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994)(Brorby, J.).  The complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court

must accept as true all of the complaint's well-pled factual allegations, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(Briscoe, J.)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)(McKay, J.)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)("Wright & Miller")).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is facially plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell

Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(Kelly, J.)(emphasis in original). The United States Court of Appeals for the Tenth Circuit states:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 550 U.S.] at [570]. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although defendants generally must plead affirmative defenses in their answers and not argue them on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions. First, a defendant can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense; the courts handle these cases differently than other motions to dismiss. See Robbins v. Oklahoma, 519 F.3d at 1247; Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)). Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the complaint's face. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(Hill, J.)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the

affirmative defense that the complaint's uncontroverted facts is most likely to establish.  See Wright & Miller, supra, § 1277, at 643.  If a complaint sets forth dates that fall outside of the statutory limitations period, then a defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union P. R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955)(Wallace, J.); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945)(Phillips, J.); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

A plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute.  The Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in a complaint or may be merely argued in response to the motion.[9]  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(Major, J.)(holding that, once a plaintiff has pled facts in a complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense).  In case law in several Courts of Appeals, a

---

[9]The Tenth Circuit views a claim based on a statute of limitations as an "affirmative defense," which "[a] plaintiff need not anticipate in the complaint," as "it is the defendant's burden to plead an affirmative defense." Fernandez v. Clean House, LLC, 883 F.3d 1296, 1298-99 (10th Cir. 2018)(citing Gomex v. Toledo, 446 U.S. 635, 640 (1980)). See United States v. Titterington, 374 F.3d 453, 456 (6th Cir. 2004)(citing United States v. Cook, 84 U.S. 168 (1872))("[T]he Supreme Court has held that a statute-of-limitations claim falls on the affirmative-defense side of the line."). The Plaintiffs are not required to "plead against affirmative defenses" and, accordingly, a motion to dismiss cannot be sustained on factors of an affirmative defense the plaintiff is not required to anticipate. Asebedo v. Kan. State Univ., 559 F. App'x. 668, 671-72 (10th Cir. 2014)(holding that a dismissal based on a plaintiff omitting a claim of reasonableness in his or her complaint is invalid when reasonableness is an element of an affirmative defense and thus not required in the complaint). Accordingly, "[t]he statute of limitations . . . is not at issue until it is raised," and "[o]nly then does it become incumbent upon the plaintiff to meet the allegations or face dismissal of [their] complaint." Cutsinger v. Cullinan, 72 Ill. App. 3d 527, 531-32 (Ill. App. 1979). The Court thus concludes that a plaintiff is not required to include facts to support an assertion that a different statute of limitations or an equitable tolling doctrine applies in their complaint, as this would require the plaintiff to plead against an affirmative defense.

plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates.  See, e.g., Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007)(Niemeyer, J.); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)(Ripple, J.).  Although the Tenth Circuit has not addressed this practice squarely, the Court has permitted this practice.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1207 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING THE UNITED STATES' SOVEREIGN IMMUNITY

The United States, as the sovereign, "cannot be sued without its consent."  Garcia v. United States, 709 F. Supp. 2d 1133, 1137 (D.N.M. 2010)(Browning, J.).  A court has no jurisdiction over a suit against the United States unless the United States consents to be sued.  See United States v. Mitchell, 463 U.S. 206, 212 (1983)(holding that it is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"); FDIC v. Meyer, 510 U.S. 471, 475 (1983)("Sovereign immunity is jurisdictional in nature."); Cortez v. E.E.O.C., 585 F. Supp. 2d 1273, 1282 (D.N.M. 2007)(Browning, J.)("If Congress has not waived sovereign immunity, the federal court does not have jurisdiction to hear the claim.").  The United States' agencies also have sovereign immunity absent a waiver.  See FDIC v. Meyer, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); Cortez v. E.E.O.C., 585 F. Supp. 2d at 1283.  Furthermore, "[w]hen the acts complained of by the plaintiff pertain to actions of defendants in their official capacity as agents of the United States, the claim is, in actuality, against the United States."  Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161, at 1190 (D.N.M. 2010)(Browning, J.).  See Kentucky v. Graham, 473 U.S. 159, 165-166 (1985)(recognizing that suits against officials in their official capacities "represent only another way of pleading an action against an entity of which an officer is an

agent").  "The party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived." James v. United States, 970 F.2d 750, 753 (10th Cir. 1992).

Congress often has waived the United States' sovereign immunity by statute.  Such statutory waivers of the United States' sovereign immunity "must be unequivocally expressed in statutory text" and cannot be "implied."  Lane v. Pena, 518 U.S. 187, 192 (1996).  See Pueblo of Jemez v. United States, 430 F. Supp. 3d 943, 1149-50 (D.N.M. 2019)(Browning, J.), amended on reconsideration, 483 F. Supp. 3d 1024 (D.N.M. 2020), aff'd in part, vacated in part, rev'd in part, 63 F.4th 881 (10th Cir. 2023).  Accordingly, a "statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text." Lane v. Pena, 518 U.S. at 192.  "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  Lane v. Pena, 518 U.S. at 192.  For example, the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), waives sovereign immunity "for certain torts that United States employees cause while acting within the scope of their office or of their employment," De Baca v. United States, 403 F. Supp. 3d 1098, 1121 (D.N.M. 2019)(Browning, J.).  See Cortez v. E.E.O.C., 585 F. Supp. 2d at 1284 ("The only statutory authority to sue the United States for common-law torts is under the Federal Tort Claims Act . . . .").  Similarly, the Tucker Act, 28 U.S.C. § 1491, establishes a waiver of sovereign immunity for non-tortious claims seeking money damages "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491.

Perhaps the most important waiver of the United States' sovereign immunity is in 5 U.S.C. § 702, which provides a limited waiver of sovereign immunity for challenges to agency action that do not seek money damages.  See United States v. Murdock Mach. & Eng'g Co. of

Utah, 81 F.3d 922, 930 n.8 (10th Cir. 1996)(noting that 5 U.S.C. § 702 provides "a general waiver of the government's sovereign immunity from injunctive relief").  Specifically, under 5 U.S.C. § 702, the United States waives sovereign immunity as to actions "in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  5 U.S.C. § 702.  The waiver found in 5 U.S.C. § 702 "is not limited to suits under the Administrative Procedure Act."  Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005).  See Gilmore v. Weatherford, 694 F.3d 1160, 1166 n.1 (10th Cir. 2012)("Whether plaintiffs' claims arise under the APA or common law is also immaterial with respect to the sovereign immunity analysis."); Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv., 58 F. Supp. 3d 1191, 1223 (D.N.M. 2014)(Browning, J.).  Because "the APA does not grant subject-matter jurisdiction," however, the APA cannot waive sovereign immunity "when the relevant statute 'precludes judicial review' or when 'agency action is committed to agency discretion by law.'"  New Mexico v. McAleenan, 450 F. Supp. 3d at 1194-95 (quoting 5 U.S.C. § 701(a)(1)-(2)).

## LAW REGARDING JUDICIAL REVIEW OF AGENCY ACTION

The APA provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, that any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.  Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable

ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.  The APA empowers reviewing courts, "[t]o the extent necessary to decision and when presented," to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  Such a reviewing court "shall":

    (1)    compel agency action unlawfully withheld or unreasonably delayed; and

    (2)    hold unlawful and set aside agency action, findings, and conclusions found to be --

        (A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

        (B)    contrary to constitutional right, power, privilege, or immunity;

        (C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

        (D)    without observance of procedure required by law;

        (E)    unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

        (F)    unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.  This statutory provision provides the "default standard" of review under the APA, which applies unless the agency's enabling act -- or another statute -- provides otherwise.  See Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C. Cir. 1995)("[T]he APA provides a default standard of judicial review -- arbitrary or capricious -- precisely for situations, such as this one, where a statute does not otherwise provide a standard of judicial review.").  Section 706 provides standards -- not "a standard" -- of review, and different provisions in § 706 are used according to

the subject of the review: for example, the arbitrary-and-capricious standard is used to review "[i]nformal agency action," and informal (notice and comment) rulemaking, City of Colorado Springs v. Solis, 589 F.3d 1121, 1131 (10th Cir. 2009), and that standard is "'very deferential' to the agency's determination," Kobach v. U.S. Election Assistance Commission, 772 F.3d 1183, 1197 (10th Cir. 2014)(quoting Western Watersheds Project v. Bureau of Land Management., 721 F.3d 1264, 1273 (10th Cir. 2013)).  Section 706's substantial evidence test, on the other hand, "applies almost exclusively to formal adjudication," Ass'n of Data Processing Service Organizations, Inc. v. Board of Governors of Federal Reserve System, 745 F.2d 677, 686 n.6 (D.C. Cir. 1984)(Scalia, J.), because "a case subject to sections 556 and 557 of this title" refers to the APA's formal adjudication and formal rulemaking provisions, 5 U.S.C. § 706(2)(E).  De novo review provided in 5 U.S.C. § 706(2)(F), the APA's least deferential standard of review, is limited to use in two instances: "(1) when the action is adjudicatory in nature and the agency's fact-finding procedures inadequate; and (2) when issues not previously before the agency are raised in a proceeding to enforce a nonadjudicatory action."  Franklin Sav. Ass'n v. Dir., Off. of Thrift Supervision, 934 F.2d 1127, 1142 n.7 (10th Cir. 1991)(emphasis in original)(citing Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)).[10]  Importantly, § 706 also instructs the reviewing court,

---

[10]In 1947, shortly after the APA's passage, President Truman's Attorney General -- and future Associate Justice of the Supreme Court -- Tom Clark published the Attorney General's Manual on the Administrative Procedure Act, which was prepared as a guide to the then-nascent APA.  See United States Department of Justice, Tom C. Clark, Attorney General, Attorney General's Manual on the Administrative Procedure Act (1947)("AG's Manual on the APA").  Therein, Attorney General Clark remarks -- contrary to the Supreme Court's later interpretation of § 706(2)(F) in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. at 415 -- that "to the extent that the facts are subject to trial de novo by the reviewing court," § 706(2)(F), "obviously refers only to those existing situations in which judicial review has consisted of a trial de novo." AG's Manual on the APA at 109.  In essence, AG's Manual on the APA indicates that it was the

"[i]n making the foregoing determinations," to "review the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  See Pennaco Energy, Inc. v. U.S. Dep't of Interior, 377 F.3d 1147, 1157 (10th Cir. 2004)(rejecting the notion that the reviewing court's analysis "should be limited to those passages expressly relied upon by the [agency]").

In the Tenth Circuit, pursuant to Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1580 (10th Cir. 1994)("Olenhouse"), "[r]eviews of agency action in the district courts [under the APA] must be processed as appeals.  In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure."  Olenhouse, 42 F.3d at 1580 (emphasis in original).  See Wildearth Guardians v. U.S. Forest Serv., 668 F. Supp. 2d 1314, 1323 (D.N.M. 2009)(Browning, J.).  "As a group, the devices appellate courts normally use are generally more consistent with the APA's judicial review scheme than the devices that trial courts generally use, which presume nothing about the case's merits and divide burdens of proof and production almost equally between the plaintiff and defendant."  N. New Mexicans Protecting Land and Water Rights v. United States, 2015 WL 8329509 at *9.

### 1.    Reviewing Agency Factual Determinations.

Under the APA, a reviewing court must accept an agency's factual determinations in informal proceedings unless they are "arbitrary [or] capricious," 5 U.S.C. § 706(2)(A), and its

---

Attorney General's view -- in 1947 -- that § 706(2)(F) does not establish a standard by which courts could apply the de novo standard of review to situations outside of those which existed at the time of the APA's passage.  While this interpretation is not binding on any court, perhaps owing to its temporal proximity to the APA's passage, even the Supreme Court has acknowledged that "some deference" should be afforded to the AG's Manual on the APA: "[T]he Attorney General's Manual on the Administrative Procedure Act 31, 35 (1947), a contemporaneous interpretation previously given some deference by this Court because of the role played by the Department of Justice in drafting the legislation, further confirms that view."  Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 546 (1978)(footnote removed).

factual determinations in formal proceedings unless they are "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E). The APA's two linguistic formulations amount to a single substantive standard of review. See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Govs. of the Fed. Reserve Sys., 745 F.2d at 683-84 (explaining that, as to factual findings, "there is no substantive difference between what [the arbitrary-or-capricious standard] requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense" (emphasis in original)). See also Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Govs. of the Fed. Reserve Sys., 745 F.2d at 684 ("[T]his does not consign paragraph (E) of the APA's judicial review section to pointlessness. The distinctive function of paragraph (E) -- what it achieves that paragraph (A) does not -- is to require substantial evidence to be found within the record of closed-record proceedings to which it exclusively applies." (emphasis in original)).

Again, in reviewing agency action under the arbitrary-or-capricious standard, a court considers the administrative record -- or at least those portions of the record that the parties provide -- and not materials outside of the record. See 5 U.S.C. § 706 ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party."); Fed. R. App. P. 16 ("The record on review or enforcement of an agency order consists of . . . the order involved; . . . any findings or report on which it is based; and . . . the pleadings, evidence, and other parts of the proceedings before the agency."); Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Govs. of the Fed. Reserve Sys., 745 F.2d at 684 ("[W]hether the administrator was arbitrary must be determined on the basis of what he had before him when he acted."). See also Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision, 934 F.2d 1127, 1137 (10th Cir. 1991)("[W]here Congress has provided for judicial review without setting forth . . . procedures to be followed in

conducting that review, the Supreme Court has advised such review shall be confined to the administrative record and, in most cases, no de novo proceedings may be had.").  Tenth Circuit precedent indicates, however, that the ordinary evidentiary rules regarding judicial notice apply when a court reviews agency action.  See N.M. ex. rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 702 n.21 (10th Cir. 2009)(citing rule 201(b) of the Federal Rules of Evidence)("We take judicial notice of this document, which is included in the record before us in [another case]."); New Mexico ex. rel. Richardson v. Bureau of Land Mgmt., 565 F.3d at 702 n.22 ("We conclude that the occurrence of Falcon releases is not subject to reasonable factual dispute and is capable of determination using sources whose accuracy cannot reasonably be questioned, and we take judicial notice thereof.").  In contrast, the United States Courts of Appeals for the Ninth and Eleventh Circuits -- as well as decisions from the United States District Court for the District of Columbia -- have held that taking judicial notice is generally inappropriate in APA review, subject to extraordinary circumstances or inadvertent omission from the administrative record.  See Fence Creek Cattle Co. v. U.S. Forest Serv., 602 F.3d 1125, 1131 (9th Cir. 2010); National Min. Ass'n v. Sec'y U.S. Dep't of Labor, 812 F.3d 843, 875 (11th Cir. 2016); Dist. Hosp. Partners, L.P. v. Sebelius, 971 F. Supp. 2d 15, 32 (D.D.C. 2013)(Huvelle, J.)("The Court, however, notes that taking judicial notice is typically an inadequate mechanism for a court to consider extra-record evidence when reviewing an agency action."), aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell, 786 F.3d 46 (D.C. Cir. 2015).  Broadly, the Tenth Circuit has expressed that, "[w]hile judicial review of agency action is normally restricted to the administrative record, we have recognized that consideration of extra-record materials is appropriate in 'extremely limited' circumstances, such as where the agency ignored relevant factors it should have considered or considered factors left out of the formal record." Lee v. U.S. Air Force, 354 F.3d 1229, 1242 (10th Cir. 2004)(quoting

Am. Min. Cong. v. Thomas, 772 F.2d 617, 626 (10th Cir. 1985)).

To fulfill its function under the APA, a reviewing court should engage in a "thorough, probing, in-depth review" of the whole record before it when determining whether an agency's decision survives arbitrary-or-capricious review. Wyoming v. United States, 279 F.3d 1214, 1238 (10th Cir. 2002)(citing Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971)). The Tenth Circuit explains:

> In determining whether the agency acted in an arbitrary and capricious manner, we must ensure that the agency decision was based on a consideration of the relevant factors and examine whether there has been a clear error of judgment. We consider an agency decision arbitrary and capricious if the agency relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Colo. Env't Coal. v. Dombeck, 185 F.3d 1162, 1167 (10th Cir. 1999). Arbitrary-or-capricious review requires a district court "to engage in a substantive review of the record to determine if the agency considered relevant factors and articulated a reasoned basis for its conclusions," Olenhouse, 42 F.3d at 1580, but it is not to assess the wisdom or merits of the agency's decision, see Colorado Environmental Coalition v. Dombeck, 185 F.3d at 1172. The agency must articulate the same rationale for its findings and conclusions on appeal upon which it relied in its internal proceedings. See SEC v. Chenery Corp., 318 U.S. 80, 94 (1943)("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."). While the court may not supply a reasoned basis for the agency's action that the agency does not give itself, the court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

2.    __Reviewing Agency Legal Interpretations__.

In promulgating and enforcing regulations, agencies must interpret federal statutes, their

own regulations, and the Constitution, and courts reviewing those interpretations apply three

different deference standards, depending on the law at issue.  First, as it pertains to federal statutes,

between 1984 and 2024, courts had to defer to agency interpretations of ambiguous statutes that

the federal agency administered, and this deference was known as Chevron deference -- named

after the 1984 case of Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S.

837 (1984)("Chevron").  Chevron deference was a two-step process[11] that first asked whether the

statutory provision in question is clear and, if it is not clear, then asks whether the agency's

interpretation of the unclear statute is reasonable.  Chevron, 467 U.S. at 843.  The Supreme Court,

however, overturns this deferential approach during its October, 2023, term in Loper Bright

Enterprises v. Raimondo, 603 U.S. 369 (2024)("Loper Bright").

In Loper Bright, in an opinion that the Honorable John Roberts, Chief Justice of the United

States, authors, the Supreme Court reviews the traditional understandings of the judicial function,

quoting Alexander Hamilton for the proposition that "[t]he Framers . . . envisioned that the final

'interpretation of the laws' would be 'the proper and peculiar province of the courts,'" Loper

Bright, 603 U.S. at 385 (quoting The Federalist no. 78 (Hamilton)), and the Honorable John

Marshall, former Chief Justice of the United States, for the oft-cited principle that "'[i]t is

emphatically the province and duty of the judicial department to say what the law is,'" Loper

Bright, 603 U.S. at 385 (quoting Marbury v. Madison, 1 Cranch 137, 177 (1803)).  The Supreme

---

[11]There was, additionally, a threshold step -- which Professor Cass Sunstein famously called "step zero" -- which asked whether Chevron deference applies to the agency decision at all. See Cass R. Sunstein, Chevron Step Zero, 92 Va. L. Rev. 187, 191 (2006).

Court describes that, although the New Deal "ushered in a 'rapid expansion of the administrative process,'" the Supreme Court continued to "adhere to the traditional understanding that questions of law were for courts to decide, exercising independent judgment."  Loper Bright, 603 U.S. at 387 (quoting United States v. Morton Salt Co., 338 U.S. 632, 644 (1950)).  The Supreme Court then reads and analyzes APA § 706's plain language -- which states that, "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action," 5 U.S.C. § 706 -- and concludes that the APA "codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to Marbury: that courts decide legal questions by applying their own judgment."  Loper Bright, 603 U.S. at 391.

The Supreme Court then explains that "[t]he deference that Chevron requires of courts reviewing agency action cannot be squared with the APA," Loper Bright, 603 U.S. at 396, largely because "[t]he 'law of deference' . . . built on the foundation laid in Chevron [is] '[h]eedless of the original design' of the APA," Loper Bright, 603 U.S. at 398 (quoting Perez v. Mortgage Bankers Ass'n, 575 U.S. 92, 109 (2015)(Scalia, J., concurring in the judgment)).  Moreover, according to the Supreme Court, "agencies have no special competence in resolving statutory ambiguities.  Courts do."  Loper Bright, 603 U.S. at 400-01.  In lieu of Chevron's presumption, the Supreme Court observes that "[t]he better presumption is . . . that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch."  Loper Bright, 603 U.S. at 403.  This statement's rule, therefore, is what takes the place of Chevron deference: ordinary judicial interpretation of statutes, and courts are free to review and reject

statutory interpretations that federal agencies offer.[12]

Second, despite Chevron's demise, when agencies interpret their regulations -- to, for example, adjudicate whether a regulated party is in compliance with them -- courts accord agencies what is known as Auer or Seminole Rock deference.  See Auer v. Robbins, 519 U.S. 452 (1997)("Auer"); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945).  This deference is applied in the same manner as the erstwhile Chevron deference and is substantively identical.  There would be little reason to have a separate name for this doctrine except that its logical underpinnings are much shakier, and its future is, accordingly, uncertain.  Justice Scalia, after years of applying the doctrine followed by years of questioning its soundness, finally denounced Auer deference in 2013 in his dissent in Decker v. Northwest Environmental Defense Center, 568 U.S. 597 (2013).  The Court cannot describe the reasons for Justice Scalia's abandonment of the doctrine better than the Justice himself:

---

[12]The Supreme Court notes, however, that its holding does not forbid Congress from conferring some degree of statutory authority on agencies:

> That is not to say that Congress cannot or does not confer discretionary authority on agencies.  Congress may do so, subject to constitutional limits, and it often has.  But to stay out of discretionary policymaking left to the political branches, judges need only fulfill their obligations under the APA to independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA.  By forcing courts to instead pretend that ambiguities are necessarily delegations, Chevron does not prevent judges from making policy.  It prevents them from judging.

Loper Bright, 603 U.S. at 404.  In addition, Loper Bright affirms that deference under Skidmore v. Swift & Co., 323 U.S. 134, 139-40 (1944), continues to apply.  See Loper Bright, 603 U.S. at 393-96.  Under this species of deference, "'interpretations and opinions' of the relevant agency, 'made in pursuance of official duty' and 'based upon . . . specialized experience,' 'constitute[d] a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance,' even on legal questions."  Loper Bright, 603 U.S. at 388 (quoting Skidmore v. Swift & Co., 323 U.S. at 139-40)(ellipses and brackets in Loper Bright).

For decades, and for no good reason, we have been giving agencies the authority to say what their rules mean, under the harmless-sounding banner of "defer[ring] to an agency's interpretation of its own regulations." Talk America, Inc. v. Michigan Bell Telephone Co., [564] U.S. [50, 67] . . . (2011) (Scalia, J., concurring). This is generally called Seminole Rock or Auer deference. See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 . . . (1945); Auer v. Robbins, 519 U.S. 452 . . . (1997).

. . . .

The canonical formulation of Auer deference is that we will enforce an agency's interpretation of its own rules unless that interpretation is "plainly erroneous or inconsistent with the regulation." Seminole Rock, supra, at 414, 65 S. Ct. 1215, 89 L. Ed. 1700. But of course whenever the agency's interpretation of the regulation is different from the fairest reading, it is in that sense "inconsistent" with the regulation. Obviously, that is not enough, or there would be nothing for Auer to do. In practice, Auer deference is Chevron deference applied to regulations rather than statutes. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837. . . (1984). The agency's interpretation will be accepted if, though not the fairest reading of the regulation, it is a plausible reading -- within the scope of the ambiguity that the regulation contains.

Our cases have not put forward a persuasive justification for Auer deference. The first case to apply it, Seminole Rock, offered no justification whatever -- just the ipse dixit that "the administrative interpretation . . . becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." 325 U.S., at 414 . . . . Our later cases provide two principal explanations, neither of which has much to be said for it. See generally Stephenson & Pogoriler, Seminole Rock's Domain, 79 Geo. Wash. L. Rev. 1449, 1454-1458 (2011). First, some cases say that the agency, as the drafter of the rule, will have some special insight into its intent when enacting it. E.g., Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 150-153 . . . (1991). The implied premise of this argument -- that what we are looking for is the agency's intent in adopting the rule -- is false. There is true of regulations what is true of statutes. As Justice Holmes put it: "[w]e do not inquire what the legislature meant; we ask only what the statute means." The Theory of Legal Interpretation, 12 Harv. L. Rev. 417, 419 (1899). Whether governing rules are made by the national legislature or an administrative agency, we are bound by what they say, not by the unexpressed intention of those who made them.

The other rationale our cases provide is that the agency possesses special expertise in administering its "'complex and highly technical regulatory program.'" See, e.g., Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 . . . (1994). That is true enough, and it leads to the conclusion that agencies and not courts should make regulations. But it has nothing to do with who should interpret regulations -

- unless one believes that the purpose of interpretation is to make the regulatory program work in a fashion that the current leadership of the agency deems effective. Making regulatory programs effective is the purpose of <u>rulemaking</u>, in which the agency uses its "special expertise" to formulate the best rule. But the purpose of interpretation is to determine the fair meaning of the rule -- to "say what the law is." <u>Marbury v. Madison</u>, 5 U.S. 137, 1 Cranch 137, 177, 2 L. Ed. 60 (1803). Not to make policy, but to determine what policy has been made and promulgated by the agency, to which the public owes obedience. Indeed, since the leadership of agencies (and hence the policy preferences of agencies) changes with Presidential administrations, an agency head can only be sure that the application of his "special expertise" to the issue addressed by a regulation <u>will be given effect</u> if we adhere to predictable principles of textual interpretation rather than defer to the "special expertise" of his successors. If we take agency enactments as written, the Executive has a stable background against which to write its rules and achieve the policy ends it thinks best.

Another conceivable justification for <u>Auer</u> deference, though not one that is to be found in our cases, is this: If it is reasonable to defer to agencies regarding the meaning of statutes that <u>Congress</u> enacted, as we do per <u>Chevron</u>, it is <u>a fortiori</u> reasonable to defer to them regarding the meaning of regulations <u>that they themselves crafted</u>. To give an agency less control over the meaning of its own regulations than it has over the meaning of a congressionally enacted statute seems quite odd.

But it is not odd at all. The theory of <u>Chevron</u> (take it or leave it) is that when Congress gives an agency authority to administer a statute, including authority to issue interpretive regulations, it implicitly accords the agency a degree of discretion, which the courts must respect, regarding the meaning of the statute. <u>See</u> <u>Smiley v. Citibank (South Dakota), N.A.</u>, 517 U.S. 735, 740-741 . . . (1996). While the implication of an agency power to clarify the statute is reasonable enough, there is surely no congressional implication that the agency can resolve ambiguities in its own regulations. For that would violate a fundamental principle of separation of powers -- that the power to write a law and the power to interpret it cannot rest in the same hands. "When the legislative and executive powers are united in the same person . . . there can be no liberty; because apprehensions may arise, lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner." Montesquieu, <u>Spirit of the Laws</u> bk. XI, at 151-152 (O. Piest ed., T. Nugent transl. 1949). Congress cannot enlarge its own power through <u>Chevron</u> -- whatever it leaves vague in the statute will be worked out <u>by someone else</u>. <u>Chevron</u> represents a presumption about who, as between the Executive and the Judiciary, that someone else will be. (The Executive, by the way -- the competing political branch -- is the less congenial repository of the power as far as Congress is concerned.) So Congress's incentive is to speak as clearly as possible on the matters it regards as important.

But when an agency interprets its <u>own</u> rules -- that is something else.  Then the power to prescribe is augmented by the power to interpret; and the incentive is to speak vaguely and broadly, so as to retain a "flexibility" that will enable "clarification" with retroactive effect.  "It is perfectly understandable" for an agency to "issue vague regulations" if doing so will "maximiz[e] agency power." <u>Thomas Jefferson Univ.</u>, <u>supra</u>, at 525, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (Thomas, J., dissenting).  Combining the power to prescribe with the power to interpret is not a new evil: Blackstone condemned the practice of resolving doubts about "the construction of the Roman laws" by "stat[ing] the case to the emperor in writing, and tak[ing] his opinion upon it."  1 W. Blackstone, Commentaries on the Laws of England 58 (1765).  And our Constitution did not mirror the British practice of using the House of Lords as a court of last resort, due in part to the fear that he who has "agency in passing bad laws" might operate in the "same spirit" in their interpretation.  The Federalist No. 81, at 543-544 (Alexander Hamilton)(J. Cooke ed. 1961).  <u>Auer</u> deference encourages agencies to be "vague in framing regulations, with the plan of issuing 'interpretations' to create the intended new law without observance of notice and comment procedures."  Anthony, <u>The Supreme Court and the APA: Sometimes They Just Don't Get It</u>, 10 Admin. L. J. Am. U. 1, 11-12 (1996).  <u>Auer</u> is not a logical corollary to <u>Chevron</u> but a dangerous permission slip for the arrogation of power.  <u>See</u> <u>Talk America</u>, 564 U.S., at 68-69, . . . (Scalia, J., concurring); Manning, <u>Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules</u>, 96 Colum. L. Rev. 612 (1996).

It is true enough that <u>Auer</u> deference has the same beneficial pragmatic effect as <u>Chevron</u> deference: The country need not endure the uncertainty produced by divergent views of numerous district courts and courts of appeals as to what is the fairest reading of the regulation, until a definitive answer is finally provided, years later, by this Court.  The agency's view can be relied upon, unless it is, so to speak, beyond the pale.  But the duration of the uncertainty produced by a vague regulation need not be as long as the uncertainty produced by a vague statute.  For as soon as an interpretation uncongenial to the agency is pronounced by a district court, the agency can begin the process of amending the regulation to make its meaning entirely clear.  The circumstances of this case demonstrate the point.  While these cases were being briefed before us, EPA issued a rule designed to respond to the Court of Appeals judgment we are reviewing.  <u>See</u> 77 Fed. Reg. 72974 (2012) (to be codified in 40 C.F.R. pt. 122, subpt. B).  It did so (by the standards of such things) relatively quickly: The decision below was handed down in May 2011, and in December 2012 the EPA published an amended rule setting forth in unmistakable terms the position it argues here.  And there is another respect in which a lack of <u>Chevron</u>-type deference has less severe pragmatic consequences for rules than for statutes.  In many cases, when an agency believes that its rule permits conduct that the text arguably forbids, it can simply exercise its discretion not to prosecute.  That is not possible, of course, when, as here, a party harmed by the violation has standing to compel enforcement.

> In any case, however great may be the efficiency gains derived from <u>Auer</u> deference, beneficial effect cannot justify a rule that not only has no principled basis but contravenes one of the great rules of separation of powers: He who writes a law must not adjudge its violation.

<u>Decker v. Nw. Envtl. Def. Ctr.</u>, 568 U.S. 597, 616-21 (Scalia, J., dissenting). The Court shares fully Justice Scalia's concerns about <u>Auer</u> deference; however, it is, for the time being, the law of the land, and, as a federal district court, the Court must apply it.[13]

Courts afford agencies no deference in interpreting the Constitution. <u>See</u> <u>U.S. West, Inc. v. FCC</u>, 182 F.3d 1224, 1231 (10th Cir. 1999)("[A]n unconstitutional interpretation is not entitled to <u>Chevron</u> deference. . . . [D]eference to an agency interpretation is inappropriate not only when it is conclusively unconstitutional, but also when it raises serious constitutional questions." (citing, e.g., <u>Rust v. Sullivan</u>, 500 U.S. 173, 190-91 (1991))). Courts have superior competence in interpreting -- and Constitutionally vested authority and responsibility to interpret -- the Constitution's content. The presence of a Constitutional claim does not take a court's review outside of the APA, however -- § 706(2)(B) specifically contemplates adjudication of Constitutional issues -- and courts still must respect agency fact-finding and the administrative record when reviewing agency action for Constitutional infirmities; they just should not defer to the agency on issues of substantive legal interpretation. <u>See</u>, e.g., <u>Robbins v. U.S. Bureau of Land Mgmt.</u>, 438 F.3d 1074, 1085 (10th Cir. 2006)("We review Robbins' [Constitutional] due process claim against the [agency] under the framework set forth in the APA.").

---

[13]Clarence Thomas, Associate Justice of the Supreme Court, and Neil Gorsuch, Associate Justice of the Supreme Court, recently have echoed Justice Scalia's concerns with <u>Auer</u> deference, and have called on the Supreme Court to reconsider and overrule <u>Auer</u>. <u>See</u> <u>Garco Construction, Inc. v. Speer</u>, 583 U.S. 1193, 1193-1195 (2018)(dissenting from denial of certiorari).

Last, the most recent development in <u>Chevron</u>-adjacent jurisprudence is the rise of the "major questions doctrine."[14]    <u>W. Virginia v. Env't Prot. Agency</u>, 597 U.S. 697, 724 (2022)(Roberts, C.J.)("<u>West Virginia v. EPA</u>").  Concisely put, under this doctrine, a court should not sustain an agency action that involves regulation of "major questions" -- those of great "'economic and political significance,'" <u>West Virginia v. EPA</u>, 597 U.S. at 721 (quoting <u>Food & Drug Administration v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 147 (2000)(O'Connor, J.)) -- unless the agency can point to clear Congressional authorization for such an action, <u>see</u> <u>West Virginia v. EPA</u>, 597 U.S. at 720-24.  Although the majority opinion in Supreme Court in <u>West Virginia v. EPA</u> never mentions the erstwhile <u>Chevron</u> doctrine, many academic commentators have conceptualized the major questions doctrine as a "exception" or

---

[14]The novelty -- or, alternatively, the historical basis -- of this doctrine is a source of debate, even among the Justices.  <u>Compare</u> <u>West. Virginia v. EPA</u>, 597 U.S. 697, 766 (2022)(Kagan, J., dissenting)(stating that the majority opinion "announces the arrival of the 'major questions doctrine'" (quoting Majority Op. at 724)), <u>with</u> <u>West Virginia v. EPA</u>, 597 U.S. at 740 (Gorsuch, J., concurring)(stating that "[s]ome version" of the major questions doctrine "can be traced to at least 1897").  <u>See</u> Thomas W. Merrill, <u>The Major Questions Doctrine: Right Diagnosis, Wrong Remedy</u> at 2, Hoover Inst., Legitimacy of Administrative Law Essay Series, available at https://www.hoover.org/sites/default/files/research/docs/ Merrill_WebReadyPDF.pdf (last visited November 16, 2024)(arguing that <u>West Virginia v. EPA</u> crystalized previous expressions of skepticism about "agency assertions of 'broad and unusual authority through an implicit delegation,'" into a distinct "doctrine" (quoting <u>Gonzalez v. Oregon</u>, 546 U.S. 243, 267 (2006)); Kevin O. Leske, <u>Major Questions About the "Major Questions" Doctrine</u>, 5 Mich. J. Env't & Admin. L. 479, 480 (2016)("After over a decade of hibernation, the United States Supreme Court has awoken the 'major questions' doctrine, which has re-emerged in an expanded form." (source of quoted material not cited)).  Nevertheless, the Court is comfortable saying that <u>West Virginia v. EPA</u> marks the "rise" of the major questions doctrine, because that case is the first time that the Supreme Court states that it is applying something called the "major questions doctrine."  <u>West Virginia v. EPA</u>, 597 U.S. at 724.  Justice Kavanaugh, when serving as a Judge on the United States Court of Appeals for the District of Columbia Circuit, once referred to something called the "major rules doctrine" -- which he defined by quoting Justice Scalia's observation that "[w]e expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance."  <u>United States Telecom Ass'n v. Fed. Commc'ns Comm'n</u>, 855 F.3d 381, 417 (D.C. Cir. 2017)( Kavanaugh, J., dissenting)(quoting <u>Util. Air Regul. Grp. v. E.P.A.</u>, 573 U.S. 302, 324 (2014)).

"carve-out" to Chevron analysis.  See Merrill, The Major Questions Doctrine: Right Diagnosis, Wrong Remedy, supra, at 2 ("[T]he major questions doctrine should be seen as a carve-out from the Chevron doctrine, one that all six justices in the conservative majority could agree on as a partial corrective to some of the most frequently cited failings of the Chevron regime."); William N. Eskridge, Jr. et. al., Textualism's Defining Moment, 123 Colum. L. Rev. 1611, 1675 (2023)("Recently, the Major Questions Doctrine (MQD) has become a prominent textualist-favored, policy-based exception to Chevron[.]"); Daniel T. Deacon & Leah M. Litman, The New Major Questions Doctrine, 109 Va. L. Rev. 1009, 1020-21 (2023)("In a set of cases, the Court has suggested either that an issue should not be analyzed using the Chevron framework because Congress did not authorize agencies to resolve the issue due to its majorness, or that the Chevron analysis operates differently because the agency policy is a major one."); Mila Sohoni, The Major Questions Quartet, 136 Harv. L. Rev. 262, 263-64 (2022)(arguing that West Virginia v. EPA and its companion cases "unhitched the major questions exception from Chevron, which has been silently ousted from its position as the starting point for evaluating whether an agency can exert regulatory authority").  While many questions remain about the application of the major questions doctrine, it is clear that -- at least for "major" questions -- an agency will be presumed to have no authority to act unless Congress has "clearly" conferred on that agency the authority to act, regardless of Chevron deference.  West Virginia v. EPA, 597 U.S. at 716.

**3.      Waiving Sovereign Immunity.**

The APA waives sovereign immunity with respect to non-monetary claims.  See 5 U.S.C. § 702.  The statute provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be

dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States:

5 U.S.C. § 702. Claims for money damages seek monetary relief "to substitute for a suffered loss." Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d 1290, 1298 (10th Cir. 2009)(emphasis in original). Claims that do not seek monetary relief or that seek "specific remedies that have the effect of compelling monetary relief" are not claims for monetary damages. Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d at 1298. See, e.g., Aero Tech, Inc., v. United States Department of the Interior, No. CIV 23-0726 JB/JHR, 2024 WL 4581545 at n. 6 (D.N.M. October 25, 2024)(Browning, J.)(stating that the APA "waives sovereign immunity for all actions that seek 'relief other than money damages,' 5 U.S.C. § 702, which includes nonparty subpoenas" (citing Exxon Shipping Co. v. U.S. Dept. of the Interior, 34 F.3d 774, 778-79 n.9 (9th Cir. 1994)). To determine whether a claim seeks monetary relief, a court must "look beyond the face of the complaint," and assess the plaintiff's prime object or essential purpose; "[a] plaintiff's prime objective or essential purpose is monetary unless the non-monetary relief sought has significant prospective effect or considerable value apart from the claim for monetary relief." Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d at 1296 (quoting Burkins v. United States, 112 F.3d 444, 449 (10th Cir. 1997)).

The APA's sovereign immunity waiver for claims "seeking relief other than money damages" does not apply, however, "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act, 28 U.S.C. §§ 1346, 1491, permits district courts to hear some claims against the United States, but it also states that "district courts shall not have jurisdiction of any civil action or claim against the United States

founded upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2).  It follows that the APA does not waive the United States' sovereign immunity as to contract claims even when those claims seek relief other than money damages, such as declaratory or injunctive relief.  See Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d at 1295. Consequently, two questions determine whether the APA waives the United States' sovereign immunity as to a particular claim: "First, does [the] claim seek 'relief other than money damages,' such that the APA's general waiver of sovereign immunity is even implicated?  Second, does the Tucker Act expressly or impliedly forbid the relief that Normandy seeks, such that the APA's waiver does not apply?"  Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d at 1296 (quoting 5 U.S.C. § 702).

## ANALYSIS

The Court conducts its analysis in four parts.  First, the Court evaluates the Hermit's Peak Act and concludes that Congress mandates FEMA to issue a judicially reviewable claim determination within 180 days.  Second, the Court concludes that, although FEMA's regulations allow FEMA to withhold an administrative appeal decision beyond the 180-day timeline, FEMA can follow, in theory, those regulations and provide an administrative appeal decision in 180 days. Third, the Court concludes that Congress has waived FEMA's sovereign immunity in federal court for the Judicial Review Claims for two reasons: (i) by requiring FEMA to issue a judicially reviewable claim determination within 180 days, Congress waives FEMA's sovereign immunity for the Judicial Review claims after day 180, as long as the Plaintiffs have followed FEMA's regulations that are consistent with 180-day timeline; the Plaintiffs who have followed FEMA's regulations that are consistent with the 180-day timeline and come to court within the sixty-day window of the Judicial Review Provision's limited sovereign immunity waiver have exhausted

administrative remedies; having exhausted administrative remedies, the Plaintiffs satisfy the exhaustion requirement in the limited sovereign immunity waiver of the Hermit's Peak Act; and (ii) even if the Plaintiffs have not exhausted administrative remedies, FEMA waives the exhaustion requirement in the limited sovereign immunity waiver of the Hermit's Peak Act for the Plaintiffs, and, thus, the Plaintiffs are properly before the Court.  In this third section, the Court also concludes that there is no general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act under the three-prong test that the Court identifies in Vigil, because, although exhaustion is futile and will cause irreparable harm, the Plaintiffs do not assert a colorable Constitutional claim that is collateral to their underlying compensation claims.  In the final section, the Court denies FEMA's motion to dismiss the APA Claims, because the APA Plaintiffs plausibly allege that FEMA violates the APA.

## I.    FEMA MUST ISSUE A JUDICIALLY REVIEWABLE CLAIM DETERMINATION WITHIN 180 DAYS.

The Hermit's Peak Act requires FEMA to provide a judicially reviewable claim determination within 180 days after an initial claim is filed, i.e., the Notice of Loss.  As a reminder, the 180-Day Timeline Provision states: "Not later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim."  180-Day Timeline Provision.  The Judicial Review Provision states: "Any claimant aggrieved by a final decision of the Administrator under this Act may, not later than 60 days after the date on which the decision is issued, bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside the decision, in whole or in part."  Judicial Review Provision.  FEMA argues that the 180-Day Timeline Provision applies only to FEMA's initial claim determinations, which, it contends, are not judicially reviewable.  See Arrellin MTD

Reply at 8-10; Arrellin MTD at 10-12; February 6, 2025, Tr. at 28:25-29:12 (Sydow). The Court disagrees with this argument. "Exercis[ing] independent judgment in construing statutes administered by agencies," Loper Bright, 603 U.S. at 406 , the Court employs traditional tools of statutory construction -- evaluating the statute's text, structure, history, and purpose, see Kisor v. Wilkie, 588 U.S. 558, 559 (2019) -- to conclude that the 180-Day Timeline Provision requires FEMA to provide a judicially reviewable claim determination within 180 days

Although "the usual rule [is] that[,] 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended,'" DePierre v. United States, 564 U.S. 70, 83 (2011)(Sotomayor, J.)(quoting Sosa v. Alvarez–Machain, 542 U.S. 692, 711 n. 9 (2004)(Souter, J.)), "there is no 'canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing,'" Jennings v. Rodriguez, 583 U.S. 281, 303, (2018)(Alito, J.)(quoting Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519, 540 (2013)(Breyer, J.)). See United States v. Davis, 45 F.4th 73, 79 (D.C. Cir. 2022)(holding that the "assumption" that different words "must carry mutually exclusive meanings . . . is unwarranted because words sometimes express overlapping meaning, as indicated by context"). Whether the Hermit's Peak Act requires FEMA to issue judicially reviewable claim determinations within 180 days boils down to whether "different words used in different parts of the" Hermit's Peak Act -- i.e., the 180-Day Timeline Provision's "determine and fix" and the Judicial Review Provision's "final decision" -- "mean roughly the same thing." Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. at 540. Looking at the Hermit's Peak Act's text, structure, history, and purpose, the Court concludes that these terms refer to the same agency action and, thus, that FEMA must issue a judicially reviewable determination within 180 days.

Turning first to the text's plain meaning, the Court concludes that the 180-Day Timeline Provision and the Judicial Review Provision refer to the same action. A "determination" is "[t]he act of deciding something officially; esp., a <u>final</u> <u>decision</u> by a court or administrative agency." <u>Black's Law Dictionary</u> at 564 (12th ed. 2024)(emphasis added). The inquiry could end here; the leading legal dictionary defines the two provisions' key terms as one and the same, providing that a determination "esp[ecially]" refers to an administrative agency's "final decision." <u>Black's Law Dictionary</u> at 564. The Court also notes, however, that the 180-Day Timeline Provision's other key term, "fix," as in "to determine and fix the amount, if any, for the claim," means to provide a permanent, final decision on how much money FEMA will issue the claimant. 180-Day Timeline Provision. <u>See</u> <u>The Oxford English Dictionary</u>, Vol. V at 980 (2d ed. 1989)(defining "fix" as "[t]o fasten, make firm or stable in position; to place, attach, or insert and secure against displacement"); <u>id.</u> at 981 (defining "fix" as "[t]o secure from change, vacillation or wandering; to give stability or constancy to"); <u>id.</u> at 981 (defining "fix" as "[t]o deprive of volatility or fluidity"); <u>id.</u> at 981 (defining "fix" as "[t]o place in a definite and more or less permanent position"); <u>id.</u> at 984 (defining "fixed" as "[d]efinitely and permanently placed; stationary or unchanging in relative position"). There is nothing temporary or preliminary about the 180-Day Timeline Provision's text. If Congress wanted the 180-Day Timeline Provision to apply only to initial claim issuances that FEMA decides not to characterize as "final decisions" under the Judicial Review Provision, Congress could have added more words, like "initial," "preliminary," or "pre-appeal." Congress did not include any words that suggest the 180-Day Timeline Provision requires, allows, or contemplates FEMA issuing an initial, non-judicially reviewable compensation amount within 180 days and some other determination after 180 days.

Regarding the Judicial Review Provision's plain text, a "decision" is "[a] judicial or <u>agency</u> <u>determination</u> after consideration of the facts and the law; esp. a ruling, order, or judgment pronounced by a court when considering or disposing of a case." <u>Black's Law Dictionary</u> at 511 (emphasis added). Again, the two provisions' key terms -- "determine" and "decision" -- are defined as one and the same. Also, the "decision" definition does not mention, reference, or contemplate an appeal process. <u>See</u> <u>Black's Law Dictionary</u> at 511. In the same legal dictionary, the "final decision" definition cross-references to the "final judgment" definition, <u>Black's Law</u> <u>Dictionary</u> at 511, which defines a "final judgment" as "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment," <u>Black's Law Dictionary</u> at 1006. The "final decision" definition also does not mention, reference, or contemplate an appeal process. A final decision is the judicially reviewable decision. There may be several decisions before the 180 days pass, but once the 180-day deadline passes, there is only one decision -- the final one, which is the judicially reviewable decision. Like a final judgment in federal court, every judgment and order before the final judgment is interlocutory -- not final -- and cannot be appealed, with few exceptions. <u>XTO Energy, Inc. v. ATD, LLC</u>, 189 F. Supp. 3d 1174, 1188 (D.N.M. 2016)(Browning, J.)("Final judgments are different from interlocutory orders.")(citing Fed. R. Civ. P. 54(a)). Here, once the 180 days deadline passes, FEMA's decision becomes final and appealable.

Congress does not use the word "appeal" anywhere in the Hermit's Peak Act. <u>See</u> <u>generally</u> Hermit's Peak Act. FEMA asks the Court to read in an appeals process -- that, according to FEMA, exists outside the 180-day window -- into the words "final decision." Arrellin MTD Reply at 8-10. FEMA's interpretation makes the term "final decision" carry too much water. Nothing in those two

words creates or implies an appeals process, let alone one that exists outside the 180-day window.

Congress knows how to use words like "separate" or "appeal" to create the agency authorization

that FEMA asks the Court to read into the statute. To read into "final decision" a statutorily required

or allowed appeals process would distort and be contrary to the dictionary definitions of

"determination" and "decision," which do not typically contemplate an appeal. The Court does not

adopt FEMA's reading, because the fairer reading is that Congress authorizes FEMA to design a

claims-processing scheme within the 180-day window, and does not authorize FEMA to decide

when a claim is judicially reviewable by designing an appeals track that exists outside the 180-day

window. Accordingly, the Court concludes that the 180-Day Timeline Provision and the Judicial

Review Provision refer to the same action, and, thus, that FEMA must[15] issue judicially reviewable

---

[15]The Hermit's Peak Act states: "Not later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim." 180-Day Timeline Provision. Although "[t]he traditional, commonly repeated rule is that shall is mandatory and may is permissive . . . drafters have been notoriously sloppy with their shalls, resulting in a morass of confusing decisions on the meanings of this modal verb." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts at 112 (2012)("Scalia & Garner")(emphasis in original). See United States v. Myers, 106 F.3d 936, 941 (10th Cir. 1997)("It is a basic canon of statutory construction that use of the word 'shall' indicates a mandatory intent.")(internal quotation has no citation). Scalia and Garner identify several "pronouncements on its meaning [that] have been widely diverse," one of which is most relevant here: "If a duty is imposed on the government, 'the word "shall," when used in statutes, is to be construed as "may," unless a contrary intention is manifest.'" Scalia & Garner, supra, at 113-14 (quoting Railroad Co. v. Hecht, 95 U.S. 168, 170 (1877)(Waite, C.J.)(internal quotations have no citation)). After listing the diverse pronouncements, however, Garner and Scalia conclude: "All this having been said, when the word shall can reasonably be read as mandatory, it ought to be so read." Scalia & Garner, at 114.

Congress' intent to require FEMA to follow the 180-Day Timeline Provision is "manifest," Railroad Co. v. Hecht, 95 U.S. at 170, and the 180-Day Provision "can reasonably be read as mandatory," Scalia & Garner, supra, at 114. Regarding Congress' intent, Congress includes express findings and purposes in the Hermit's Peak Act. See Hermit's Peak Act § 102(b). One of these purposes is "to provide for the expeditious consideration and settlement of claims." Hermit's Peak Act § 102(b)(2). Congress' intent to require FEMA to follow the 180-Day Timeline Provision is "manifest." Railroad Co. v. Hecht, 95 U.S. at 170. Regarding whether the 180-Day Provision's use of the word "shall" can "reasonably be read as mandatory," Scalia & Garner, supra,

"final decision[s]," Judicial Review Provision, within 180 days after a claim is filed. Judicial Review Provision.

The Hermit's Peak Act's structure affirms the Court's reading. Although Congress authorizes FEMA to "promulgate and publish in the Federal Register interim final regulations for the processing and payment of claims under this Act," the Hermit's Peak Act does not expressly discuss or provide for two claims-processing tracks: a non-judicially reviewable track that happens within 180 days and a judicially reviewable track that happens after 180 days, with no deadline.[16]

---

at 114, the Supreme Court and the Tenth Circuit have determined that, when a statute uses the word "shall" in connection with a deadline, that provision is mandatory, and not permissive, see Barnhart v. Peabody Coal Co., 537 U.S. 149, 161 (2003)(characterizing a statute's "provisions that [] trustees . . . 'shall' be designated no later than 60 days from the enactment date" of the statute and "that the designated trustees 'shall, not later than 60 days after the enactment date,' give the [Social Security] Commission certain information about benefits" as "mandatory provisions")(quoting 26 U.S.C. §§ 9702(a)(1), 9704(h)); Brock v. Pierce Cnty., 476 U.S. 253, 260 (1986)(characterizing a statute providing that the Labor Secretary "'shall' issue a final determination . . . within 120 days after receiving a complaint" as a "procedural requirement")(quoting 29 U.S.C. § 816(b)); Jewell v. United States, 749 F.3d 1295, 1298 (10th Cir. 2014)(concluding that a "statute provid[ing] that [the IRS'] notice of summons 'shall' be given within 23 days before the date of the [records] examination" is "a mandatory obligation")(quoting 26 U.S.C. § 7609(a)(1)). Accordingly, the Court concludes that the 180-Day Timeline Provision is mandatory, and not permissive.

    [16]The Court disagrees with FEMA's assertion that Congress authorizes the agency "to define by regulation what constitutes a 'final decision' subject to judicial review." Arrellin MTD Reply at 9 (internal quotations have no citation). See Arrellin MTD at 10-12; Gurule MTD at 9-11. FEMA argues that, because the Hermit's Peak Act does not define "final decision," Congress authorizes FEMA to "'give meaning to that term through regulations.'" Gurule MTD at 9 (quoting Sims v. Apfel, 530 U.S. 103, 106 (2000)). FEMA's argument is not persuasive, because every case the agency cites addresses the Social Security Act's rulemaking authorization, which is broader than the Hermit's Peak Act's rulemaking authorization. See Gurule MTD at 9-11; Arrellin MTD at 11-12; Arrellin Reply at 9. The Social Security's rulemaking authorization comes from 42 U.S.C. § 405(a), which states:

        The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate

Hermit's Peak Act § 104(f)(1).  When the Court asks FEMA if there is any part of the Hermit's Peak Act that indicates that the 180-Day Timeline Provision does not apply to the Judicial Review Provision, FEMA offers a "practical" argument about how its own regulations make it difficult to render administrative appeal decisions within 180 days.  See February 6, 2025, Tr. at 27:16-28:6 (Sydow)(arguing that, because FEMA's regulations -- 44 C.F.R. § 296.30(b) -- give claimants 150 days to support their claim after the initial filing, FEMA cannot evaluate the initial claim and conduct a full appeal process in thirty days).  The Court recognizes that it may be difficult for an agency to evaluate a claim and conduct a full appeal process in thirty days.  FEMA has put itself, however, in this position by misreading the Hermit's Peak Act -- to conclude incorrectly that the 180-Day Timeline Provision does not apply to the Judicial Review Provision -- and developing a claims-processing scheme that may leave only thirty days for an appeals process.  Nothing in the Hermit's Peak Act requires FEMA to give claimants 150 days to support their initial claims.

---

and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

42 U.S.C. § 405(a).  In contrast, the Hermit's Peak Act authorizes FEMA to promulgate "regulations for the processing and payment of claims."  Hermit's Peak Act § 104(f)(1).  The Social Security Act's authorization of regulations "which are necessary or appropriate to carry out," 42 U.S.C. § 405(a), the Social Security Act is broader than the Hermit's Peak Act authorization of regulations "for the processing and payment of claims," Hermit's Peak Act § 104(f)(1).  If Congress wants FEMA to decide when claims are judicially reviewable, without any reference to the Hermit's Peak Act's 180-Day Timeline Provision, Congress can include a broader rule-making authorization, like the Social Security Act's authorization.  Instead, Congress limits FEMA's rule-making authority to "the processing and payment of claims." Hermit's Peak Act § 104(f)(1).  Defining the Judicial Review Provision's "final decision" outside of the 180-day timeline is not a part of the "processing" or "payment" of claims, because the 180-Day Timeline Provision requires FEMA to complete its processing and payment scheme -- at least enough to produce a judicially reviewable claim determination -- within 180 days.  Hermit's Peak Act § 104(f)(1).  Accordingly, the Court concludes that Congress does not authorize FEMA to promulgate a regulation that determines when a claim is judicially reviewable, outside the Hermit's Peak Act's 180-Day Timeline Provision.

Nothing in the Hermit's Peak Act requires FEMA to develop an appeal process. What the Hermit's Peak Act requires is straightforward: "Not later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim." 180-Day Timeline Provision. There is no provision in the Hermit's Peak Act that makes it difficult for FEMA to accomplish this task or suggests that the 180-Day Timeline Provision does not apply to the Judicial Review Provision. Accordingly, the Court concludes that the Hermit's Peak Act's structure affirms the Court's plain reading of the text.

The Hermit's Peak Act's history and purpose also affirm the Court's reading. Although the Court agrees with FEMA that the Hermit's Peak Act's "prefatory language does not create any enforceable rights," Arrellin MTD Reply at 9, prefatory language "can shed light on the meaning of the operative provisions that follow," Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts at 218 (2012)("Scalia & Garner"). See Husted v. A. Philip Randolph Inst., 584 U.S. 756, 809 (2018)(Breyer, J., dissenting)(concluding that a statute's "express findings and purpose are highly relevant to the interpretive analysis")(citing Scalia & Garner at 218); Los Lobos Renewable Power, LLC v. Americulture, Inc, 885 F.3d 659, 662 (10th Cir. 2018)(Tymkovich, C.J.)(evaluating a statute's "[f]indings and purpose" section, "[b]ecause placing [the statute] in proper context is imperative to its construction")(first brackets in Los Lobos Renewable Power, LLC v. Americulture, Inc, this Court adds second and third brackets). The Hermit's Peak Act's "Findings and Purposes" section provides:

    (b)      PURPOSES. -- The purposes of this Act are --

          (1)     to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire; and

          (2)     to provide for the expeditious consideration and settlement of claims for those injuries.

Hermit's Peak Act § 102(b).  FEMA's reading of the statute -- i.e., that FEMA does not need to provide judicially reviewable claim determinations within 180 days -- cuts against the Hermit's Peak Act's second listed purpose.  If FEMA needs only to provide a non-judicially reviewable claim determination within 180 days, then that initial issuance is not a "settlement," because, according to FEMA, there is more for the agency to do before the claimant can seek judicial review.  In FEMA's reading, the only action that is final and judicially reviewable is the administrative appeal decision, which has no deadline.  This interpretation is incompatible with the Hermit's Peak Act's second listed purpose -- -"expeditious consideration and settlement of claims," Hermit's Peak Act § 102(b), because, according to FEMA, there is no timeline for the only action -- FEMA's administrative appeal decision -- that settles a claim.  Accordingly, the Court concludes that the Hermit's Peak Act's history and purpose affirm the Court's reading that FEMA must provide a judicially reviewable claim determination within 180 days.

## II.    FEMA'S REGULATIONS THEORETICALLY ARE CONSISTENT WITH THE HERMIT'S PEAK ACT'S 180-DAY TIMELINE PROVISION.

The Court concludes that, although FEMA's regulations allow FEMA to withhold an administrative appeal decision beyond the 180-day timeline, FEMA can, in theory, follow those regulations and provide an administrative appeal decision in 180 days.  The APA Plaintiffs allege that FEMA's regulations are unlawful, because the agency "fails to provide guidelines with timeframes to comply with its mandate to 'receive, process, and pay claims in accordance with this Act.'"    Arrellin MTD Response at 9 (quoting Hermit's Peak Act  §§ 104(a)(2)(B)).  Specifically, the Plaintiffs argue that FEMA's regulations that allow the agency to withhold administrative appeal decisions indefinitely violate the Hermit's Peak Act's 180-Day Timeline Provision.  See Arrellin MTD Response at 7-10.  The Hermit's Peak Act says that FEMA must

issue a final decision within 180 days.  See supra, at 87-95.  FEMA's regulations define a "final decision" as the administrative appeal decision.  See 44 C.F.R. § 296.41(h) ("Final Decision Definition").  Thus, if FEMA's regulations conflict with FEMA's obligation to provide an administrative appeal decision within 180 days, then those regulations may violate the APA.  See New York v. United States Dep't of Homeland Sec., 969 F.3d 42, 74 (2d Cir. 2020)(concluding, in a preliminary injunction context, that an agency's regulation that is "inconsistent with the meaning" of the enabling statute is likely to violate the APA); Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin., 711 F.3d 662, 668 (6th Cir. 2013)("[U]nder the APA, a final rule that conflicts with the language of the statute relied upon by the agency is considered 'not in accordance with the law.'")(quoting City of Cleveland v. Ohio, 508 F.3d 827, 838 (6th Cir. 2007) and citing 5 U.S.C. § 706(2)(A))).

To evaluate whether FEMA's regulations are consistent with providing administrative appeal decisions within 180 days, it is helpful to outline the claims-processing timeline, according to those regulations.  "The first step in the process is to file a Notice of Loss," at which point FEMA "will provide the claimant with a written acknowledgement that the claim has been filed and a claim number."  44 C.F.R. §§ 296.5(b).  After submitting a Notice of Loss, the claimant meets with a FEMA official -- the "Claims Reviewer" -- to review the claim and "formulate a strategy for obtaining any necessary documentation" to support the claim.  44 C.F.R. §§ 296.5(c).  "After the claimant has had an opportunity to discuss the claim with the Claims Reviewer, a Proof of Loss will be presented to the claimant for signature."  44 C.F.R. §§ 296.5(c).  FEMA can evaluate the claim, and provide an initial claim determination, only after the Claims Reviewer submits the Proof of Loss.  See 44 C.F.R. §§ 296.5(c) ("After any necessary documentation has been obtained and the claim has been fully evaluated, the Claims Reviewer will submit a report to the Authorized

Official."); 44 C.F.R. §§ 296.32(a) ("After the Claims Office has evaluated all elements of a claim as stated in the Proof of Loss, the Authorized Official will issue, and provide the claimant with a copy of, the Authorized Official's determination.").  Claimants may file their Proof of Loss up to 150 days -- or later, if the claimant shows good cause -- after filing their Notice of Loss.  See 44 C.F.R. §§ 296.30(b) ("150-Day Proof of Loss Deadline")("[C]laimants should submit a signed Proof of Loss to the Claims Office not later than 150 days after the date when the Notice of Loss was submitted.  This deadline may be extended at the discretion of the Director of the Claims Office for good cause.").  After a claimant receives an initial claim determination, the claimant has 120 days to file a notice of appeal.  See 44 C.F.R. § 296.41(a) ("120-Day Notice of Appeal Deadline").  Once a notice of appeal is filed, a claimant has sixty days to provide "additional documentary evidence supporting the appeal."  44 C.F.R. § 296.41(c) ("60-Day Appeal Supplemental Evidence Deadline").  FEMA's regulations do not provide a deadline by which the agency must render an administrative appeal decision.  See 44 C.F.R. § 296.41.  Evaluating the four key regulations here -- the Final Decision Definition, the 150-Day Proof of Loss Deadline, the 120-Day Notice of Appeal Deadline, and the 60-Day Appeal Supplemental Evidence Deadline -- the Court concludes that, although the regulations do not make sense with the Hermit's Peak Act 180-Day Timeline Provision, those regulations can, in theory, be followed and produce an administrative appeal decision in 180 days.  The Court addresses each regulation in turn.

The APA Plaintiffs' main gripe with the Final Decision Definition is that it does not include a deadline by which FEMA must issue an administrative appeal decision.  See Arrellin MTD Response at 8.  This omission, alone, does not preclude FEMA from complying with the 180-Day Timeline Provision.  FEMA is allowed to define a final decision as an administrative appeal decision, as long as that definition does not remove the appeal process from Congress' mandated

deadlines. Had FEMA interpreted the Hermit's Peak Act correctly to understand that the agency has 180 days to render final decisions, the Final Decision Definition could have looked exactly the same; the only difference would be that FEMA would complete that appeals process within 180 days, as the Hermit's Peak Act mandates. Similarly, the 150-Day Proof of Loss Deadline, alone, does not prevent FEMA from complying with the 180-Day Timeline Provision. Giving a claimant 150 days to submit a Proof of Loss still gives FEMA 30 days to provide an initial claim determination and, if necessary, an administrative appeal decision. The Court notes, however, that FEMA argues that the agency cannot, as a "practical matter," complete the claim evaluation and appeals process in thirty days. February 6, 2025, Tr. at 28:7-24 (Sydow). Technically, the agency can give claimants the full 150 days and render administrative appeals decisions in 180 days, as long as those claimants file Notices of Appeal quickly enough and do not supplement the appeal record. Thus, the 150-Day Proof of Loss Deadline is not, on its face, contrary to the Hermit's Peak Act.

The same logic applies to the 120-Day Notice of Appeal Deadline: if the claimant receives an initial claim determination within the first sixty days of the 180-day clock, then FEMA technically can render an administrative appeal deadline within 180 days, even if the claimant waits the full 120 days to file a Notice of Appeal, as long as the claimant does not supplement the appeal record. The same logic applies to the 60-Day Appeal Supplemental Evidence Deadline: if the claimant receives an initial claim determination early enough and files a Notice of Appeal quickly enough, then FEMA can render an administrative appeal decision within 180 days, even if the claimant takes the full sixty days to supplement the appeal record. The Court notes that there are many scenarios -- likely common, based on FEMA's arguments about how difficult it would be to comply with a 180-day deadline --  where these regulations run into each other in a way that allows

FEMA not to provide an administrative appeal decision within 180 days.  For example, a claimant

may take one hundred days to submit a Proof of Loss, get an initial claim determination sixty days

later, and then file an appeal thirty days after that.  At this point, although neither the claimant nor

FEMA has violated any regulations, the claimant files a notice of appeal on day 190, which makes

it impossible for FEMA to provide an administrative appeal decision within 180 days.

At the same time, there are, in theory, many scenarios where these regulations can all work

together.  For example, a claimant files his Proof of Loss on day ten, gets an initial claim

determination on day thirty, files an appeal on day fifty, supplements the appeal record for sixty

days, and then FEMA provides an administrative appeal decision sixty days after the claimant

finishes supplementing.  At this point, neither the claimant nor FEMA has violated any regulations,

and FEMA provides an administrative appeal decision on day 170.  Because these regulations can,

in theory, work together without violating the Hermit's Peak Act, the Court cannot conclude, on

the current record, that these four regulations, on their face, violate the Hermit's Peak Act.  The

Court also notes, however, that FEMA's arguments about the practical difficulty of harmonizing

the agency's regulations with the 180-Day Timeline Provision raise serious concerns about those

regulations' lawfulness.  Moreover, the Court suspects strongly that FEMA designed these

regulations without considering the Hermit's Peak Act's 180-Day Timeline Provision or the

Hermit's Peak Act's express purpose of "provid[ing] for the expeditious consideration and

settlement of claims," Hermit's Peak Act § 102(b)(2), given that the regulations' successive

timelines -- in the 150-Day Proof of Loss Deadline, the 120-Day Notice of Appeal Deadline, and

the 60-Day Appeal Supplemental Evidence Deadline -- easily can extend beyond 180 days.[17]

---

[17]The Court's concerns outlined above most obviously fall within APA Section 706(2)(A),
which allows a reviewing court to set aside agency action that is "arbitrary and capricious, an abuse

**III.    THE COURT DENIES FEMA'S MOTION TO DISMISS THE JUDICIAL REVIEW CLAIMS, BECAUSE CONGRESS HAS WAIVED FEMA'S SOVEREIGN IMMUNITY FOR THE JUDICIAL REVIEW CLAIMS.**

The Court denies FEMA's motions to dismiss the Judicial Review Claims, because Congress has waived FEMA's sovereign immunity for the Judicial Review Claims. FEMA argues that the Court does not have subject-matter jurisdiction over the Judicial Review Claims, because the Hermit's Peak Act limits FEMA's sovereign immunity waiver to claimants who have exhausted administrative remedies. See Gurule MTD at 2-3. FEMA has three main arguments. First, FEMA alleges that the Plaintiffs have not received "final decisions," as FEMA regulations define that term and which the Judicial Review Provision's limited sovereign immunity waiver requires. Gurule MTD at 2. Thus, FEMA insists that, with no "final decision," as FEMA's regulations define that term, Congress has not waived FEMA's sovereign immunity against the Judicial Review Claims, because the Plaintiffs have not exhausted their administrative remedies.

---

of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Promulgating a regulation that is contrary to the regulation's enabling statute is "not in accordance with law." 5 U.S.C. § 706(2)(A). See Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin., 711 F.3d at 668. Promulgating a regulation without considering Congress' express purposes may be arbitrary and capricious. See Nat'l Lifeline Ass'n v. Fed. Commc'ns Comm'n, 921 F.3d 1102, 1111 (D.C. Cir. 2019)(concluding that regulations that alter Tribal subsidies for voice and broadband services are arbitrary and capricious, where the regulations fail to "consider the impact of the change on" those subsidies' "'primary purpose,' or otherwise explain how [the change] is compatible with that purpose"). Additionally, if FEMA's regulations cannot be squared with the Hermit's Peak Act's 180-Day Timeline Provision, those regulations may violate APA Section 806(2)(C), because FEMA is not authorized to promulgate regulations that determines when a claim is judicially reviewable, outside the Hermit's Peak Act's 180-Day Timeline Provision. See supra, at 91-92, n.16; Mexican Gulf Fishing Co. v. United States Dep't of Com., 60 F.4th 956, 964-66 (5th Cir. 2023)(holding that a regulation requiring charter fishing boats to install GPS-tracking equipment exceeds a statute's authorization to promulgate regulations that are "required to facilitate enforcement of the" statute and that are "necessary and appropriate for the conservation and management of the fisheries," where knowing "a particular charter boat's exact location . . . does not further the enforcement of any provision" of the statute, and the "uncontroverted record shows that the regulation gives no meaningful benefit" to promoting fish conservation and management).

Gurule MTD at 2.  The Court disagrees with this argument.  The Judicial Review Provision waives sovereign immunity for claimants who receive "a final decision of the Administrator" and come to court within sixty days of that final decision.  Judicial Review Provision.  "[L]ike many similarly worded sovereign immunity waivers found in comparable federal schemes providing for judicial review of agency final decisions," the Judicial Review Provision "requires claimants to exhaust their remedies."  Vigil, 2024 WL 2404487, at *27.  The 180-day deadline informs, however, the sovereign immunity waiver in the Hermit's Peak Act.  If FEMA must provide a judicially reviewable claim determination -- i.e., a "final decision," Judicial Review Provision -- within 180 days, then Congress has waived FEMA's sovereign immunity for claimants seeking judicial review within sixty days after the 180-day deadline, including those without administrative appeal decision, as long as those claimants follow FEMA's regulations that are consistent with the 180-day deadline.  Thus, the Court concludes that claimants without administrative appeals have exhausted their administrative remedies, as long as those Plaintiffs: (i) seek judicial review within sixty days after day 180; and (ii) follow FEMA's regulations that are consistent with the 180-day deadline.  Second, FEMA acknowledges that, if FEMA has waived the exhaustion requirement in the limited sovereign immunity waiver of the Hermit's Peak Act, then the Plaintiffs can seek judicial review, even if they have not received "final decisions," as FEMA's regulations define that term.  Gurule MTD at 15-16; Gurule Reply at 3-4.  FEMA argues, however, that FEMA has not waived the exhaustion requirement in the limited sovereign immunity waiver of the Hermit's Peak Act.  See Gurule MTD at 15-16; Gurule Reply at 4-5.  The Court disagrees with this argument, because FEMA has waived the exhaustion requirement in the limited sovereign immunity waiver of the Hermit's Peak Act, given that the agency has determined that the relief that the Plaintiffs seek -- noneconomic damages -- is beyond its power to confer.  Third, FEMA

acknowledges that, in <u>Vigil</u>, the Court recognizes that waiver of sovereign immunity can exist if three conditions are met: (i) the Plaintiffs assert colorable Constitutional claims that are collateral to their underlying compensation claims; (ii) requiring administrative exhaustion will cause the Plaintiffs irreparable harm; and (iii) administrative exhaustion is futile. <u>See</u> <u>Gurule</u> MTD at 16. FEMA argues that the Plaintiffs do not satisfy any of these three prongs. <u>See</u> <u>Gurule</u> MTD at 16-22; <u>Gurule</u> Reply at 6-11. On this argument, the Court agrees in part with FEMA, because, although exhaustion is futile and the Plaintiffs have shown that requiring exhaustion will cause them irreparable harm, the Plaintiffs' Constitutional claims are not collateral. The Court develops its reasoning on each argument in turn. Finally, the Plaintiffs have exhausted any administrative remedies for filing this claim in federal court. Accordingly, the Plaintiffs' claims are properly in federal court.

> **A. THE PLAINTIFFS SATISFY THE EXHAUSTION REQUIREMENT IN THE SOVEREIGN IMMUNITY WAIVER OF THE HERMIT'S PEAK ACT, BECAUSE THE PLAINTIFFS HAVE EXHAUSTED ADMINISTRATIVE REMEDIES.**

The Court first concludes that the Plaintiffs satisfy the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act, because the Plaintiffs have exhausted administrative remedies. The Hermit's Peak Act requires FEMA to provide judicially reviewable claim determinations within 180 days. Whatever claim determination has been made at day 180, therefore, is a judicially reviewable final decision, and the claimant has exhausted administrative remedies, as the limited sovereign immunity waiver of the Hermit's Peak Act's requires. After 180 days, FEMA cannot require a claimant to wait for an administrative appeal decision before seeking judicial review. These conclusions do not excuse the Plaintiffs, however, from their end of the bargain. For example, the Judicial Review Provision's sovereign immunity waiver gives

claimants sixty days after receiving a final decision to seek judicial review.  See Judicial Review

Provision.  If any of the Plaintiffs wait longer than sixty days after receiving a final decision  --

either in the form of an administrative appeal decision provided within 180 days or in the form of

whatever pre-appeal claim determination they had at the 180-day mark -- to seek judicial review,

then those Plaintiffs miss the Congressionally mandated deadline, and Congress has not waived

FEMA's sovereign immunity.  That being said, no party has alleged that any Plaintiffs missed the

sixty-day deadline, and the Plaintiffs' claims are properly in federal court.

The Court also concludes that the Plaintiffs must follow FEMA's appeals process

regulations as long as FEMA can complete the appeals process within 180 days.  The key

regulation here is 44 C.F.R. § 296.32(b), which provides that, if a claimant wants to file an

administrative appeal, she must do so within 120 days of receiving an initial claim determination.

If FEMA provides a claimant with an initial claim determination quickly enough, such that FEMA

can give that claimant the full 120 days to file an appeal and provide an administrative appeal

decision within 180 days from the initial filing, then that claimant must follow

44 C.F.R. § 296.32(b)'s internal appeal deadline.  The only way that FEMA can give claimants

120 days to file appeals and complete the appeals process, all within 180 days, however, is if

FEMA provides initial claim determinations within fifty-nine days, inclusive, of the initial filing.

120 days after day fifty-nine is day 179, which gives FEMA one day to complete the appeal process

before the initial claim determination becomes a final claim determination, which is theoretically

possible.  In this scenario, and in any scenario where FEMA gives an initial claim determination

in less than fifty-nine days, claimants must follow 44 C.F.R. § 296.32(b)'s internal appeal

deadline.  If FEMA provides an initial claim determination after fifty-nine days, then the 120-day

internal appeal window extends beyond the Hermit's Peak Act's 180-day deadline.  At day 180,

the initial claim determination becomes judicially reviewable, because the Hermit's Peak Act mandates that FEMA provide judicially reviewable claim determinations within 180 days. Requiring claimants seeking judicial review to file an internal appeal after day 180 makes no sense, because, after day 180, FEMA has issued a judicially reviewable claim determination.

From this reasoning, the Court distills three rules for determining whether a claimant has exhausted administrative remedies for the purposes of seeking judicial review of FEMA's Hermit's Peak Act claim issuance.  First, claimants must have a judicially reviewable claim determination.  That claim determination can take two forms: (i) an administrative appeal decision provided before day 180; or (ii) whatever is on the table at day 180, even if there is an internal appeal pending that could theoretically be resolved before day 240, i.e., day 180, plus the Judicial Review Provision's sixty-day deadline.  Second, the claimant must come to court within sixty days of receiving a judicially reviewable claim determination.  See Judicial Review Provision.  Third, the claimant must follow FEMA's internal appeal regulations until the 180 days passes; after 180 days; the forum moves to the Court, if the claimant desires a new forum.[18]

_____

[18]A few more hypotheticals applying these rules may be helpful.  In one scenario, Claimant A receives an initial claim determination twenty days after filing a claim.  If Claimant A wants to preserve her rights to seek judicial review, Claimant A must follow FEMA's 120-day deadline to file an administrative appeal.  Otherwise, FEMA does not get a chance to review Claimant A's initial claim determination through its appeal process, which, in theory, could be complete within 180 days.  Claimant A could file an administrative appeal ten days after receiving the initial claim determination, which would give FEMA 150 days to complete the appeals process before Claimant A's claim determination becomes judicially reviewable at day 180.  In this scenario, Claimant A would have to seek judicial review within sixty days of whenever she gets a judicially reviewable claim determination -- either at day 180, or, if FEMA rules on her administrative appeal before day 180, whenever FEMA gives her the administrative appeal decision.

In a second scenario, Claimant B receives an initial claim determination on day twenty.  Claimant B files an administrative appeal on day thirty.  FEMA provides Claimant B with an administrative appeal decision on day 100.  Claimant B must seek judicial review before day 160, because, in this scenario, Claimant B has received a judicially reviewable claim determination at day 100, and the Judicial Review Provision gives claimants only sixty days to seek judicial review

Requiring claimants to follow the internal appeal process only if FEMA can follow that process within the statutory 180-day deadline aligns with how other statutory and regulatory frameworks handle exhaustion issues that arise when agencies miss required deadlines.  In the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"), context, regulations provide that "a claimant shall be deemed to have exhausted the administrative remedies available under the plan" if the plan does not "follow claims procedures consistent with the requirements" of the regulatory framework.  29 C.F.R. § 2560.503-1(l).  The Tenth Circuit and other Courts of Appeals have applied 29 C.F.R. § 2560.503-1(l) to conclude that claimants have exhausted administrative remedies when plan administrators miss deadlines that ERISA regulations impose.  See LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 797-800 (10th Cir. 2010)("LaAsmar")(concluding that the plaintiffs exhaust administrative remedies, because the

---

after receiving a judicially reviewable claim determination.  In a third scenario, Claimant C receives an initial claim determination 150 days after filing a claim.  If Claimant C wants to preserve his rights to seek judicial review, Claimant C does not need to follow FEMA's 120-day deadline to file an administrative appeal.  Claimant C's initial claim determination becomes a final claim determination at day 180.  At that point, Claimant C only needs to seek judicial review by day 240, i.e., sixty days after the date when the claim determination becomes final.  On day 240, it has only been ninety days since Claimant C received an initial claim determination.  Thus, at the time that Claimant C seeks judicial review, Claimant C: (i) has a judicially reviewable claim determination; and (ii) has not missed FEMA's 120-day deadline to file an administrative appeal.  Accordingly, Claimant C has exhausted administrative remedies and may seek judicial review.

In a fourth scenario, Claimant D receives an initial claim determination on day 100.  Claimant D does not file an administrative appeal.  Claimant D's initial claim determination becomes judicially reviewable at day 180.  Day 240 is the last day Claimant D can seek judicial review.  Day 220 is the end of the internal appeal deadline.  On day 230, i.e., fifty days after the claim becomes judicially reviewable and 130 days after FEMA provided an initial claim determination, Claimant D seeks judicial review.  Claimant D has exhausted his remedies: he did not miss the sixty-day deadline, and, although he did not give FEMA 120 days to review his internal appeal, FEMA did not respect the statutory deadline and complete the appeals process within 180 days.

plan administrator does not render a decision on the plaintiffs' "administrative appeal until . . . 170 days after they had sought review, or more than three times as long as permitted under the terms of the Plan and the ERISA regulations"); Barboza v. California Ass'n of Pro. Firefighters, 651 F.3d 1073, 1077 (9th Cir. 2011)(concluding that the plaintiff exhausts administrative remedies, because the plan administrator does not provide a decision on his claim within forty-five days, as 29 C.F.R. § 2560.503-1(i)(3)(i) mandates); Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 106 (2d Cir. 2005)(concluding that the plaintiff exhausts administrative remedies, because the plan administrator does not provide a decision on his claim within sixty days or provide notice of an extension of the review timeline, as 29 C.F.R. §§ 2560.503-1(h) mandates).  The Tenth Circuit comments further that 29 C.F.R. § 2560.503-1(l) -- i.e., the ERISA regulation providing that claimants exhaust administrative remedies when the plan violates other ERISA regulations, like required deadlines -- "protects a claimant by insuring that the administrative appeals process does not go on indefinitely."  LaAsmar, 605 F.3d at 798.

Similarly, in the Freedom of Information Act, 5 U.S.C. §§ 551-59 ("FOIA"), context, 5 U.S.C. § 552(a)(6)(C) provides that "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions."  5 U.S.C. § 552(a)(6)(C).  This exhaustion is known as "constructive exhaustion."  Hull v. I.R.S., U.S. Dep't of Treasury, 656 F.3d 1174, 1181 n.4 (10th Cir. 2011)("Constructive exhaustion occurs when certain statutory requirements are not met by the agency."); Khine v. United States Dep't of Homeland Sec., 943 F.3d 959, 966 (D.C. Cir. 2019)("[U]nder the framework of constructive exhaustion . . . FOIA provides that a requester may be treated as if she exhausted the administrative appeals process where the agency did not provide a timely determination.").  On the criminal side, in the

compassionate release context, a defendant satisfies the exhaustion requirement if: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf"; or (ii) thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  See United States v. Hemmelgarn, 15 F.4th 1027, 1030 (10th Cir. 2021).

The Court recognizes that FEMA has not promulgated an analogous regulation establishing that a claimant exhausts remedies if FEMA violates the Hermit's Peak Act or its own regulations, or, for that matter, taken any action to ensure "that the administrative appeals process does not go on indefinitely."  LaAsmar, 605 F.3d at 798.  FEMA's decision to allow the administrative appeal process to go on indefinitely makes sense in FEMA's world and mind, however, because FEMA does not think that there are any deadlines by which the agency must render judicially reviewable decisions.  Had FEMA interpreted the Hermit's Peak Act correctly to understand that the agency must provide final claim determinations within 180 days, perhaps the agency would have promulgated regulations -- like ERISA's 29 C.F.R. § 2560.503-1(l) -- establishing that claimants exhaust administrative remedies if FEMA does not comply with the 180-day deadline.  Regardless, these other bodies of law -- ERISA, FOIA, and compassionate release -- inform the Court's conclusion that FEMA cannot avoid judicial review by withholding an administrative appeal decision indefinitely.  Accordingly, the Court concludes that the Plaintiffs without administrative appeal decisions have exhausted their administrative remedies once the 180-day clock runs, as long as those Plaintiffs follow FEMA's regulations that are consistent with the 180-day timeline.[19]

---

[19]The deadline for filing Hermit's Peak Act claims with FEMA was March, 14, 2025.  See American Relief Act, 2025, H.R. 10545 § 101(1) (2025); Further Continuing Appropriations Act, 2025, H.R. 10545, Title VI.  The Court's holding -- i.e., that claimants without administrative appeal decisions have exhausted their administrative remedies once the 180-day clock runs, as

Having exhausted administrative remedies, the Plaintiffs satisfy the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act.[20]

———————————

long as those Plaintiffs follow FEMA's regulations that are consistent with the 180-day timeline -- provides guidance for those claimants who filed claims with FEMA close to the March 14, 2025, deadline and who are, thus, still within their 180-day window. In theory, however, a claimant could have followed FEMA's regulations, filed an internal appeal, waited for an administrative appeal decision before coming to federal court, but did not get an administrative appeal decision within sixty days of the end of their 180-day window and that claimant has not sued FEMA in federal court under the Judicial Review Provision. Thus, according to the Court's holding, that claimant has missed their chance to come to federal court to challenge FEMA's compensation determination, because that claimant waited longer than sixty days after getting a final, judicially reviewable claim determination before coming to federal court. This hypothetical is unlikely, however, because the Plaintiffs' counsel, who represents the vast majority of fire victims seeking to file suit in federal court, has said that they have been careful to file claims in federal court, under the Judicial Review Provision, within sixty days of each client's day 180. See February 6, 2025, Tr. at 40:23-41:13 (Lothyan)(stating that the Hermit's Peak Act "has the sixty-day jurisdictional deadline to seek judicial review[,] [s]o the plaintiffs don't want to [waive] their right to seek judicial review"). The number of cases and number of Plaintiffs that the Court addresses in this Memorandum Opinion and Order alone shows that the Plaintiffs have been careful not to miss any potential deadline. The Plaintiffs in these eleven cases and other FEMA cases before the Court also represent that some counsel represents almost all claimants, so the chances of a Plaintiff missing the deadline is low, if non-existent.

[20]In Vigil, the Court notes that FEMA's regulations provide that, to exhaust administrative remedies and obtain a final decision, claimants must: (i) file a Notice of Loss and sign a Proof of Loss; (ii) obtain a compensation determination from an Authorized Official; (iii) file an Administrative Appeal; and (iv) obtain a final decision on appeal. See Vigil, 2024 WL 2404487, at *28 (citing 44 C.F.R. §§ 296.5(b)-(d), 296.41(a), (h)). As the analysis above notes, only claimants who receive initial claim determinations within sixty days must file administrative appeals before coming to court. In the same Memorandum Opinion and Order, the Court evaluates whether the Vigil Plaintiffs have exhausted administrative remedies, and, if not, whether the exhaustion requirement has been waived. See Vigil, 2024 WL 2404487, at *30-32. The Court states:

> As an initial matter, the Plaintiffs do not allege that they have exhausted their administrative remedies under the HPCCAA by obtaining a final decision from FEMA or otherwise following the procedures outlined in in HPCCAA § 104(i) and 44 C.F.R. 296 beyond filing their initial notices of loss. See FOF ¶ 72, at 15. This fact, however, is not fatal. As with [the Social Security Act] § 405(g), the Court concludes that § 104(i)'s administrative exhaustion requirement is waivable.

B.    **FEMA HAS WAIVED THE EXHAUSTION REQUIREMENT IN THE SOVEREIGN IMMUNITY WAIVER OF THE HERMIT'S PEAK ACT.**

The Court concludes that, even if the Plaintiffs have not exhausted administrative remedies, FEMA has waived the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act, because: (i) FEMA asserts that the noneconomic relief which the Plaintiffs seek is beyond FEMA's power to confer; and (ii) FEMA's internal needs related to the evaluation of economic damages are fulfilled.   In Vigil, the Court concludes that FEMA can waive the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act in two ways. "First, FEMA can waive the exhaustion requirement if it 'is satisfied that no further review is warranted either because the internal needs of the agency are fulfilled or because the relief sought is beyond his power to confer.'"  Vigil, 2024 WL 2404487, at *30 (quoting Bartlett v. Schweiker, 719 F.2d at 1061).   "'Second, a reviewing court may find a waiver . . . .'"  Vigil, 2024 WL 2404487, at *30 (quoting Bartlett v. Schweiker, 719 F.2d at 1061).  In this sub-section, the Court evaluates the first method: FEMA waiving the exhaustion requirement.  An agency which denies a claim on grounds that a statute or regulation precludes the sought compensation waives the sovereign immunity waiver's exhaustion requirement, because the agency takes the position that "the relief sought is beyond [its] power to confer."  Bartlett v. Schweiker, 719 F.2d at 1061.  See Mathews v. Diaz, 426 U.S. at 73-74; Harris v. Sebelius, 932 F. Supp. 2d 150, 153 n.2 (D.D.C. 2013)(Lamberth, C.J.), aff'd, No. 13-5133, 2013 WL 6222952 (D.C. Cir. Nov. 14, 2013); Holt v. Bowen, 712 F. Supp. 813, 816-17 (D. Colo. 1989)(Finesilver, C.J.)(concluding that an agency waives exhaustion, where the agency: (i) asserts in its claim denial letter that the denial is "[i]n

Vigil, 2024 WL 2404487, at *30 (this Memorandum Opinion and Order adds brackets).  Again, claimants must not always comply with FEMA's administrative appeal regulations before coming to court.

accordance with the law"; and (ii) "states in [its] brief that [the agency] has 'no authority' to repay the amount in controversy")(quoting the agency's brief)(this Court adds brackets).

This rule makes sense. If the agency contends that it cannot give a claimant what he wants, because the relevant statute or regulations do not permit that relief, then the agency has taken the position that the relief sought is beyond its power to confer. In Mathews v. Diaz, the Social Security Administration denies the plaintiffs enrollment in Medicare, because the 42 U.S.C. § 1395(o) does not let resident aliens enroll in Medicare unless they have been admitted for permanent residence and have resided in the United States for at least five years. See Mathews v. Diaz, 426 U.S. at 69-70. The plaintiffs seek judicial review of their enrollment denials and allege that 42 U.S.C. § 1395(o) violates due process. See Mathews v. Diaz, 426 U.S. at 73. For one of the plaintiffs -- Espinosa, who does not file a Medicare application until after the lawsuit commences -- there is an "absence of any formal administrative action by the Secretary denying [his] application." Mathews v. Diaz, 426 U.S. at 73. The Supreme Court holds, however, that the Social Security Administration waives Espinosa's exhaustion requirement and, thus, that Espinosa's claims are properly before the district court. See Mathews v. Diaz, 426 U.S. at 77. In concluding that the Social Security Administration waives the exhaustion requirement, the Supreme Court reasons that, even though the Social Security Administration moves to dismiss for failure to exhaust administrative remedies, the agency admits at a hearing that "no facts were in dispute, that the case was ripe for disposition by summary judgment, and that the only issue before the District Court was the constitutionality of the statute," and that the "constitutional question is beyond the [agency's] competence." Mathews v. Diaz, 426 U.S. at 76. See id. at 73 ("[I]n colloquy with the court [the agency] acknowledged that Espinosa had filed an application which could not be allowed under the statute."). Here, FEMA also has not identified any facts related to

- 110 -

the denial of noneconomic damages that are in dispute and the only issue before the Court related

to that denial is whether FEMA lawfully withholds noneconomic damages.[21]  Just like in <u>Mathews</u>

---

[21]Instead, FEMA identifies theoretical factual disputes related to the Plaintiffs' economic damages claims:

> The other thing I would point out is that non-economic damages is far from the only thing that's the subject of administrative appeal . . . .  [T]here is the run of the mill administrative appeal review of just claim awards, and a sufficient claim award given for, you know, the lost trees on a piece of property?  Did you incorrectly calculate my business' lost income during the months of fire?  Those sorts of things also go through the administrative appeal process.

February 6, 2025, Tr. at 49:23-50:18 (Sydow).  Although FEMA has not introduced record evidence about these alleged factual disputes, the Court understands FEMA's point: there is a difference between seeking judicial review of FEMA's economic damages denial and seeking judicial review of FEMA's noneconomic damages denial.  The key differences are: (i) the former denial likely involves factual issues now, whereas the latter denial does not yet present factual issues, because FEMA has categorically denied noneconomic damages; and (ii) the latter denial presents a pure statutory interpretation question now, whereas the former denial does not present a legal issue.  Although the Complaints ask the Court to "[r]eview, modify or set aside FEMA's final determination of their claims," <u>Gurule</u> Complaint, Prayer for Relief ¶ 1, at 17, the core allegation is that FEMA unlawfully denies the Plaintiffs noneconomic damages categorically, see <u>Gurule</u> Complaint ¶ 4 at 3; <u>id.</u> ¶¶ 10-21, at 4-9; <u>id.</u> ¶¶ 31-35 at 12-15.  The noneconomic damages issues undoubtedly present factual issues eventually; how much is pain and suffering worth, but FEMA refuses to engage about the amount of these damages, and FEMA has waived that opportunity.  No Plaintiff alleges specifically that FEMA unlawfully withholds economic damages categorically.  To the extent that the Plaintiffs seek judicial review of FEMA's economic damages denial, the Court concludes that FEMA has waived the exhaustion requirement for the economic damages claims for most claims, if not all claims, too, albeit for different reasons.  FEMA's denial rationale for economic damages claims is materially different from FEMA's denial rational for the noneconomic damages claims.  The Plaintiffs do not allege, and cannot plausibly allege, that FEMA denies economic damages on the grounds that the Hermit's Peak Act precludes economic damages categorically.  FEMA denies noneconomic damages, however, on that exact ground.  In this way, the Court's reasoning outlined in this sub-section -- that FEMA waives the exhaustion requirement for noneconomic damages claims, because FEMA has determined that it does not have the power to provide noneconomic damages -- does not apply directly to the economic damages review.  FEMA has still waived the exhaustion requirement for the economic damages, however, because "the internal needs of the agency are fulfilled." <u>Bartlett v. Schweiker</u>, 719 F.2d at 1061.  Congress requires FEMA to provide judicially reviewable final claim determinations within 180 days.  Therefore, FEMA has no "internal needs" after 180 days, because Congress mandates that FEMA's review be complete by day 180.  <u>Bartlett v. Schweiker</u>, 719 F.2d at 1061.

v. Diaz, FEMA takes the position that it legally cannot provide the relief that the Plaintiffs seek,

because the Hermit's Peak Act forbids it.

FEMA's attempts to distinguish Mathews v. Diaz are not persuasive.  See Gurule MTD

Reply at 4-5.  FEMA asserts: "A definitive denial of Petitioners' claims has not been made here,

but rather, such claims are being held pending judicial developments."  Gurule MTD Reply at 4-

5.  FEMA repeats this argument at the February 6, 2025, hearing:

> FEMA has not denied those administrative appeals saying that we can't give you
> non-economic damages because it's not permitted by the statute.  Instead, FEMA
> said:  We understand that this issue is the subject of pending litigation.  We will
> hold these administrative appeals, and then implement the judicial findings through
> the administrative appeal process on those non-economic damages claims . . . .  I
> would say there was an initial denial of the claim determination.  FEMA has not
> denied these claims on administrative appeal, and has said:  We might give you
> non-economic damages.  We are waiting to see what the federal court does.  And
> so I'd argue there is no denial in the first instance.

February 6, 2025, Tr. at 49:13-52:17 (Sydow).  Despite FEMA's arguments, the Court concludes

that FEMA has denied the Plaintiffs claims on the grounds that, in FEMA's view, the Hermit's

Peak Act does not permit noneconomic damages.  First, the Court does not agree with FEMA's

assertion that "there is no denial in the first instance."  February 6, 2025, Tr. at 52:17 (Sydow).

The Court has concluded that whatever is on the table at day 180 is the final claim determination.

See supra, at 87-95.  Thus, even if the last action is the initial claim determination, where FEMA

denies noneconomic damages, that initial claim determination is a final, judicially reviewable

denial of noneconomic damages.  Second, the Court does not agree with FEMA's assertion that

FEMA's denial rationale is that the noneconomic damages issue is being litigated.  FEMA's

rationale for staying administrative appeals is not the same as FEMA's denial rationale for the

---

With no more internal needs, FEMA waives the exhaustion requirement for all claimants after day
180, for both economic and noneconomic damages.

underlying claims. FEMA has stayed the administrative appeals, pending litigation. See Pending

Cases Summary Letter Response at 7. FEMA denies the noneconomic damages claims, however,

because its regulations incorrectly exclude noneconomic damages. See 44 C.F.R. § 296.21(a).

That FEMA later stays administrative appeals pending litigation does not change the agency's

denial rationale, which is based solely on the agency's incorrect statutory interpretation. As FEMA

admits, "the general law in this area says that, if there are things that, as a statutory matter, the

agency does not have the power to provide, or the agency has found that it does not have power to

provide . . . then you can have waiver." February 6, 2025, Tr. at 52:25-53:5(Sydow).[22] Because

FEMA denies noneconomic damages claims based on its incorrect statutory interpretation of the

Hermit's Peak Act, the Court concludes that, as to noneconomic damages, FEMA has waived the

exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act. For other

reasons, the Court also concludes that, as to economic damages, FEMA has waived the exhaustion

requirement in the sovereign immunity waiver of the Hermit's Peak Act, see supra, at 111 n.21,

---

[22]During the February 6, 2025, hearing, the Court asks FEMA what is left of their argument if the Court concludes that the agency has denied noneconomic damages based on the agency's incorrect statutory interpretation of the Hermit's Peak Act. See February 6, 2025, Tr. at 51:22-52:7 (Court). FEMA "resist[s] the premise" and puts forth the arguments outlined above: (i) there has been no denial; and (ii) the claims are not resolved, because of pending litigation, and not because FEMA has denied the claims based on its damages regulations. See February 6, 2025, Tr. at 49:13-52:17 (Sydow). Then, after admitting that the case law says that an agency can waive exhaustion when it determines that, "as a statutory matter, the agency does not have the power to provide" the sought relief, FEMA offers to provide the Court with more cases on this topic. February 6, 2025, Tr. at 52:25-53:7 (Sydow). FEMA's follow-up letter, however, does not address this topic. See Pending Cases Summary Letter at 1-4. Instead, FEMA's Pending Cases Summary Letter purports to provide "authority regarding when agency actions can waive administrative exhaustion requirements by rendering exhaustion futile." Pending Cases Summary Letter at 2. Whether exhaustion is futile is part of the judicial waiver inquiry, which the Court discusses in more detail below. See infra, at 115-17. An agency rendering exhaustion futile is not the same as an agency waiving exhaustion by denying relief on grounds that a statute purportedly precludes the sought relief.

and that, outside of FEMA's waiving the exhaustion requirement, the Plaintiffs have exhausted administrative remedies for all their damages, and, therefore, satisfy the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act, see supra, at 102-08.

### C.   THERE IS NO GENERAL WAIVER OF THE EXHAUSTION REQUIREMENT IN THE SOVEREIGN IMMUNITY WAIVER OF THE HERMIT'S PEAK ACT.

In Vigil, the Court evaluates the Judicial Review Provision's sovereign immunity waiver, which is limited to claimants who receive "a final decision of the Administrator." Judicial Review Provision. See Vigil, 2024 WL 2404487, at *27-28.  The Court notes that, "like many similarly worded sovereign immunity waivers found in comparable federal schemes providing for judicial review of agency final decisions," the Judicial Review Provision "requires claimants to exhaust their remedies." Vigil, 2024 WL 2404487, at *27.  Analogizing to the Social Security Act's limited sovereign immunity waiver -- which has similar language implying an exhaustion requirement -- the Court concludes that the exhaustion requirement of the Hermit's Peak Act can be waived in two ways: (i) if FEMA waives the exhaustion requirement; or (ii) if the Plaintiffs show "that the Court should find a waiver of [the] exhaustion requirement." Vigil, 2024 WL 2404487, at *30.  In this Memorandum Opinion and Order's preceding section, the Court concludes that FEMA has waived the exhaustion requirement, because: (i) FEMA denies the Plaintiffs' noneconomic damages claims on the grounds that the relief sought is beyond FEMA's power to confer; and (ii) the agency's internal needs -- related to its evaluation of the economic damages claims --are fulfilled, given that FEMA has no statutorily consistent internal needs after 180 days.  See supra, at 87-95.  In this section, the Court discusses the waiver of sovereign immunity that the Court recognizes in Vigil if three conditions exist: (i) administrative exhaustion is futile; (ii) administrative exhaustion will cause the Plaintiffs irreparable harm; and (iii) the Plaintiffs

assert a colorable Constitutional claim that is collateral to their underlying compensation claims. See Blue Valley Hosp., Inc. v. Azar, 919 F.3d at 1284-85; Bartlett v. Schweiker, 719 F.2d at 1061; Sensory Neurostimulation, Inc., v. Azar, 977 F.3d 969, 981 (9th Cir. 2020); Vigil, 2024 WL 2404487 at *30-32.  Here, the Court concludes that there is no general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act here, because, although exhaustion is futile and the Plaintiffs will suffer irreparable harm, the Plaintiffs do not show that they have brought a colorable Constitutional claim that is collateral to their underlying compensation claims.  The Court's conclusion that the Court should not find a general waiver of sovereign immunity under the circumstances that the Court outlines in Vigil does not change this Memorandum Opinion and Order's earlier conclusions that: (i) the Plaintiffs have exhausted administrative remedies, and, thus, that the Plaintiffs satisfy the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act; and (ii) FEMA has waived the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act for the Plaintiffs.  See supra, at 109-13.  Accordingly, the Plaintiffs are properly before the Court, even though the Court does not find a general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act.

### 1.    Administrative Exhaustion Is Futile.

When evaluating whether the Court should find general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act, the first prong is futility. Administrative exhaustion is futile when a claimant seeks relief which an agency's regulations unlawfully preclude.  See Carr v. Saul, 593 U.S. 83, 93 (2021)(Sotomayor, J.)("It makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested."); McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11, 488 F.3d 868, 875

(10th Cir. 2007)(noting that exhaustion is futile when "it is clear at the outset" that the agency "would inevitably deny" the relief sought through administrative remedies); New Mexico Ass'n for Retarded Citizens v. State of N.M., 678 F.2d at 851 (10th Cir. 1982)(excusing administrative exhaustion where "the remedies offered at the administrative level . . ."do not include [the remedy] . . . as sought by the class in this case").  FEMA's regulations unequivocally preclude compensation for noneconomic damages.   See 44 C.F.R. § 296.21(a).   At the internal administrative appeal stage, there is nothing for FEMA to do when a claimant appeals FEMA's denial of the claimant's noneconomic damages.  Bound by FEMA's regulations, the official reviewing an administrative appeal is "powerless to grant the relief requested."  Carr v. Saul, 593 U.S. at 93.  Moreover, FEMA continues to argue to the Court that those regulations are lawful and that FEMA cannot provide noneconomic damages.  See Lands Motion to Alter at 12-17; Dolan Motion to Alter at 12-17.  Given FEMA's regulations and their positions in this litigation and other related cases, "it is clear at the outset" that FEMA will "inevitably deny" any internal appeal of the initial noneconomic damages denial.  McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11, 488 F.3d at 875.  Accordingly, the Court concludes that exhaustion is futile, because FEMA's administrative remedies will not provide the relief that the Plaintiffs seek.

Administrative exhaustion is also futile when administrative procedures cause excessive delays.  See Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp., 489 U.S. at 587 ("Because the [agency's] regulations do not place a reasonable time limit on [] consideration of claims, [the plaintiff] cannot be required to exhaust those procedures."); McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1264 (holding that "the record clearly establishes futility" where "there are several references in the record" to the defendant's "failure to review a claim within the time limits necessary").  Here, FEMA has taken the position that FEMA does not need

to provide administrative appeal decisions within 180 days and that FEMA can withhold administrative appeal decisions indefinitely.  FEMA's procedures "do not place a reasonable time limit on [] consideration of claims," Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp., 489 U.S. at 587, and no Plaintiff has received an administrative appeal decision "within the time limits necessary," McGraw v. Prudential Ins. Co. of Am., 137 F.3d at 1264, i.e., 180 days.  Accordingly, the Court concludes that exhaustion is futile, because FEMA's procedures cause excessive delays in receiving administrative appeal decisions.

FEMA's cited Tenth Circuit cases in the Pending Cases Summary Letter do not persuade the Court otherwise.  In Malouf v. Sec. & Exch. Comm'n, the Tenth Circuit concludes that exhaustion is not futile for a claimant contending that the appointment of an administrative law judge is invalid under the Appointments Clause, even though the agency "frequently rejected challenges under the Appointments Clause."  933 F.3d at 1257.  The Tenth Circuit notes that there is an "absence of any prior SEC decisions on the issue" that the claimant raises under the Appointments Clause, and, accordingly, concludes that previous rejections to other Appointments Clauses challenge "do not mean that the SEC necessarily would have rejected a challenge" by the claimant. 933 F.3d at 1257.  These facts are inapposite here, where the claimants know that FEMA will deny their claims, regardless of any prior administrative appeal decisions, because FEMA's regulations preclude the relief sought,  In Gilmore v. Weatherford, the Tenth Circuit concludes that exhaustion is not futile even though previously "the agency has resisted providing similar relief."  694 F.3d at 1169.  Here, FEMA has done more than resist providing similar relief; the agency has promulgated regulations that preclude that relief entirely, and FEMA continues to argue to this Court that the Hermit's Peak Act precludes that relief.  Accordingly, the Court concludes that exhaustion is futile.

2.    **Requiring Exhaustion Irreparably Will Harm The Plaintiffs.**

When evaluating whether the Court should find a general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act under the circumstances that the Court outlines in Vigil, the second prong is whether the Plaintiffs demonstrate irreparable harm. The Court concludes that requiring exhaustion irreparably will harm the Plaintiffs. To demonstrate irreparable harm in the administrative exhaustion context, a plaintiff must make a "colorable showing that his injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies." Heckler v. Ringer, 466 U.S. at 618. See Kansas by & through Kansas Dep't for Child. & Fams. v. SourceAmerica, 874 F.3d 1226, 1250 (10th Cir. 2017)("Kansas Dep't")("A plaintiff shows it will suffer irreparable harm if it demonstrates there is 'a significant risk that [it] will experience harm that cannot be compensated after the fact by monetary damages.'")(quoting RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009). There is irreparable harm when exhaustion creates a statutory bar to monetary relief. See Kansas Dep't, 874 F.3d at 1250. In Kansas Dep't, a state entity contracting on a dining services vendor's behalf sues the Army Department, alleging that the Army unlawfully switched vendors at an Army base in Kansas. See 874 F.3d at 1231. The relevant statute requires aggrieved parties to go through binding arbitration to settle disputes related to vendor services contracts. See 874 F.3d at 1232. The Tenth Circuit concludes that the Kansas Dep't plaintiff does not need to complete the arbitration process before coming to court, however, because requiring the Kansas Dep't plaintiff to arbitrate will cause irreparable harm. See 874 F.3d at 1250-52. The Army's allegedly unlawful vendor switch "means Kansas would not have been able to compete for the contract," and, "[a]s a result, there was a significant risk that Kansas would have suffered great financial harm by the time it eventually prevailed in arbitration." 874 F.3d at 1251. "Although economic harm is

- 118 -

generally not irreparable, sovereign immunity bars an arbitration panel or a federal court from awarding Kansas monetary damages even though the arbitration panel found that the Army violated the" relevant statute. 874 F.3d at 1251. Because requiring the Kansas plaintiff to fulfill the exhaustion requirement -- arbitration -- "would have resulted in a loss for which there is no remedy," the Tenth Circuit concludes that the Kansas plaintiff suffers irreparable harm. 874 F.3d at 1251. Similarly, here, the Plaintiffs assert that FEMA's exhaustion requirement forces the Plaintiffs to complete a process which bars monetary relief. See Gurule MTD Response at 16 (asserting that the Plaintiffs "will be irreparably harmed if required to file an appeal with no end in sight" before coming to court). Requiring the Plaintiffs to exhaust FEMA's administrative remedies means accepting FEMA's appeal process as lawful, and, therefore, requiring the Plaintiffs to get an administrative appeal decision before coming to court. Without a deadline, FEMA can withhold the administrative appeal decision indefinitely and beyond the 180-day deadline. Not only do the Plaintiffs never get to come to federal court, but also they may miss the sixty-day deadline for seeking judicial review if they rely on FEMA's regulations. Thus, requiring the Plaintiffs to complete FEMA's internal administrative exhaustion before coming to federal court can "result[] in a loss for which there is no remedy," because the Plaintiffs could be stuck in an administrative appeal process with no access to federal court, which can provide retroactive monetary relief if FEMA withholds compensation unlawfully. Kansas Dep't, 874 F.3d at 1251. In this way, the Plaintiffs, just like the Kansas Dep't Plaintiffs, allege a harm for which there is no remedy if the Plaintiffs are forced to complete FEMA's potentially endless appeals process before coming to federal court seeking judicial review of FEMA's unlawful compensation denial. See Gurule Complaint ¶¶ 43-44. At 16-17 (alleging that "FEMA's categorical exclusion of certain items of damages, such as noneconomic damages harms Plaintiffs and other similarly situated Fire

victims by depriving them of compensation to which they are entitled under the HPFAA" and stating that "Plaintiffs seek judicial review of FEMA's final determinations of their claims"). Accordingly, the Court concludes that the Plaintiffs suffer irreparable harm, which satisfies the second prong of the general waiver circumstances outlined in Vigil.

The Court also concludes that requiring exhaustion will cause irreparable harm, because, among other reasons, the Plaintiffs will not be able to obtain pre-judgment interest on their submitted claims, given that neither the Hermit's Peak Act nor the APA allows the Plaintiffs to recover pre-judgment interest. FEMA argues, and the Plaintiffs do not dispute, that the Plaintiffs are not entitled to pre-judgment interest on their submitted claims, because the United States retains its sovereign immunity against claims for interest unless the statues expressly permits pre-judgment interest against the United States. See Arrellin MTD at 26-27; Arrellin MTD Response at 1-26 (not responding to FEMA's pre-judgment interest arguments); February 6, Tr. at 25:12-17 (Sydow)(noting that the Arrellin Plaintiffs do not respond to FEMA's "argu[ment] in our motion to dismiss that petitioners' request for pre-judgment interest is barred by sovereign immunity"). "'In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.'" United States v. 30,006.25 in U.S. Currency, 236 F.3d 610, 613 (10th Cir. 2000)(quoting Libr. of Cong. v. Shaw, 478 U.S. 310, 314 (1986)). "For well over a century, this Court, executive agencies, and Congress itself consistently have recognized that federal statutes cannot be read to permit interest to run on a recovery against the United States unless Congress affirmatively mandates that result." Libr. of Cong. v. Shaw, 478 U.S. at 316. The Court agrees with FEMA: neither the sovereign immunity waiver in the Hermit's Peak Act nor the sovereign immunity waiver in the APA permits a pre-judgment interest award. See Hermit's Peak Act § 104(i); 5 U.S.C. § 702; Otter Prods., LLC v.

United States, 628 F. Supp. 3d 1306, 1312 (Ct. Int'l Trade 2023)("Although the Administrative Procedure Act ('APA') waives sovereign immunity for challenges to agency action, the 'no-interest rule' precludes suits for interest in connection with agency action unless there is a specific waiver of sovereign immunity.")(quoting Sandstrom v. Principi, 358 F.3d 1376, 1379 (Fed. Cir. 2004)).  Because neither the Hermit's Peak Act, nor the APA, permits recovery of pre-judgment interest, the Plaintiffs suffer irreparable harm if they are forced to complete a lengthy, potentially endless appeals process before coming to federal court, without compensation for that lost time. Even if FEMA eventually provides an administrative appeal decision and the Plaintiffs can come to federal court, the Court cannot provide the Plaintiffs with prejudgment interest to compensate the Plaintiffs for the loss they suffer from the delay in payment and make the Plaintiffs whole. Accordingly, FEMA's delay in paying the Plaintiffs "would have resulted in a loss for which there is no remedy," which constitutes irreparable harm.  Kansa Dep't, 874 F.3d at 1251.

### 3.    The Plaintiffs Do Not Assert A Colorable, Constitutional, Collateral Claim.

When evaluating whether the Court should find general waiver of the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act, the third prong is whether the Plaintiffs assert a colorable Constitutional claim that is collateral to their underlying compensation claims.  The APA[23] Plaintiffs' Constitutional claim is that FEMA's appeal process violates due process.  Although the APA Plaintiffs' due process claim is colorable, that claim is not collateral.  Accordingly, the APA Plaintiffs do not satisfy the second judicial waiver prong.

---

[23]The Pure Judicial Review Plaintiffs do not assert any Constitutional claims.  Accordingly, the Court concludes that the Judicial Review Plaintiffs do not satisfy the second waiver prong. This sub-section applies only to the APA Plaintiffs.

a. **The APA Plaintiffs' Due Process Claim Is Colorable.**

"To be colorable, a claim must have some possible validity." United States v. McAleer, 138 F.3d 852, 857 (10th Cir. 1998). On the other hand,"[a] constitutional claim in this context is not colorable if it is "'immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous.'"" Harline v. Drug Enf't Admin., 148 F.3d 1199, 1203 (10th Cir. 1998)(quoting Boettcher v. Sec'y of Health & Hum. Servs., 759 F.2d 719, 722 (9th Cir. 1985)(quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946))(ellipses in Harline v. Drug Enf't Admin and Boettcher v. Sec'y of Health & Hum. Servs., but not in Bell v. Hood). The APA Plaintiffs' due process claim is colorable, because the APA Plaintiffs have property interests in two things which FEMA has withheld unlawfully: (i) the noneconomic damages for which they are eligible; and (ii) FEMA's meaningful consideration of their noneconomic damages claims. "It has long been recognized that benefits distributed by the government are a form of property protected by the due process clause." Ridgely v. Fed. Emergency Mgmt. Agency, 512 F.3d 727, 735 (5th Cir. 2008). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)(Stewart, J.), abrogated on other grounds by Siegert v. Gilley, 500 U.S. 226 (1991), as recognized by Stidham v. Peace Officer Standards & Training, 265 F.3d 1144, 1154 (10th Cir. 2001). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 756 (2005)(Scalia, J.). FEMA does not have discretion, however, to withhold noneconomic damages categorically. See Dolan 2024 WL 5145808, at *37 (this Court ordering FEMA to "award noneconomic damages for the Plaintiffs' claims, such as for emotional pain and suffering, under

the Hermit's Peak Act").  If the Hermit's Peak/Calf Canyon fire causes noneconomic damages, then FEMA "shall fix and determine the amount, if any, to be paid" to claimants who suffer those noneconomic damages.  180-Day Deadline Provision.  See supra, at 91-92, n.15 (concluding that the 180-Day Timeline Provision's "shall" indicates that FEMA's obligation to "fix and determine the amount" is mandatory, and not permissive).  FEMA has some discretion over how much compensation to give claimants.  See 180-Day Timeline Provision (providing that FEMA "shall fix and determine the amount, if any, to be paid")(emphasis added).  The APA Plaintiffs do not assert a property interest in a specific compensation amount.  Instead, the APA Plaintiffs assert a property interest in a damages category: noneconomic damages.  See Arrellin Complaint ¶ 45, at 17 (alleging that the "HPFAA entitles claimants to noneconomic damages for interference with personal comfort, annoyance, and inconvenience, and the Final Determinations categorically refuse to award those same damages, among other damages"); id. ¶ 46, at 17(alleging that "FEMA's categorical exclusion of certain items of damages, such as noneconomic damages harms Plaintiffs and other similarly situated Fire victims by depriving them of compensation to which they are entitled under the HPFAA").  FEMA does not have discretion whether the APA Plaintiffs may get noneconomic damages, because the Hermit's Peak Act provides for noneconomic damages.  See Dolan, 2024 WL 5145808, at *29-37. at  The APA Plaintiffs, therefore, have a Constitutionally protected property interest in noneconomic damages, and FEMA has unlawfully withheld those damages.  This claim is a colorable due process claim.  Regarding (ii) -- i.e., the APA Plaintiffs' property interest in FEMA's substantive review of their noneconomic damages - - "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." LaChance v. Erickson, 522 U.S. 262, 266 (1998)(Rehnquist, C.J.).  See In re C.W. Mining Co., 625 F.3d 1240, 1244 (10th Cir. 2010)("The Supreme Court has consistently held that due process

requires notice and a meaningful opportunity to be heard.").  FEMA's categorical denial of the APA Plaintiffs' noneconomic damages deprives the APA Plaintiffs of any "meaningful opportunity to be heard" on those claims.  LaChance v. Erickson, 522 U.S. at 266.  Accordingly, the Court concludes that the APA Plaintiffs assert a colorable Constitutional claim, because FEMA has withheld all noneconomic damages and refuses to evaluate noneconomic damages claims.[24]

### b.    The APA Plaintiffs' Due Process Claim Is Not Collateral.

The APA Plaintiffs' due process claim is not collateral to the APA Plaintiffs' underlying compensation claims, because the APA Plaintiffs' due process claim seeks the same relief available through the administrative process: review of noneconomic damages claims, and compensation for those claims.  For a claim to be collateral, "the claim 'must seek some form of relief that would be unavailable through the administrative process,' rather than the 'substantive, permanent relief that the plaintiff seeks . . . through the agency appeals process.'"  Blue Valley Hosp., Inc. v. Azar, 919 F.3d at 1285 (quoting Fam. Rehab., Inc. v. Azar, 886 F.3d 496, 502 (5th Cir. 2018)).  Constitutional claims that seek relief which is "inextricably intertwined with [] claims for benefits" are not collateral.  Heckler v. Ringer, 466 U.S. 602, 614 (1984)(Rehnquist, J.).  In Heckler v. Ringer, the plaintiffs alleged that the Department of Health and Human Services' rule -- which determined that a particular surgery was not reimbursable under Medicare -- is unlawful

---

[24]The Court disagrees with FEMA's characterization of the APA due process claim. FEMA says that the APA Plaintiffs "do not have a constitutionally guaranteed property interest and/or substantive right to any and every item and amount they claim in the notices of loss submitted to FEMA."  Gurule MTD Reply at 7.  This statement exaggerates the APA Plaintiffs' due process claim.  The APA Plaintiffs do not allege that they have a property interest in every item for which they requested compensation.  Instead, the APA Plaintiffs allege that they have a right in their noneconomic damages "to which they are entitled," as well as "a full and fair review of their damages caused by the Fire."  Arrellin Complaint ¶ 50, at 18-19.

and violates due process.  See Heckler v. Ringer, 466 U.S. at 601-10.  The plaintiffs seek a declaration that the rule is unlawful and that their claims are, accordingly, reimbursable under the relevant statute.  See Heckler v. Ringer, 466 U.S. at 614.  The Supreme Court holds that the declaratory relief is, "at bottom, a claim that they should be paid."  Heckler v. Ringer, 466 U.S. at 614.  Accordingly, the Supreme Court holds that, because the Constitutional claims are "inextricably intertwined with [] claims for benefits," those claims are not collateral.  Heckler v. Ringer, 466 U.S. at 614.  The same situation is presented here.  Like the Heckler v. Ringer plaintiffs, the APA Plaintiffs ask the Court to compel FEMA to change its allegedly unlawful appeal process and to "set aside" FEMA's noneconomic damages denial.  Arrellin Complaint, Prayer for Relief ¶¶ 1-2, at 20.  "At bottom," the APA Plaintiffs' due process claim is "a claim that they should be paid" noneconomic damages under the Hermit's Peak Act.  Heckler v. Ringer, 466 U.S. at 614.  Accordingly, the Court concludes that the APA Plaintiffs' due process claim is not collateral to the underlying benefits claim and, thus, that the APA Plaintiffs do not satisfy the second judicial waiver prong.

## IV.    THE COURT DENIES FEMA'S MOTION TO DISMISS THE APA CLAIMS, BECAUSE THE APA PLAINTIFFS PLAUSIBLY ALLEGE THAT FEMA VIOLATES THE APA.

The Court denies FEMA's motion to dismiss the APA Claims, because the APA Plaintiffs plausibly allege that: (i) FEMA's regulations cannot be squared with the mandate of the Hermit's Peak Act that FEMA provide a judicially reviewable claim determination within 180 days; (ii) FEMA's regulations result in a potentially endless appeal process; and (iii) FEMA's regulations deprive the APA Plaintiffs of their noneconomic damages and a meaningful opportunity to be heard on their noneconomic damages claims.  The APA Plaintiffs allege that FEMA's regulations violate the APA in four ways.  First, the APA Plaintiffs allege that FEMA violates Section

706(2)(C), because FEMA's regulations violate the mandate of the Hermit's Peak Act that FEMA

provide claimants with judicially reviewable determinations within 180 days. and, thus, the

administrative appeal framework is promulgated in excess of statutory authority.  Second, the APA

Plaintiffs allege that FEMA violates Section 706(2)(A), because the endless appeal process is

arbitrary and capricious.  Third, the APA Plaintiffs allege that FEMA violates Section 706(2)(B),

because FEMA's regulations violate the claimants' due process rights.  Fourth, the APA Plaintiffs

allege that FEMA violates Section 706(1), because the lack of a deadline constitutes a failure-to-

act.[25]  The Court concludes that, based on the current record, the Court cannot determine whether

---

[25]The Court does not agree with FEMA's arguments that: (i) the APA Plaintiffs improperly flesh out the Section 706(2) claims in the APA MTD Responses; (ii) the APA Plaintiffs have abandoned the Section 706(1) claims; and (iii) the APA Complaints' inconsistent presentation of the APA issues weighs in favor of dismissal .  See Arrellin MTD Reply at 8.  The Court concludes that the APA Plaintiffs allege both Section 706(1) and three separate Section 706(2) violations, even though the APA Complaints do not identify Section 706(1) or include more than one possible Section 706(2) violation.  "A pleading will be judged by the quality of its substance rather than according to its form or label and, if possible, it will be construed to give effect to all its allegations."  5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 771-7(4th ed. 2021)("Wright & Miller").  See also Kasishke v. Keppler, 158 F.2d 809, 811 (10th Cir. 1947)(holding that a complaint "must be considered and construed as a whole, and only in that way can its true intent and import be ascertained").  Section 706(1) provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The APA Plaintiffs accuse FEMA of "failing to provide a deadline for the appeal determination, and failing to provide other guidelines for the appeal process."  Arrellin Complaint ¶ 50, at 18.  The APA Plaintiffs also ask the Court to compel FEMA to "establish[] guidelines for the entire Administrative appeal process, including, providing a timely determination on the appeal, a standard of review, and information as to who will be determining the appeal."  Arrellin Complaint, Prayer for Relief ¶ 1, at 20.  Taken together, these allegations form the crux of a Section 706(1) claim, even though the APA Complaints do not mention Section 706(1) specifically.  See Arrellin Complaint at 17 (identifying Count II as "Violation of APA; 5 U.S.C. § 706).  Section 706(2) provides that a reviewing court shall

> **(2)**    hold unlawful and set aside agency action, findings, and conclusions found
> to be--
>
> **(A)**    arbitrary, capricious, an abuse of discretion, or otherwise not
> in accordance with law;

_____

    **(B)**    contrary to constitutional right, power, privilege, or immunity;

    **(C)**    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    **(D)**    without observance of procedure required by law;

    **(E)**    unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    **(F)**    unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. 706(2). The APA Complaints allege only that FEMA violates Section 706(2)(A), and do not identify any other Section 706(2) subsection. See Arrellin Complaint ¶¶ 48-54, at 17-19. FEMA's concern that the APA MTD Responses improperly add allegations to substantiate the Section 706(2) claim is not sound. See Arrellin MTD Reply at 8. Although FEMA does not explain exactly which parts of the MTD briefing are improper, it seems that FEMA takes issue with the APA Plaintiffs' legal theories. Although the APA Complaints identify only Section 706(2)(A), the APA MTD Responses set forth two more Section 706(2) theories: (i) that FEMA violates Section 706(2)(C), because the Appeal Process Regulations violates the Hermit's Peak act, see Arrellin MTD Response at 7-10; and (ii) that FEMA violates Section 706(2)(B), because the Appeal Process Regulations violate the claimants' due process rights, see Arrellin MTD Response at 11-13. The APA Plaintiffs may seek relief pursuant to these two legal theories, even though the APA Plaintiffs did not include those theories in the APA Complaints.

> [I]t is clear that the federal rules -- and the decisions construing them -- evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits.

See 5 Wright & Miller, supra, § 1219 at 320-23. See Johnson v. City of Shelby, Miss., 574 U.S. 10, 11 (2014)(per curiam)(holding that the federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1121 (10th Cir. 2005)("Generally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim."). The new Section 706(2) theories are not a "late shift in the thrust of the case" that prejudices FEMA "in maintaining a defense upon the merits." 5 Wright & Miller, supra, § 1219. The new Section 706(2) theories also are not new factual allegations that the APA Plaintiffs needed to include in the APA Complaints to substantiate their Section 706(2) claims.

the FEMA's regulations preclude FEMA from following the 180-day mandate or otherwise acting

lawfully.  The APA Plaintiffs plausibly allege that FEMA's regulations cannot be squared with

Congress' 180-day requirement, which may violate the APA as regulations promulgated in excess

of statutory authority, or as a failure-to-act.[26]  See Arrellin Complaint ¶ 50, at 18 (alleging that

_____

There are many ways a plaintiff may litigate a Section 706(2) claim.  That the APA Plaintiffs identified only one liability theory in the APA Complaints does not warrant dismissal or otherwise preclude recovery on other Section 706(2) theories.  Accordingly, the Court concludes that: (i) the APA Plaintiffs have not abandoned their Section 706(1) claims; and (ii) the APA Plaintiffs may recover under the new Section 706(2) theories.

[26]In Cavitt-Olguin, Chief Judge Gonzales concludes that the Cavitt-Olguin Plaintiffs' claims, which include four counts that "appear to target agency action pursuant to § 706(2)(A) and (C)" are "more properly brought under § 706(1)."  Cavitt-Olguin, 2025 WL 786750, at *4.  Chief Judge Gonzales provides three reasons for this conclusion: (i) the complaint relies on "FEMA's failure to establish administrative guidelines regarding the appeal process"; (ii) the Cavitt-Olguin Plaintiffs' brief "focuses almost entirely on failure-to-act claims brought under § 706(1)"; and "the only agency action Plaintiffs seek to have this Court 'set aside' under § 706(2) is the failure to establish administrative appeals guidelines."  Cavitt-Olguin, 2025 WL 786750, at *4 (quoting 5 U.S.C. § 706(2)).  Having construed the claims as failure-to-act claims, Chief Judge Gonzales dismisses the claims for lack of subject matter-jurisdiction, because the Hermit's Peak Act "does not require FEMA to publish administrative appeal guidelines."  Cavitt-Olguin, 2025 WL 786750, at *4.  The Court agrees with Chief Judge Gonzales on this point: the Hermit's Peak Act does not require FEMA to publish administrative appeal guidelines.  Because the Congressional statute does not expressly prove for or furnish and appeal process, FEMA is free to establish an appeal process, as long as it results in a judicially reviewable decision within 180 days of the submission of a claim, i.e., the Notice of Loss.  Chief Judge Gonzales' opinions in these other FEMA cases, however, do not persuade the Court that the APA Plaintiffs here do not state a failure-to-act claim.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)(Scalia, J.)(emphasis in original).  As the Arrellin Plaintiffs note, the Cavitt-Olguin Plaintiffs challenge FEMA's failure to implement appellate guidelines.  See Notice of Supplemental Authority Response at 2.  Here, the APA Plaintiffs challenge how FEMA's regulations violate the Hermit's Peak Act's 180-day deadline, result in an endless appeal process, and deprive the APA plaintiffs of noneconomic damages and a meaningful opportunity to be heard on their noneconomic damages claims.  See infra, at 128-30.  FEMA must provide noneconomic damages determinations within 180 days.  To the extent that FEMA's regulations prevent this discrete, required action, the APA Plaintiffs state a failure-to-act claim.  See Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999)("[W]hen Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion.  The agency must act

FEMA "require[es] an appeal process that exceeds that 180-day mandated deadlines provided in the Act"); id. ¶ 41, at 16 (seeking "a determination that FEMA's Final Rule requiring Plaintiffs complete the appeal process to be unlawful and in violation of the HPFAA"); 5 U.S.C. § 706(2)(C) (providing that a reviewing court may set aside regulations that are "in excess of statutory jurisdiction, authority, or limitations"); 5 US.C. § 706(1) (providing that a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed").  The APA Plaintiffs also plausibly allege that FEMA's regulations result in an endless appeal process, which may violate the APA as arbitrary-and-capricious regulations.  See Arrellin Complaint ¶ 50, at 18 (alleging that FEMA "offers no substantial justification for . . . failing to provide a deadline for the appeal determination"); id. ¶ 38, at 16 (alleging that "FEMA's unilateral application of restricted deadlines on Plaintiffs without established appeal procedures violates Plaintiffs' due process rights and the purpose of the HPFAA to provide a full and fair review of Plaintiffs' damages caused by the Fire"); 5 U.S.C. § 706(2)(A) (providing that a reviewing court may set aside regulations that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  The APA Plaintiffs also plausibly allege that FEMA's regulations deprive the APA Plaintiffs of their noneconomic damages and a meaningful opportunity to be heard on their noneconomic damages claims, which may violate the APA as a due process violation.  See Arrellin Complaint ¶ 45, at 17 (alleging that the "HPFAA entitles claimants to noneconomic damages for interference with personal comfort, annoyance, and inconvenience, and the Final Determinations categorically refuse to award those same damages, among other damages"); id. ¶ 46, at 17(alleging that "FEMA's categorical exclusion of certain items of damages, such as noneconomic damages harms

---

by the deadline.  If it withholds such timely action, a reviewing court must compel the action unlawfully withheld.")

Plaintiffs and other similarly situated Fire victims by depriving them of compensation to which they are entitled under the HPFAA"); id. ¶ 50, at 19 (alleging that FEMA's unlawful regulations "deprive[] Plaintiffs of a full and fair review of their damages caused by the Fire to which they are entitled under the HPFAA and Constitution"); 5 U.S.C. § 706(2)(B) (providing that a reviewing court may set aside regulations that are "contrary to constitutional right, power, privilege, or immunity").  The APA Plaintiffs allege that FEMA is not observing the 180-day deadline, is holding up appeals indefinitely, and is not meaningfully considering noneconomic damages claims, see Arrellin Complaint ¶ 37, at 15; id. ¶ 46, at 17; id. ¶ 50, at 18-19, and, on the APA Plaintiffs' Complaints' face -- i.e., the Arrellin Complaint, the Lane Complaint, the Leonard Complaint, and the A. Benavidez Complaint -- these allegations are enough to state a claim.  If FEMA ultimately shows that the agency can follow its regulations and issue administrative appeal decisions that compensate victims for noneconomic damages in 180 days, then all four of the APA Plaintiffs' liability theories fail, and there is no violation.  Given the allegations on the faces of the APA Plaintiffs' Complaints, on the current record, however, the Court cannot conclude that FEMA has not violated the APA as a matter of law. Accordingly, the Court denies FEMA's motion to dismiss the APA Claims.

IT IS ORDERED that: (i) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed April 29, 2024 (24-0170 Doc. 12), is denied; (ii) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed July 15, 2024 (24-0426 Doc. 12), is denied; (iii) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed September 12, 2024 (24-0580 Doc. 10), is denied; (iv) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed September 16, 2024 (24-0681 Doc. 7), is denied; (v) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed October 15, 2024 (24-0779 Doc. 5), is denied;

(vi) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed November 12, 2024 (24-0875 Doc. 6), is denied; (vii) the Motion to Dismiss Petitioners' Complaint, filed December 9, 2024 (24-0979 Doc. 6), is denied; (viii) the Motion to Dismiss for Failure to Exhaust Administrative Remedies, filed January 13, 2025 (24-1137 Doc. 7), is denied; (ix) the Motion to Dismiss Petitioners' Complaint, filed February 11, 2025 (24-1221 Doc. 7), is denied; and (x) the Motion to Dismiss Petitioners' Complaint, filed March 14, 2025 (24-1311 Doc. 8), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Brian S. Colon
Jesse Gallegos
Jacob Payne
Robert James Sanchez
Singleton Schreiber LLP
Albuquerque, New Mexico

--and--

H. Vern Payne
Singleton Schreiber LLP
Los Lunas, New Mexico

-- and --

Gerald Singleton
Benjamin Siminou
Jonna D. Lothyan
Singleton Schreiber LLP
San Diego, California

     *Attorneys for the Plaintiffs*

Holland S. Kastrin
  Acting United States Attorney
Nicholas M. Sydow
Brett C. Eaton
Cassandra C. Currie
Jena Ritchey
Carrie Y. Yang
Rafael Go
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Defendants*